IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF INDIANA

WESLEY I. PURKEY,

    Plaintiff,

vs.

Case No.# 2:19-CV-00517-JRS-DLP

WILLIAM BARR,
UNITED STATES ATTORNEY GENERAL,

WITH A JURY TRIAL DEMAND

HUGH HURWITZ,
DIRECTOR OF THE FEDERAL BUREAU OF PRISONS,

# FILED

J. T. WATSON,
COMPLEX WARDEN / UNITED STATES PENITENTIARY
          TERRE HAUTE, INDIANA

OCT 28 2019

(FIRST NAME UNKNOWN) TAYLOR, Captain
UNITED STATES PENITENTIARY AT TERRE HAUTE, INDIANA

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

    Defendants.

---

## C I V I L   R I G H T S   C O M P L A I N T

    The Plaintiff, Wesley I. Purkey, acting pro se herein who is currently awaiting Execution at the United States Penitentiary at Terre Haute, Indiana on December 13th, 2019 by Lethal Injection, brings this Civil Rights Complaint pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents,</u> 403 U.S. 388, 91 S.Ct. 1999 (1971) seeking both redress and remedy through Injunctive Relief, as well as through a declaratory judgment, and as well as through compensatory and punitive damages for the defendants egregious violations of his rights of equal protection under the law in violation of tenets under the Fifth Amendment to the United States Constitution by the defendants deliberate arbitrary selection of his execution date, which was substantially motivated by his protracted jailhouse lawyering in violation of his rights set forth through tenets of the First Amendment to the United States Constitution. Further, Purkey seeks redress and remedy, as well as a declaratory judgment and damages for the defendants subjecting him to acute sleep deprivation since he was designated with an execution date which coninues to date undaunted in violation of the Eighth Amendment to the United States Constitution.

## I.    JURISDICTION

1.    The Plaintiff brings this action pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents, supra</u>, whereas this Court has jurisdiction under 28 U.S.C. §§ 1331 & 1332. Further' the Court has jurisdiction of the plaintiff's request for a declaratory judgment pursuant to 28 U.S.C. § 2201.

## II.    VENUE

2.    The District Court of the Southern District of Indiana is the appropriate venue under 28 U.S.C. § 1391(b0(2) because a substantial part of the events or omissions giving rise to the claims presented herein occurred within the district of this Court.

## III.    Parties

3.    Plaintiff Wesley I. Purkey was at all times relevant to this action a prisoner incarcerated at the United States Penitentiary at Terre Haute, Indiana, which is located in the Southern District of Indiana.

4.    Defendant William Barr was at all times relevant to this Complaint the Attorney General of the United States, and was acting for all purposes of this action was acting under color of federal law. He is sued in both his individual and official capacities.

5.    Defendant Hugh Hurwitz was at all times relevant to this Complaint the Central Office for the Bureau Of Prisons, and for all purposes of this action was acting under color of federal law. He is also being sued in both his individual and official capacities.

6.    Defendant J. T. Watson was at all times relevant to this Complaint the Complex Warden at the United States Penitentiary at Terre Haute, Indiana, and he was acting for all purposes of this action was acting under color of federal law. He is also being sued in both his individual and official capacities.

7.    Defendant Taylor (first name unknown) was at all times relevant to this Complaint the Captain of Security at the United States Penitentiary at Terre Haute, Indiana, and for all purposes of this action was acting under color of federal law. He is in turn being sued in both his official and individual capacities.

IV.    Exhuastion Of Administrative Remedies Pursuant To 42 U.S.C. §1997(e)

2.

8.    Exhaustion Should Be Excused Herein Because: 1) the plaintiff faces irreparable harm from the delay incident to pursuing administrative remedies; 2) there is substantial doubt whether the defendants within the lower ranking Agency of the BOP are empowered to grant or render relief; 3) the defendants have indicated predetermination of given issues rendering exhaustion futile.

## V.    General Facts Related To And Supporting The Plaintiff's Claims

9.    On July 25th, 2019 at approximately 8:30 a.m. the plaintiff was escorted by Captain Taylor to the Special Confinement Unit's (SCU) Unit Team Office where Warden J. T. Watson was positioned with approximately ten or eleven other Executive and/or Administrative Staff. Being seated by Captain Taylor directly in-front of the Warden across the table he advised me that, "the Director of the Central Office has selected you for execution and the Attorney General of the United States has scheluded your execution for December 13th, 2019. Warden Watson then went onto explain and handing me a packet of materials that Purkey had a right to file for clemency, to designated the manner in which he wanted his body to be disposed of, and as well that he had a right to request a last meal from anyone of the menus that he afforded to hi. Warden Watson then asked Purkey if he had anything to say or any questions pertaining to what he had just been told. Yes' I do have Purkey said, "I would appreciate knowing the BOP Policy or Regulation, and/or statutory law that set the criteria for me to be selected for execution, whereas there are at minimun fifteen or more other inmates who have fully exhausted their appellate remedies prior to me." "I have absolutely no idea what policy or regulation was utilized by the Director of the Central Office in selecting you for execution or the policy or regulation utilized by the Attorney General in approving and setting the date of your execution," Warden Watson Responded.

10.    Thereafter' Purkey was escort by a Lieutenant and three other USP/TH Staff Members to the Infirmary Area of the facility for a full body scan to be performed. During the escort one of the staff member's asked me, "why do you think taht you were chosen for execution?" "To tell you the truth," Purkey told him, "I really didn't expect it, but I really am not one of their favorite camper's here, am I." Another one of the escorting staff said that, "this is a little odd isn't it, especially seeing that their are at least a dozen or more death row inmates who have completely exhausted their appellate remedies that I know of and you would think that the selection process would take such death row inmates in some semblence

3.

of individuals who had fully exhausted their appeals." Another escorting staff entered the conversation saying that, "when McVeigh, Garaz and Jones were executed they were executed in the order of their appeals being exhausted, although McVeigh did withdraw his appeals." He went to say that, "the last five inmates who were given execution dates when selected in the order of their appeals' being exhausted. Here it is really difficult to fathom why they selected the five individuals, you included who have all exhausted your appeals years after those particular inamtes and several others as well. "One of the other escorting staff remarked on the way returning from the xray being performed that, "I don't blame you for being pissed, because I'd definitely be pissed as well at the glaring abbitrary selection that is taking place now."

11.  The following day when SCU Staff and a Lieutenant were escorting me to recreation one of the staff members who I have a decent rapport with asked me if I had seen the news report about why the Attorney General Barr had selected the five federal inamtes that he did for execution. In responding and telling him that I had not he went onto tell me that, "Barr said that he had selected th five different inmates that he had to be executed at this time because they are the most despical inmates on the Unit. The other SCU Staff and Lieutentant escorting Purkey to recreationa cknowledge seeing this same news report as well. This same news report was brought to my attention by several different staff members during the week and one particular SCU Staff Members told me that your selection for an execution date to be set by Barr is based on your zealous filings of administrative remedies and filing so much different litigation in the courts against these people. I advised this particular staff member that, "I know that, as does anyone else who has spent anytime on this unit."

12.  On the morning of August 21st., 2019 Purkey was taken from his cell, A-313 by Lt. Parker and Captain Taylor for his refusal to be seen by the Psychiatrist. While being escorted from his cell to the holding cell at the front entrance of the SCU staff members escorting Purkey began to ridicule him telling him amongst other things that, "you cause your own problems on this unit with all of the b.s. filings taht you do, causing everyone problems, and then you cry like a baby about the repercussions you suffer because of such," one of the escorting staff members told Purkey. One of the other escorting staff laughed sarcastically saying that, "we won't have to worry about that much longer - thanks to our buddy Barr. And I can't wait for that to happen." When Purkey was utlimately returned to his cell sometime later,

4.

it had been ransacked and left in total disrray.

13.  The morning of August 23rd., 2019 after addressing issues with Lieutenant Martin about being constantly awaken by A-Range Staff every fifteen minutes escorting staff taking Purkey to recreation began to ridicule him. "All you do is cry and file f--- grievance and law suits on everyone here. Everyone knows why you were one of the first five to get selected to make your maker and everyone cannot wait until that happens," one of the four member escorting team told Purkey.

14.  On August 31st., 2019 at approximately 12:50 a.m. Purkey was waken by staff standing at the from of his cell holding a glaring flashlight directly in his face, as he laid down in his bunk. This was the third time in approximately a half of an hour that someone/ staff had came to his cell holding a flashlight directly in his face. It was not until Purkey actually climed out of his bunk and confronted the staff who relentless was holding the flashlight directly in his face. "What are you doing?" Purkey asked him. When Purkey asked him for his name he responded that, "I'll give you something with my name on it," he told Purkey in a irate manner. Of course Purkey knew, as everyone does that this remark meant that, "you write me up - you file a grievance on me then I am writing your a incident/disciplinary report." This staff member then turned and walked away from Purkey's cell telling the A-Range Staff Member, C.O. Pruitt that, "that guy is the biggest piece of shit on the Unit and I cannot wait for his to take that needle for all the b.s. he has caused us with his b.s. filings on us for anything and everything."

15.  On August 26th, 2019 C.O. Slather (misspelled) was assigned to work A-Range or Execution Range as many Stt Members reference it. Working the evening shift Slather became highly agitated when Purkey ∓ asked him to have the exterior cell door open when he was delivering the supper meal, and again when he returned to pick inmate's trash up. The trash bag Purkey tried to put outside his cell to the outer exterior cell door broke spilling trash in the exterior area of the cell, where C.O. Slather refused to open the cell door to pick up and left lying where it had fallen. Sometime thereafter Slather brought Purkey's laundry bags to his cell, openning the exterior cell door slot and tossed the laundry bags on-top of the trash that was lying in the exterior section of Purkey's cell. When Purkey complained to Slather about his malicious actions and told Purkey amongst other things to "go f --- yourself." He then walked to the front of the range ands tarted talking with SCU Staff, C.O. Raymond. Purkey could easily hear the disparaging comments that Slather and Raymond were making about him saying that, "that guy is one of the biggest pieces of crap on this Unit, and that is why Barr selected him as one of the first three to take that needle," Raymond said. "I have heard about the dozens

of grievances that he has filed, as well as lawsuits that are generally always dismissed as being piece of crap just as he is," Slather told Raymond. This little belittling session last a good fifteen to twenty minutes between the two of them This was not the first time that these two SCU staff had ridiculed and scorned Purkey, as they had did the same thing the previous week on laundry day as well.

16. At approximately 1 a.m. on September 11th, 2019 A-Range Staff and SCU Staff started socializing on the Range waking Purkey up, as he had already been repeatedly woke up throughout the night since the morning shift A-Range Staff had arrived at around 11:20 p.m. After making complaints one of the staff member's said to the other, "listen to that guy whine, all he does is cry. That piece of shit killed some young girl and an old lady and now all he does is cry. I can't wait for them to kill his old ass - and everyone loves Barr for selecting him as one of the first to go," Again at around 3 a.m. the same two staff members were at the front of the range having the time of their life's laughing and socializing. After Purkey again addressed the protracted and ongoing noise and asking them to stop and allow him and everyone else on the range to get some sleep they began another tirade of disparaging remarks against Purkey. "The A-Range Staff told the SCU Staff that, "you know that he is going write this up as he does everything else." "yeah' he is good at doing that and filing his b.s. downtown as he is always doing for other inmates," he reponded. "Fuck him," I'll talk with you later the SCU Staff told the A-Range Staff as he left the range.

17. On Sunday Evening, September 15th, 2019 Purkey addressed the picking up of laundry bags with C.O. Johnson who was assigned to work A-Range on that date. As Purkey explained to Johnson who was not familiam with the Unit that this was not their usual laundry date, but as notice was given via Trulimcs this date that due to a power outage the SCU's laundry was being done on this date instead of their usual laundry scheluding. C.O. Johnson returned telling Purkey that both Gilem and Raymond said that they didn't know anything about it and that they were not picking laundry up. When Purkey advised C.O. Johnson that all Gilem and Raymond had to do was check the 'Bulletin Board via Trulincs" and verification of the date change would been readily seen. Purkey heard C.O. Johnson at the front of the range telling Gilem and Raymond what he had just related to him. Gilem responded saying, "thank god for Barr selecting that guy as one of the first five to go - everyone is tired of his b.s. If he keeps this b.s. up I am going to write his ass up and he'll lose all the little privileges that he still has remaining. All he does is cause problems, File on this and file on that." "Fuck that guy, Barr is

6.

told me, "what's wrong Purkey, is he hurting you." At this point C.O. Nelson be-
came forceful and agitated because he was not able to deadlock the handcuffs, and
he began to forcefully lift and press both of my hands upward causing excruciating
pain. When I asked him, "what are you doing man, You have the handcuffs on
backwards and the key holes are on the inside." At this point another SCU Staff
came to the visitation door taking the handcuffs off of me and replaced them easily
dead-locking them thereafter. Almost immediately after being taken from the visita-
tion room Lt. Lutz and the other escorting staff began to mock and ridicule me.
"One of them said in behind me that, "he'll file on you Nelson wait and see." "That
is why our fine Attorney General give him one of the first three slots to be executed,
isn't it," Nelson said. "That's O'kay, one of the other SCU Staff said, just afew
more weeks and that filing of grievance and lawsuits will be history and that big
baby will be in the ground."

18.   On October 5th, 2019 at approximately 4:40 p.m. C.O. Hasler told the
Officer In Charge (OIC) Owens who was at the cell lockbox at the front of the A-
Range that, "Purkey is complaining about you not openning the outside cell doors
for supper trays to be served which he said is how meals are to be served." "Purkey
is an asshole; fuck him. I wish to hell Barr had taken that piece of shit to the
alittle white house on the corner along time ago. Cannot wait until we kill that
piece of shit," Owens said.

19.   After C.O. Hasler continuously shined his flashlight directly in Purkey's face
everytime that he made rounds which was every fifteen minutes on the range Purkey
turned his cell light on and left it on, whereas Purkey's complaints to C.O. Hasler
about the abusive treatment he was told that, "we do whatever we want around here.
You won't be here much longer anyway." At approximately 9:20 p.m. Purkey was woke -
up by SCU Staff Richie and another C.O. (name unknown) beating on Purkey's cell door.
When C.O. Richie and the other C.O. came back up the range Purkey asked them, "why
are you pounding on my cell door waking me up when I have my cell light on and you
can easily see me lying in bed"? "Die M.F.er - die," the other C.O. said and then
both Richie and him started laughing. "So you think that it is funny keeping me
awake and harassing me," Purkey asked them as they we're leaving the range. "You'll
have time to sleep when you are dead in the near future," C.O. Richie said and they
both continued to laugh. Shortly after this OIC Owens came to Purkey's cell and he
asked Purkey, "what the f--- is wrong with you?" "I don't appreciate being repeatedly
waken up by your staff," Purkey told him. "Also I would appreciate the name of the

7.

other officer who was with Richie when they were on the range pounding on my cell door at 9:20 and to know why they are constantly waking me up." "The officers names are Bob and John, and we will wake your fucking ass up whenever we want," OIC Owens told Purkey and then proceeded back off the range. Walking off the range Owens told C.O. Hasler that, "that guy is a real piece of shit can't wait for them to kill his ass."

### VI.    CAUSE OF ACTION    Count    One

Purkey Was Denied Equal Protection Under The Law In Violation Of The Fifth Amendment To The United States Constitution In The Arbitrary And Discriminatory In Both The Selection Processes Utilized By The Defendants In Selecting Him For Execution And Date Scheluded

20. Plaintiff incorporates paragraphs (9) thr (19) as though they were stated fully herein.

21. After Purkey was advised by Warden Watson of the date that Defendants Barr and Hurwitz had designated for Purkey's execution to occur he then requested the criteria, policy and/or any other promulgation utiled by the defendants in making their selection of him for execution amongst the many other death row inmates who had fully exhausted their appellate remedies years prior to him. See ¶ 9. Warden Watson had absolutely no idea what the applicable BOP Policy, statutory prmulgation and/or criteria utilized by defendant Barr or Hurwitz in selecting me per se for execution in-lieu of the dozen or more of other death row prisoners who had fully exhuated their Capital Appellate Remedies years prior to mine being exhausted.

22. Throughout the month of August, 2019 Purkey diligently requested the policy, statutory provision and/or any other criteria utilized by the defendants in selecting him for execution prior to the irrefutable dozen or more of other federal death row inmates who had fully and completely exhausted their capital appellate remedies before him. Neither Case Worker Sutton, Unit Manager Thomas or Case Manager Shepherd had any idea what-so-ever what policy or other provisions was utilized by Barr and Hurwitz in selecting him for execution. See Appendix (A). On October 1st., 2019 USP/TH Legal Department readily clarified that they was not aware of what if any official promulgation was utilized by defendants' Barr and Hurwitz in selecting me or setting my execution date. See Appx. (B). What USP/TH Legal Department did speeiously contend that, "28 CFR sec. 26.1 et seq." was the criteria which I satisfied for an execution date to be scheluded. See Appx (C). Contrary to USP/TH Legal Dept.'s contentions otherwise this given Code of Federal

8.

Regulation addresses the Date, Time, Place, and Method of Execution in the most vage clanguage possible, but does not establish and criteria or promulgating for selecting an inamte or inmates for scheluding execution dates.

23. Here the defendants cannot deny the glaring arbitrariness of the application of selecting Purkey for execution over the dozen or more inmates who have irrefutably exhausted thier capital appellate remedies years prior to Purkey. Here the defendants cannot confer power on themselves in the selection process of who will selected for execution first and so forth, whereas they must comply with their own policies and regulations in determining the selection process for secheluing different inmates for execution. The defendants have refused to provide the authority or criteria utilized in such selection process in designating Purkey to die on December 13th, 2019. The defendants Barr and Hurwitz are treating Purkey different than other inmates who are similarly situated who have exhausted their capital appellate remedies years prior to his and such disparate treatment is being done without any legitimate reason.

<u>Count    Two</u>

<u>The Defendants Did Treat The Plaintiff Differently Than Other Inmates</u>
<u>Similarly Situated Denying Him Equal Protection Of The Law Because Of His</u>
<u>Jailhouse Lawyering Activities In Violation Of The Fifth Amendment To The</u>
<u>United States Constitution In Selecting Him For Execution</u>

24. It is irrefutable that over a dozen or more federal death row inmates have fully exhuasted their capital appellate remedies prior to Purkey doing so, and yet the defendants' have selected Purkey for execution prior to anyone of the other dozen or more death row inmates, and has did so without any legitimate reason what-so-ever. This brings to bear the ultimate reason for the gross disparate treatment and that being Purkey's protracted jailhouse lawyering activities, which underscores such arbitrary selection. <u>See pargraphs (9) thr (23) which Purkey</u> <u>incorporates herein as though they were fully stated herein.</u>

<u>Count    Three</u>

<u>The Defendants Have Engaged In "Reverse Discrimination" In Violation Of</u>
<u>Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and</u>
<u>42 U.S.C. § 1981 in selecting And Designating Purkey For Execution Over</u>
<u>The Other The Other Dozen Or More Inmates Similarly Situated Who Irrefutably</u>
<u>Fully Exhausted Their Federal Appellate Remedies Years Prior To Purkey</u>
<u>Whereas Such Discrimination Is Based On Race</u>

9.

25. The Plaintiff incorporates paragraphs (9) thr (24) as though they were stated fully herein.

26. Prior to Purkey being selected for execution and dsignated an execution date all such similarly situated inmates have been selected for execution and given designated execution dates based "solely" on when that particular death row inamte had exhausted their capital appellate remedies. See ¶ 10 herein. This was true with the very first three inmates whom were selected for execution and designated with execution dates, whereas such selection and designation occurred in such sequence. id. Whereas' the next five federal death row inmates who were selected and designated with execution dates as well received such in sequence of when they each had fully exhausted their federal appellate remedies. id. At that time in 2005-2006, as well as some years prior to such selection and designated execution dates a cloud of racial discrimination hanged over the federal death penalty and its application itself. All five inmates selected for and given designated execution dates in 2005-06 were black inmates and in each of their litigation spawn from such selection and designation were challenges made to the racial discrimination of the federal death penalty itself. Purkey had yet to avail himself of his federal appellate remedies until 2012 - six or seven years after the other inmates who had been selected and given designate execution dates, whereas at least a dozen or more similaarly situated inmates had exhausted their appellate remedies prior to Purkey in 2012 and yet Purkey was selected and designated with an execution prior to them without an legitimate reason for the gross disparate treatment. The reason for such gross disparate treatment is discriminatory based on race, whereas Purkey being white was choosen to preclude the cries of racial discrimination permeating the federal death penalty itself bringing to bare the "reverse discrimination" that underscores his selection for execution and being designated a execution date prior to those dozen or more inamtes, including the five original inmates selected and designated with execution dates in 2005-06 who are all black.

27. There is no logical reason that the defendants treatment of Purkey who exhausted his appellate remedies at minimu six or seven years after the original five federal death row inmates did their appellate remedies and had been selected for execution and designated with execution dates other than race. Priro to Purkey being selected and designated with an execution date all federal death row inmates were selected and designated with execution dates based on the sequence of exhausting their appellate remedies. Whereas' the defendants Barr and Hurwitz have selected Purkey who is white to obviate allegations and challenges of the kind faced back in 2005-06,

10.

based on race discrimination against black's.in application of the federal death penalty. Here it is irrefutable that there are at minimum a dozen or more blacks who had fully and completely exhausted their appellated remedies six or seven years prior to Purkey doing so and not so much as one of them were tentatively selected for execution and designated execution dates by the defendants, whereas all such similarly situated death row inmates had been selected and designated execution dates in sequence of exhuasting such appellate remedies up until now.

Count    Four

<u>Purkey Has been Subject To Cruel And Unusual Punishment In Violation Of</u>
<u>The Eighth Amendment To The United States Constitution By The Defendants</u>
<u>By The Defendants Deliberate Subjecting Him To Protracted Sleep Deprivation</u>

28. Plaintiff incorporated paragraphs (9) thr (28) as though they were stated fully herein.

29. The defendants Warden Watson and Cpt. Taylor has established a policy mandating that all inmates with execution -dates be accounted for (making such that that are alive an breath) every fifteen minutes since they were designated with execution dates on July 25th, 2019. See Appx. (D). Purkey has and continues to suffer acute sleep deprivation because of this policy mandate of being awaken every fifteen minutes of every day since receiving his December 13th, 2019 Execution date on July 25th, 2019. Purkey has addressed this purported policy/order issued by Warden Watson and carried out by Cpt. Taylor with both of these officials. See Attached Appx. (D) ¶ 1. Warden Watson advised Purkey with Cpt. Taylor present that, "he does not have a problem with staff making sure that are awake and alive every fifteen minutes or so - as long as they are not shaking the cell door's or making noise of one sort or another. Purkey then went onto ask Warden Watson, "so you mean that I am not entitled to sleep because I have an execution date and that you condone your staff needlessly waking me up despite my cell light being left on so they have a vivid view of me lying in bed within this concrete cell." Warden Watson responded unequivocally that, "that is right, as long as they are only waking you up with their flashlight - then they are in compliance with my policy." id.

30. Purkey's cell on A-Range, as with all of the other cell's on the range have camera's at the upper-right corner of the exterior wall, which maintains a clear view of the entire enter section of the cell.

31. Because of the constant waking up by staff making fifteen minute rounds on the range, and/or other staff making rounds as well as those fifteen minute rounds

11.

Purkey has and continues to suffer acute sleep deprivation suffering acute anxiety, fatigue, severe chest pains, escalated heart rates, severe headackes and disorientation.

### VII.    Preliminary Injunction Relief

#### Purkey Request That The Court Grant Him A Preliminary Injunction Relief In Combination With A Request - To Expeditie Discovery

Pursuant to Federal Rule of Civil Procedure 65(a), Purkey does request that the Court issue a preliminary Injunction ordering that the defendants provide "all aarecords, documents, policies and/or other materials that they utilized in selecting Purkey for Execution prior to the dozen or more other death row inmates who had exhausted all of their appellate remedies years prior to him." Here Purkey has shown that he is likely to prove at trial that the defendants violated his rights; 2) he will likely suffer irreparable harm if the court does not issue the requested preliminary injunction; 3) thje threat of harm that Purkey faces far outweighs any harm that the preliminary injunction could cause the defendants; and 4) the requested preliminary injunction wills erve the public interest. The Supreme Court has clarified that to win an injunction, an inamte such as Purkey must shown that they are under an "actual or imminent injury." Lewis v. Casey, 518 U.S. 343, 349-50, 116 S.Ct. 2174 (1996).Here Purkey is under an "imminent threat of actual ahrm", i.e. execution date of December 13th, 2019, whereas the Injunctive Relief requested has been narrowly drawn and extends no further than necessary to correct the violation of Federal Rights, Hutto v. Finney, 437 U.S. 678, 687, 98 S.Ct. 2565 (1878) and is the least intrusive means necessary to correct those violations of Federal rights. id. Whereas Purkey' respectfully request that the Court grant such injunctive relief requested in "expediting discovery" as requested herein.

### VIII.    Prayer  For  Relief

WHEREFORE, Plaintiff respectfully prays the Court:

A.    Declare that the acts and omissions described herein violated the Plaintiff's Rights under the First, Fifth and Eighth Amendments to the United States Constitution;

B.    Order that the defendants pay compensatory damages in the amount of $25,000 collectively;

C.    Order that the defendants pay punitive damages in the amount of $50,000 collectively;

D.    Grant Plaintiff's requested Preliminary Injunctive Relief;

E.    Order that the defendants pay reasonable attorney fees and cost of this action;

F.   Grant other just and equitable relief that the Court deems just and fair.

## Signed Under declaration of Penalty Of Perjury

The undersigned does attest that the above and foregoing statements, facts and claims are true and correct to the best of his knowledge and beliefs pursuant to 28 U.S.C. § 1746. Executed on this 11th day of October, 2019.

RESPECTFULLY SUBMITTED,

Wesley I. Purkey #14679-045
United States Penitentiary
P.O. Box 33
Terre Haute, INdiana 47808
Plaintiff / pro se

13.

Appx. (A) p. 1 of 1   Cop Olet

Mr. Shepherd

Turkey 14679-045
SCC A-313

Please provile me with either the statutory, Regulatory and/or administration policy promulgating designation of inmate's execution selection and Rating! As was utilized in my perticular Case:    thank you!

9/18/19

CC: Warden J.T. Watson
     Mr. George Kocres (ott.

Sut to legal
9-17-19 6:15 Am

No Answer as
of 9-24-19 8Am

TRULINCS 14679045 - PURKEY, WESLEY IRA - Unit: THP-X-A

-----------------------------------------------------------------------------------------

FROM: 14679045
TO: Legal
SUBJECT: ***Request to Staff*** PURKEY, WESLEY, Reg# 14679045, THP-X-A
DATE: 10/04/2019 08:50:31 AM

To: K. Siereveld
Inmate Work Assignment: ua

So you are telling me that Warden Watson who announced my execution date is not knowledgable of the authority that the BOP Director utilized in designating which dead row inmates - which death row inmates would be eligible for execution dates to be given. Was such selection of myself and the other four (4) death row inmates totally selected at the BOP Director's discretion w/o any promulgated criteria for making such determination(s). Totally random in other words! Please clarify if that was the case! Thank you very much for your attention to this matter!
cc: file; Ms. Michelle Law/Springfield, MO
-----Legal on 10/1/2019 1:42 PM wrote:

>
We do not have any further information outside of the fact that you meet the criteria based on 28 CFR sec. 26.1 et seq.
~K. Siereveld

>>> ~^!"PURKEY, ~^!WESLEY IRA" <14679045@inmatemessage.com> 10/1/2019 11:52 AM >>>
To: K. Siereveld
Inmate Work Assignment: ua

I had sent Mr. Shepherd a Cop Out several weeks back requesting the criteria/policy/statutory promulgation utilized in "selecting inmates' for scheluding them with execution dates, and yet he provided me with a CFR which only dealt with carrying out execution's not the criteria UTILIZED in selecting inmates' for designation with exdecution dates. More than 15 inmates fully exhausted their appellate processes prior to mine and yet I was one of the first five receive a execution without so much as one of those 15 inmates being designated. I am again reqeusting the 'criteria', policy and/or statutory provision setting forth the criteria for seleceing inmates for designating them with execution date. If the BOP Director has unfettered discretion is making this determination - in selecting whatever death row prisoner's that he deems appropriate for execution's then please afford me with such authority authorizing such unfettered discretion, and/or the authority setting forth the criteria for such determination to occur. Thank you for your attention to this matter!\
cc: file;Ms. Michelle Law/Springfield, MO

Perkup

Appx. (C)

# 28 CFR Part 26-Death Sentences Procedures

## §26.1   Applicability.

The regulations of this part apply whenever a sentencing hearing conducted in a United States District Court has resulted in a recommendation or determination that a criminal defendant be sentenced to death for commission of an offense described in any federal statute.

## §26.2   Proposed Judgment and Order.

(a) Whenever this part becomes applicable, the attorney for the government shall promptly file with the sentencing court a proposed Judgment and Order. The proposed Judgment and Order shall state, in addition to any other matters required by law or otherwise appropriate, that:

(1) The sentence shall be executed by a United States Marshal designated by the Director of the United States Marshals Service;

(2) The sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death;

(3) The sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons; and

(4) The prisoner under sentence of death shall be committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the sentence.

(b) The attorney for the government shall append to the proposed Judgment and Order a Return by which the designated United States Marshal may inform the court that the sentence of death has been executed.

## §26.3   Date, time, place, and method of execution.

(a) Except to the extent a court orders otherwise, a sentence of death shall be executed:

(1) On a date and at a time designated by the Director of the Federal Bureau of Prisons, which date shall be no sooner than 60 days from the entry of the judgment of death. If the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted;

(2) At a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons;

(3) By a United States Marshal designated by the Director of the United States Marshals Service, assisted by additional personnel selected by the Marshal and the Warden of the designated institution and acting at the direction of the Marshal; and

(4) By intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal.

(b) Unless the President interposes, the United States Marshal shall not stay execution of the sentence on the basis that the prisoner has filed a petition for executive clemency.

# §26.4  Other execution procedures.

Except to the extent a court orders otherwise:

(a) The Warden of the designated institution shall notify the prisoner under sentence of death of the date designated for execution at least 20 days in advance, except when the date follows a postponement of fewer than 20 days of a previously scheduled and noticed date of execution, in which case the Warden shall notify the prisoner as soon as possible.

(b) Beginning seven days before the designated date of execution, the prisoner shall have access only to his spiritual advisers (not to exceed two), his defense attorneys, members of his family, and the officers and employees of the institution. Upon approval of the Director of the Federal Bureau of Prisons, the Warden may grant access to such other proper persons as the prisoner may request.

(c) In addition to the Marshal and Warden, the following persons shall be present at the execution:

(1) Necessary personnel selected by the Marshal and Warden;

(2) Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary;

(3) Not more than the following numbers of person selected by the prisoner:

(i) One spiritual adviser;

(ii) Two defense attorneys; and

(iii) Three adult friends or relatives; and

(4) Not more than the following numbers of persons selected by the Warden:

(i) Eight citizens; and

(ii) Ten representatives of the press.

(d) No other person shall be present at the execution, unless leave for such person's presence is granted by the Director of the Federal Bureau of Prisons. No person younger than 18 years of age shall witness the execution.

(e) The Warden should notify those individuals described in paragraph (c) of this section as soon as practicable before the designated time of execution.

(f) No photographic or other visual or audio recording of the execution shall be permitted.

(g) After the execution has been carried out, qualified personnel selected by the Warden shall conduct an examination of the body of the prisoner to determine that death has occurred and shall inform the Marshal and Warden of his determination. Upon notification of prisoner's death, the Marshal shall complete and sign the Return described in §26.2(b) or any similar document and shall file such document with the sentencing court.

(h) The remains of the prisoner shall be disposed of according to procedures established by the Director of the Federal Bureau of Prisons.

# §26.5   Attendance at or participation in executions by Department of Justice personnel.

No officer or employee of the Department of Justice shall be required to be in attendance at or to participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee, or if the employee is a medical professional who considers such participation or attendance contrary to medical ethics. For purposes of this section, the term "participation" includes personal preparation of the condemned individual and the apparatus used for execution and supervision of the activities of other personnel in carrying out such activities.

28 CFR Part 26-Death Sentences Procedures Subpart A only goes 26.1-5. Subpart B-Certification Process for State Capital Counsel Systems is 26.20-23. There is no 26.6-10 and consequently would defer any further to your Legal Counsel.

Wesley I'll Purkey #14679-045



Warden J. T. Watson

## Facts Underscoring Warden Watson & Cpt. Taylor's Tactic Policy which abuses of Execution Confinement Is Predicated On:

As thoroughly documented in the past since being place on Execution Range / July 25th, 2019 that Warden Watson and Cpt. Taylor has established a tactic written policy mandating that inmates with execution dates be woken up every fifteen minutes to determine that they are still alive. Through several different written communciations, i.e. Cop Out(s) and email afforded to both Warden Watson and Cpt. Taylor since July 25th, 2019 I have addressed the ongoing, protracted and chronic problem of being denied sleep by both SCU Staff and Staff Assigned to the Execution Range; as well as different Lieutenant(s) making rounds on the Range which in the most part have not received responses. On Sept. 5th, 2019 during administrative rds on Execution Range Warden Watson had the exterior door of my box-car cell door(s) open, whereas he entered such exterior of my cell and asked me if I had any issues to be addressed. I immediately addressed both SCU Staff, as well as SCU Staff Assigned to Execution Range constantly waking me up by holding a five battery flashlight in my face when they made rounds which consisted of at minimum every fifteen minutes and/or rounds being made sometimes at brief intervals of "within minutes apart from rounds being made". Warden Watson in response unequivocally clarified that, "I do not have a problem with staff making sure that you are awake and alive every fifteen minutes or so – as long as they are not shaking the cell door's or making noise of one sort or another," he told me. When sought additional clarification asking him, "so you mean that I am not entitled to sleep because I have an execution date and that you condone your staff needlessly waking me up despite my cell light being elft on so they have a vivid view of me lying in bed within this concrete cell," I asked him. "That is right,d as long as they are only waking you up with their flashlight – then they are inc ompliance with my policy," Warden Watson told me.

This same night C.O. Pruit made her initial rounds on the Range at approximately 11:35 p.m. shining her flshlight directly into my face and holding it there. She made around round at approximately 11:58 p.m. performing the very same tactic that she initially did waking me up yest agin. Within a few minutes another SCU Staff member made rounds on the range and with his flashlight illuminating my cell and pointed directly in my face he held it there for several seconds until confronted him with his malicious deliberate actions. Unable to see who it was because of the light directly being held in my face I asked him waht his name was, and he provided me with the typical adolescent response telling me that, "I will give you something with my name on it." Of course this is the typical juvenile threat of reprisal if an inamte seeks redress for such abusive actions by staff. Within seven (7) minutes of this incident occurring C.O. Pruitt was back making yet another round on the range performing her usual abuse of shining her flashlight directly into my face, illuminating the cell and making sure that I a̓y awake and alive. These abuses by C.O. Pruitt continued throughout the night, as they do everynight that she works on Execution Range.

On 9/06/19 at approximately 11:35 p.m. after Pruitt made her initial round oc̑ddn the range another SCU Staff member came to my cell performing rounds and stood at my cell door for at least two to three minutes holding his flashlight directly in my face unitl I again confront him about his continuous abusive actions. When I asked C.O. Puritt later who take C.O. was holding his flashlight in my face for a protracted period – she advised me that, "last night that officer was 'Falk'. Whether this was the same staff member performing the same abusive actions on this date I have no way of knowing.

### Well Established Authority Demonstrating Violation Of Well Established Law / Sleep Deprivation:

Sleep is critical to maintain physical and mental well being, and conditions that cause inamte(s) to suffer sleep deprivation are held to violate well established law. See Walker v. Schult, 717 F.3d 119, 126 (2d Cir. 2013); see also Obama v. Butl, 477 Appx' 409, 411 (8th Cir. 2012). Inmates allegations of being contantly being subject to sleep deprivation by prison staff, causing them severe headackes, stress and anxiety was sufficient to state a cognizable Eighth Amendment Violation of law. See Melsy v. Schuetzle, 230 F.3d 1363, 1365, 2000 WL at *1 (8th Cir. 2000); see also Gates v. Cook, 376 F.3d 323, 340 (5th Cir. 2004); and also Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999).

The tactic policies created by both Warden Watson and Cpt. Taylor which has created the abuses causing me sever protracted, ongoing and chronic sleep deprivation, and the abuses at the hands of both SCU Staff and SCU Staff Assigned to Execution Range stands in acute violation of well established law, as described aherein.

cc: file

Laura Briggs
U.S. Dist. Courthouse
921 OHIO ST
Terre Haute, IN 47807

Re: Purkey v. Barr, #_____

October 21st., 2019

Dear Ms. Briggs,

Please find enclosed a Bivens Action for filing with the Court, whereas
I have enclosed the original, plus an additional copy for filing with the Court,
as well as a copy for each of the named defendants, totally five (5) copies,
plus the original. Also please find a Motion For Appointment of counsel, as
well as a Motion To file the Bivens Action Informa Pauperis pursuant to the
exception of the three strikes mandated pursuant to 28 U.S.C. §1915g, whereas
I have enclosed the original - plus an additional copy of each for filing with
the court.

If additional information and/or documentation is needed for filing the
listed materials above please advise. Thank you for your attention to these
filings.

Sincerely,

Wesley I. Purkey #14679-045
United States Penitentiary
P.O. Box 33
Terre Haute, IN 47808
Plaintiff / pro se

cc: file
   Attached listing defendants addresses
            for issuance of summons

Listing of addresses for Issuances of Summons:

Defendants J.T. Watson & Cpp. Taylor

USP/TH
4700 Bureau Road South
Terre Haute, IN 47802


Defendant Hugh Hurwitz
Fed. Bureau of Prison
320 First Street, NW
Washington, D.C. 20534

William Barr / Attorney General U.S.

U.S.Department of Justice
950 PennsylvaniaAvenue, NW
Washington, DC 20530



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

WESLEY I. PURKEY,                            )
                                             )
                    Plaintiff,               )
                                             )
            v.                               )       No. 2:19-cv-00517-JRS-DLP
                                             )
WILLIAM BARR, et al.                         )
                                             )
                    Defendants.              )

**ENTRY DENYING AS PRESENTED MOTION FOR LEAVE TO
PROCEED *IN FORMA PAUPERIS*, SCREENING COMPLAINT,
SEVERING CLAIMS, AND DIRECTING ISSUANCE OF PROCESS**

This action is before the Court for resolution of Plaintiff Wesley Purkey's motion for leave to proceed *in forma pauperis*, dkt. 2; for screening of his complaint pursuant to 28 U.S.C. § 1915A(b); and for issuance of process on the defendants.

### I. Motion for Leave to Proceed *In Forma Pauperis*

Mr. Purkey's motion for leave to proceed *in forma pauperis*, dkt. [2], is **denied as presented**. He shall have **through November 29, 2019**, to renew his motion by filing a copy of the transaction history associated with his institution trust account for the six-month period preceding the filing of this action on October 28, 2019.

### II. Screening

Mr. Purkey is an inmate at the U.S. Penitentiary at Terre Haute, Indiana. Because he is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(b) to screen his complaint.

**A.     Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pro se complaints such as that filed by the plaintiff are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

**B.     The Complaint**

Mr. Purkey is an inmate in the special confinement unit (SCU). He has been sentenced to death, and his execution has been scheduled for December 13, 2019. Mr. Purkey's complaint concerns two issues: the basis upon which he has been selected for execution, and the conditions of his confinement in the SCU.

The defendants are U.S. Attorney General William Barr, Bureau of Prisons Director Hugh Hurwitz, Warden J.T. Watson, and Captain Taylor. Mr. Purkey seeks damages and injunctive and declaratory relief.

Mr. Purkey alleges that, among the pool of inmates with death sentences, only a very small number have been scheduled for execution. He alleges that he has been selected for execution either arbitrarily or because of his race or his history of filing grievances and lawsuits in prison.

2

Mr. Purkey also alleges that, since his execution date was set, an officer has come to his cell to check on him every fifteen minutes. This includes shining a flashlight on him while he is sleeping. As a result, he has not been able to sleep more than fifteen minutes at a time, and he is experiencing anxiety, fatigue, chest pains, severe headaches, disorientation, and an elevated heart rate.

**C.    Discussion**

This action **shall proceed** with claims against Defendants Barr and Hurwitz based on the First and Fifth Amendments, Title VII of the Civil rights Act of 1964, 42 U.S.C. § 1981, and the theory recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). These claims are based on the assertions that the defendants selected Mr. Purkey for execution either arbitrarily, based on his race, or as an act of retaliation, and they shall proceed against Defendants Barr and Hurwitz in their individual and official capacities.

Mr. Purkey has also articulated claims against Defendants Watson and Barr based on his sleep deprivation. However, these claims may not proceed in the same action as those discussed in the previous paragraph.

Defendants may be joined in a single lawsuit only if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and*

(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2) (emphasis added).

Mr. Purkey's two sets of claims hinge on separate legal and factual issues. One concerns the basis upon which he has been selected for execution, and the other concerns his treatment as an inmate. No question of law or fact that applies to Mr. Purkey's claims against Mr. Barr and Mr. Hurwitz would also apply to his claims against Mr. Watson and Mr. Taylor, and vice versa.

3

When claims are misjoined, the Court has authority to "sever any claim." Fed. R. Civ. P. 21. In fact, it is preferable for the Court to sever misjoined claims, "allowing those grievances to continue in spin-off actions, rather than dismiss them." *Wilson v. Bruce*, 400 F. App'x 106, 108 (7th Cir. 2010) (citing Fed. R. Civ. P. 21; *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)).

Therefore, Mr. Purkey's sleep-deprivation claims against Defendants Watson and Taylor are **severed** and shall proceed in a separate action. The **clerk is directed** to terminate Defendants Watson and Taylor as defendants in this action. The **clerk is also directed** to open a new civil action in the Indianapolis Division consistent with the following:

(a) The plaintiff shall be Wesley Purkey.

(b) The defendants shall be (1) J.T. Watson, Complex Warden, and (2) Captain Taylor.

(c) The Nature of Suit shall be 555.

(d) The Cause of Action shall be 28:1331.

(e) The clerk shall file copies of the complaint (dkt. 1), the motion for leave to proceed *in forma pauperis* (dkt. 2), and this Entry in the new action.

(f) This action and the new action shall be shown as linked actions on the docket.

(g) The assignment of judicial officers shall be by random draw.

The Court will screen Mr. Purkey's sleep-deprivation claims pursuant to § 1915A(b) once the new action is opened.

### III. Issuance of Process

**Personal service is required** in serving Defendants (1) William Barr and (2) Hugh Hurwitz. *Robinson v. Turner*, 15 F.3d 82 (7th Cir. 1994). The Marshal for this District or his designee shall serve the summons, together with copies of the complaint (dkt. 1) and this Entry, on the defendants pursuant to Fed. R. Civ. P. 4(i)(2), at the expense of the United States.

## IV. Conclusion

In Conclusion:

- Mr. Purkey's motion for leave to proceed *in forma pauperis*, dkt. [2], is **denied as presented**. He shall have **through November 29, 2019**, to renew his motion by filing a copy of the transaction history associated with his institution trust account for the six-month period preceding the filing of this action on October 28, 2019.

- This action **shall proceed** with claims against Defendants Barr and Hurwitz, in their individual and official capacities, based on the First and Fifth Amendments, Title VII of the Civil rights Act of 1964, 42 U.S.C. § 1981, and the theory recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

- Mr. Purkey's sleep-deprivation claims against Defendants Watson and Taylor are **severed** and shall proceed in a separate action. The **clerk is directed** to terminate Defendants Watson and Taylor as defendants in this action and to open a new civil action in the Terre Haute Division as discussed in Part II(C) above.

- The Marshal shall issue process to Defendants Barr and Hurwitz in the manner discussed in Part III.

**IT IS SO ORDERED.**

Date:    11/12/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

5

Distribution:

WESLEY I. PURKEY
14679-045
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

United States Marshal
Southern District of Indiana
46 East Ohio Street
179 U.S. Courthouse
Indianapolis, IN 46204

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| WESLEY I. PURKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:19-cv-00517-JRS-DLP |
| | ) |
| WILLIAM BARR, et al. | ) |
| | ) |
| Defendants. | ) |

**SUMMONS IN A CIVIL CASE**

TO:    United States Attorney General          William Barr
       Department of Justice                   U.S. Attorney General
       10th and Constitution Ave., NW          10th & Constitution Ave., NW
       Washington, DC  20530                   Washington, DC 20530

       Office of the United States Attorney    Hugh Hurwitz
       Southern District of Indiana            Director
       10 W. Market St.                        U.S. Bureau of Prisons
       Suite 2100                              320 1st St., NW
       Indianapolis, IN  46204-3048            Washington, DC 20534

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon WESLEY I. PURKEY, 14679-045, TERRE HAUTE - USP, Inmate Mail/Parcels, P.O. BOX 33, TERRE HAUTE, IN 47808, an answer to the complaint which is herewith served upon you, within 60 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

11/12/19

_____
Date

*CLERK OF COURT, Laura A. Briggs*

BY: _____

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
See *"Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF **WESLEY I. PURKEY** | COURT CASE NUMBER **2:19-cv-00517-JRS-DLP** |
|---|---|
| DEFENDANT **WILLIAM BARR, et al.** | TYPE OF PROCESS **Entry, Summons, Complaint** |

**SERVE AT** {

NAME OF INDIVIDUAL, COMPANY, CORPORATION. ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

**US Attorney General, Department of Justice**

ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)*

**10th and Constitution Ave., NW, Washington, DC  20530**

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | | |
|---|---|---|
| **Clerk of Court** | Number of process to be served with this Form 285 | **1** |
| | Number of parties to be served in this case | **4** |
| | Check for service on U.S.A. | ✓ |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (*Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service*):

| Signature of Attorney other Originator requesting service on behalf of: **s/ R. Farrington, Deputy Clerk** | ☑ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER **(812) 231-1841** | DATE **11/12/19** |
|---|---|---|---|

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY-- DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. *(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin No. _____ | District to Serve No. _____ | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual , company, corporation, etc., at the address shown above on the on the individual , company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above (*See remarks below*)

| Name and title of individual served *(if not shown above)* | ☐ A person of suitable age and discretion then residing in defendant's usual place of abode |
|---|---|
| Address *(complete only different than shown above)* | Date | Time | ☐ am ☐ pm |
| | Signature of U.S. Marshal or Deputy | | |

| Service Fee | Total Mileage Charges including *endeavors)* | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal* or (Amount of Refund*) |
|---|---|---|---|---|---|

REMARKS:

DISTRIBUTE TO:
1. CLERK OF THE COURT
2. USMS RECORD
3. NOTICE OF SERVICE
4. BILLING STATEMENT*: To be returned to the U.S. Marshal with payment, if any amount is owed. Please remit promptly payable to U.S. Marshal.
5. ACKNOWLEDGMENT OF RECEIPT

PRIOR EDITIONS MAY BE USED

Form USM-285
Rev. 11/13

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF<br>**WESLEY I. PURKEY** | COURT CASE NUMBER<br>**2:19-cv-00517-JRS-DLP** |
|---|---|
| DEFENDANT<br>**WILLIAM BARR, et al.** | TYPE OF PROCESS<br>**Entry, Summons, Complaint** |

SERVE AT {

NAME OF INDIVIDUAL, COMPANY, CORPORATION. ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
**Office of the US Attorney**

ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)*
**10 West Market Street, Suite 2100, Indianapolis, IN 46204-3048**

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | | |
|---|---|---|
| **Clerk of Court** | Number of process to be served with this Form 285 | **1** |
| | Number of parties to be served in this case | **4** |
| | Check for service on U.S.A. | ✓ |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service):*

| Signature of Attorney other Originator requesting service on behalf of:<br>**s/ R. Farrington, Deputy Clerk** | ☑ PLAINTIFF<br>☐ DEFENDANT | TELEPHONE NUMBER<br>**(812) 231-1841** | DATE<br>**11/12/19** |
|---|---|---|---|

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY-- DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. *(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin<br>No. _____ | District to Serve<br>No. _____ | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual , company, corporation, etc., at the address shown above on the on the individual , company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*

| Name and title of individual served *(if not shown above)* | ☐ A person of suitable age and discretion then residing in defendant's usual place of abode |
|---|---|
| Address *(complete only different than shown above)* | Date | Time | ☐ am ☐ pm |
| | Signature of U.S. Marshal or Deputy | | |

| Service Fee | Total Mileage Charges including *endeavors)* | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal* or (Amount of Refund*) |
|---|---|---|---|---|---|

REMARKS:

DISTRIBUTE TO:
1. CLERK OF THE COURT
2. USMS RECORD
3. NOTICE OF SERVICE
4. BILLING STATEMENT*: To be returned to the U.S. Marshal with payment, if any amount is owed. Please remit promptly payable to U.S. Marshal.
5. ACKNOWLEDGMENT OF RECEIPT

PRIOR EDITIONS MAY BE USED

Form USM-285
Rev. 11/13

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF<br>**WESLEY I. PURKEY** | COURT CASE NUMBER<br>**2:19-cv-00517-JRS-DLP** |
|---|---|
| DEFENDANT<br>**WILLIAM BARR, et al.** | TYPE OF PROCESS<br>**Entry, Summons, Complaint** |

| SERVE AT | NAME OF INDIVIDUAL, COMPANY, CORPORATION. ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN |
|---|---|
| | **William Barr, U.S. Attorney General** |
| | **ADDRESS** *(Street or RFD, Apartment No., City, State and ZIP Code)* |
| | **10th and Constitution Ave., NW, Washington, DC  20530** |

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | | |
|---|---|---|
| **Clerk of Court** | Number of process to be served with this Form 285 | **1** |
| | Number of parties to be served in this case | **4** |
| | Check for service on U.S.A. | ✓ |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service):*

| Signature of Attorney other Originator requesting service on behalf of:<br>**s/ R. Farrington, Deputy Clerk** | ☑ PLAINTIFF<br>☐ DEFENDANT | TELEPHONE NUMBER<br>**(812) 231-1841** | DATE<br>**11/12/19** |
|---|---|---|---|

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY-- DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. *(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin<br>No. _____ | District to Serve<br>No. _____ | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual , company, corporation, etc., at the address shown above on the on the individual , company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*

| Name and title of individual served *(if not shown above)* | ☐ A person of suitable age and discretion then residing in defendant's usual place of abode |
|---|---|
| Address *(complete only different than shown above)* | Date | Time | ☐ am<br>☐ pm |
| | Signature of U.S. Marshal or Deputy | | |

| Service Fee | Total Mileage Charges including *endeavors)* | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal* or (Amount of Refund*) |
|---|---|---|---|---|---|

REMARKS:

| DISTRIBUTE TO: | 1. CLERK OF THE COURT<br>2. USMS RECORD<br>3. NOTICE OF SERVICE<br>4. BILLING STATEMENT*: To be returned to the U.S. Marshal with payment, if any amount is owed. Please remit promptly payable to U.S. Marshal.<br>5. ACKNOWLEDGMENT OF RECEIPT | PRIOR EDITIONS MAY BE USED |
|---|---|---|

Form USM-285
Rev. 11/13

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See ["Instructions for Service of Process by U.S. Marshal"](#)*

| PLAINTIFF **WESLEY I. PURKEY** | COURT CASE NUMBER **2:19-cv-00517-JRS-DLP** |
|---|---|
| DEFENDANT **WILLIAM BARR, et al.** | TYPE OF PROCESS **Entry, Summons, Complaint** |

**SERVE AT** {

NAME OF INDIVIDUAL, COMPANY, CORPORATION. ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
**Hugh Hurwitz, Direct of U.S. Bureau of Prisons**

ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)*
**320 First St. NW, Washington, DC 20534**

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | | |
|---|---|---|
| **Clerk of Court** | Number of process to be served with this Form 285 | **1** |
| | Number of parties to be served in this case | **4** |
| | Check for service on U.S.A. | ✓ |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include __Business and Alternate Addresses__, All Telephone Numbers, and Estimated Times Available for Service):*

| Signature of Attorney other Originator requesting service on behalf of: **s/ R. Farrington, Deputy Clerk** | ☑ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER **(812) 231-1841** | DATE **11/12/19** |
|---|---|---|---|

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY-- DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. *(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin No. | District to Serve No. | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual , company, corporation, etc., at the address shown above on the on the individual , company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*

| Name and title of individual served *(if not shown above)* | ☐ A person of suitable age and discretion then residing in defendant's usual place of abode |
|---|---|
| Address *(complete only different than shown above)* | Date \| Time ☐ am ☐ pm |
| | Signature of U.S. Marshal or Deputy |

| Service Fee | Total Mileage Charges including *endeavors)* | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal* or (Amount of Refund*) |
|---|---|---|---|---|---|

REMARKS:

**DISTRIBUTE TO:**
1. CLERK OF THE COURT
2. USMS RECORD
3. NOTICE OF SERVICE
4. BILLING STATEMENT*: To be returned to the U.S. Marshal with payment, if any amount is owed. Please remit promptly payable to U.S. Marshal.
5. ACKNOWLEDGMENT OF RECEIPT

PRIOR EDITIONS MAY BE USED

Form USM-285
Rev. 11/13