UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WESLEY I. PURKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-00517-JMS-DLP |
| | ) | |
| WILLIAM BARR, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**BRIEF IN SUPPORT OF
INDIVIDUAL CAPACITY DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................................iii

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND............................................................................................................2

ARGUMENT....................................................................................................................................4

I.      THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS BARR AND HURWITZ .................................................................................................4

II.     THE INDIVIDUAL CAPACITY CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW.............................................................................................................6

        A.      Special Factors Foreclose Creation Of The *Bivens* Remedy Sought. .................6

                1.      The Claims Arise In A New Context ........................................................8

                2.      Special Factors Counsel Against A New *Bivens* remedy.........................9

                        a)      The Federal Criminal Justice System Is An Alternative Process Counseling Against Creating A New *Bivens* Remedy .9

                        b)      Separation Of Powers Principles Counsel Against Creating A New *Bivens* Remedy ...................................................................11

                        c)      The Sum Of The Applicable Special Factors ..........................15

        B.      Defendants Barr And Hurwitz Are Entitled To Qualified Immunity ............15

                1.      The Defendants Are Entitled to Qualified Immunity For Purkey's Equal Protection Claims........................................................................16

                        a)      No constitutional violation has been alleged...........................17

                        b)      No violation of clearly established law has been alleged. ......19

                2.      The Defendants Are Entitled To Qualified Immunity For Purkey's First Amendment Claims. ........................................................................21

        III.    NO TITLE VII CLAIM IS AVAILABLE ...................................................................23

        IV.     NO INDIVIDUAL CAPACITY EQUITABLE RELIEF IS AVAILABLE ............23

CONCLUSION................................................................................................................................23

# TABLE OF AUTHORITIES

**Federal Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ................................................................................ 4, 5

*Anderson v. Creighton*,
483 U.S. 635 (1987) ............................................................................................ 14, 16

*Ashcroft v. al–Kidd*,
563 U.S. 731 (2011) ................................................................................................ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 7, 8, 21, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 21

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) ............................................................................................. 1, 7

*Brosseau v. Haugen*,
543 U.S. 194 (2004) ................................................................................................ 16

*Bub v. Swiekatowski*,
No. 15-CV-195-JDP, 2019 WL 1434579 (W.D. Wis. Mar. 29, 2019) .................... 20

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .................................................................................................. 5

*Bush v. Lucas*,
462 U.S 367 (1983) .............................................................................................. 8, 11

*Butts v. Martin*,
877 F.3d 571 (5th Cir. 2017) .................................................................................... 8

*Carlson v. Green*,
446 U.S. 14 (1980) .................................................................................................... 7

*Chappell v. Wallace*,
462 U.S. 296 (1983) ................................................................................................ 12

*Chavez v. Truesdale*,
36 F. App'x 859 (7th Cir. 2002) .............................................................................. 10

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) .......................................................................................... 7, 9, 14

*Crawford-El v. Britton*,
523 U.S. 574 (1998) ................................................................................................ 14

*D.B. ex rel. Kurtis B. v. Kopp*,
725 F.3d 681 (7th Cir. 2013) ...................................................................... 16, 17, 19

*Davis v. Passman*,
442 U.S. 228 (1979) .................................................................................................. 7

*De La Paz v. Coy*,
786 F.3d 367 (5th Cir. 2015) .................................................................................... 9

*Del Marcelle v. Brown Cnty. Corp.*,
680 F.3d 887 (7th Cir. 2012) .................................................................................. 17

*Engquist v. Oregon Dep't of Agr.*,
553 U.S. 591 (2008) ................................................................................................ 13

*F.D.I.C. v. Meyer,*
  510 U.S. 471 (1994) ................................................................................................................ 15

*Feit v. Ward,*
  886 F.2d 848 (7th Cir. 1989) ................................................................................................ 23

*Felland v. Clifton,*
  682 F.3d 665 (7th Cir. 2012) .................................................................................................. 4

*Flying J Inc. v. City of New Haven,*
  549 F.3d 538 (7th Cir. 2008) ................................................................................................ 17

*Frederickson v. Landeros,*
  943 F.3d 1054 (7th Cir. 2019) .............................................................................................. 17

*Furman v. Georgia,*
  408 U.S. 238 (1972) .............................................................................................................. 12

*Geinosky v. City of Chicago,*
  675 F.3d 743 (7th Cir. 2012) ................................................................................................ 17

*Gregg v. Georgia,*
  428 U.S. 153 (1976) .............................................................................................................. 12

*Hanes v. Zurick,*
  578 F.3d 491 (7th Cir. 2009) ................................................................................................ 17

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
  466 U.S. 408 (1984) ............................................................................................................ 4, 5

*Hernandez v. Foster,*
  657 F.3d 463 (7th Cir. 2011) ................................................................................................ 16

*Hernandez v. Mesa,*
  137 S. Ct. 2003 (2017) ............................................................................................................ 8

*Idaho,*
  521 U.S. 261 (1997) .............................................................................................................. 15

*Iheme v. Smith,*
  529 F. App'x 808 (8th Cir. 2013) ......................................................................................... 23

*Islamic Am. Relief Agency v. Unidentified FBI Agents,*
  394 F.Supp.2d 34 (D.D.C. 2005) ........................................................................................... 6

*Johnson v. Robinson,*
  No. 15-CV-298-JPG-RJD, 2017 WL 5288190 (S.D. Ill. Nov. 13, 2017) ............................. 20

*Keeton v. Hustler Magazine, Inc.,*
  465 U.S. 770 (1984) ................................................................................................................ 5

*Key v. Shannon,*
  No. 17-CV-521-JDP, 2019 WL 3238638 (W.D. Wis. July 18, 2019) ................................... 20

*Klay v. Panetta,*
  758 F.3d 369 (D.C. Cir. 2014) .............................................................................................. 12

*Kohler v. Leslie Hindman, Inc.,*
  80 F.3d 1181 (7th Cir. 1996) ................................................................................................ 22

*Lauth v. McCollum,*
  424 F.3d 631 (7th Cir. 2005) ................................................................................................ 13

*Malley v. Briggs,*
  475 U.S. 335 (1986) .............................................................................................................. 16

*Miller v. City of Monona,*
  784 F.3d 1113 (7th Cir. 2015) .............................................................................................. 17

iv

*Minneci v. Pollard*,
  565 U.S. 118 (2012) ............................................................................................ 10, 15
*Norris v. Hearst Tr.*,
  500 F.3d 454 (5th Cir. 2007) ....................................................................................... 3
*Northern Grain Mktg., LLC v. Greving*,
  743 F.3d 487 (7th Cir. 2014) ....................................................................................... 4
*Northern v. Dobbert*,
  No. 16-CV-277-JDP, 2019 WL 4758206 (W.D. Wis. Sept. 30, 2019) .................................... 20
*O'Vadka v. Blum, No.*,
  3:06CV698, 2007 WL 1550429 (N.D. Ind. May 24, 2007) ................................................... 6
*Palay v. United States*,
  349 F.3d 418 (7th Cir. 2003) ....................................................................................... 3
*Pinkston-El-Bey v. Illinois*,
  358 F. App'x 713 (7th Cir. 2009) ................................................................................. 22
*Pollack v. Meese*,
  737 F. Supp. 663 (D.D.C. 1990) ................................................................................... 6
*Pope v. United States*,
  No. 16-1059-SLD, 2017 WL 6523141 (C.D. Ill. Aug. 28, 2017) ........................................... 23
*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) .................................................................................... 4, 5
*Purkey v. United States*,
  729 F.3d 860 (8th Cir. 2013) .................................................................................... 2, 3
*Purkey v. United States*,
  549 U.S. 975 (2006) .................................................................................................. 2
*Purkey v. United States*,
  No. 01-00308-01-CR-W-FJG, 2009 WL 3160774 (W.D. Mo. Sept. 29, 2009) ...................... 2, 10
*Purkey v. United States*,
  No. 06-8001-CV-W-FJG, 2009 WL 5176598 (W.D. Mo. Dec. 22, 2009) ................................. 3
*Purkey v. United States*,
  No. 219CV00414JPHDLP, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019) ........................... 3, 10
*Reichle v. Howards*,
  566 U.S. 658 (2012) .................................................................................................. 8
*Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Illinois*,
  424 F.3d 659 (7th Cir. 2005) ..................................................................................... 22
*Schweiker v. Chilicky*,
  487 U.S. 412 (1988) ................................................................................................ 12
*Sec. Bank, N.A. v. Tauber*,
  347 F.Supp. 511 (D.D.C. 1972) ................................................................................... 6
*Srail v. Village of Lisle, Ill.*,
  588 F.3d 940 (7th Cir. 2009) ..................................................................................... 16
*Swanson v. City of Chetek*,
  719 F.3d 780 (7th Cir. 2013) ..................................................................................... 13
*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) .................................................................................... 4, 5
*Thayer v. Chiczewski*,
  705 F.3d 237 (7th Cir. 2012) ..................................................................................... 16

*Thornton v. Quinlan*,
  864 F.Supp. 90 (S.D. Ill. 1994)............................................................................ 6

*Turner v. Brown*,
  No. 17-CV-764-JDP, 2019 WL 3431158 (W.D. Wis. July 30, 2019)..................................... 20

*United States v. Moore*,
  543 F.3d 891 (7th Cir. 2008) .......................................................................... 20

*United States v. Purkey*,
  428 F.3d 738 (8th Cir. 2005) ........................................................................ 2, 9

*United States v. Turkette*,
  452 U.S. 576 (1981)...................................................................................... 19

*Valona v. United States*,
  138 F.3d 693 (7th Cir. 1998) .......................................................................... 10

*Vega v. United States*,
  881 F.3d 1146 (9th Cir. 2018) .......................................................................... 9

*Vill. of Willowbrook v. Olech*,
  528 U.S. 562 (2000)...................................................................................... 16

*W. Radio Servs. Co. v. U.S. Forest Serv.*,
  578 F.3d 1116 (9th Cir. 2009) ........................................................................ 15

*Walden v. Fiore*,
  571 U.S. 277 (2014)................................................................................... 4, 5

*Wilkie v. Robbins*,
  551 U.S. 537 (2007)................................................................................ passim

*Williams v. Meese*,
  926 F.2d 994 (10th Cir. 1991) ........................................................................ 23

*Wilson v. Rackmill*,
  No. CIV. A. 87-0456, 1990 WL 87316 (E.D. Pa. June 18, 1990) .............................................. 6

*Woodruff v. Mason*,
  542 F.3d 545 (7th Cir. 2008) .......................................................................... 22

*Wroblewski v. City of Washburn*,
  965 F.2d 452 (7th Cir. 1992) .......................................................................... 17

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017)............................................................................. passim

**State Cases**

*LinkAmerica Corp. v. Cox*,
  857 N.E.2d 961 (Ind. 2006) ............................................................................ 4

**Federal Statutes**

5 U.S.C. § 301......................................................................................... 18
18 U.S.C. § 542 ....................................................................................... 12
18 U.S.C. §§ 3591-3594 ................................................................................. 12
28 U.S.C. § 509........................................................................................ 18
28 U.S.C. § 2241....................................................................................... 10
28 U.S.C. § 2255.................................................................................... 3, 10
28 U.S.C. § 4001(b)(1) ................................................................................. 18

42 U.S.C. § 1981 .................................................................................................................. 1

42 U.S.C. § 1983 ................................................................................................................ 16

42 U.S.C. § 2000e-3 ............................................................................................................ 1

Pub. L. No. 98-473 ............................................................................................................ 12

Pub. L. No. 100-690 .......................................................................................................... 12

Pub. L. No. 103-322 .......................................................................................................... 12

Rev. Stat. § 5325 (1875) ................................................................................................... 12

35 Stat. 304, 304 (1909) ................................................................................................... 12

50 Stat. 1088, 1151 (1937) ............................................................................................... 12

## Federal Rules

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 22

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 17

## Federal Regulations

28 C.F.R. Ch. 1 ........................................................................................................... 13, 18

28 C.F.R. Part 26 .............................................................................................................. 18

28 C.F.R. § 26.3(a)(1) .................................................................................................. 13, 18

28 C.F.R. §§ 542.10-542.19 .............................................................................................. 10

## INTRODUCTION

This lawsuit asks the Court to invoke the limited remedy first recognized by the Supreme Court in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), a judicially-created damages action against a government official in his or her personal capacity, and apply that remedy in a context in which a *Bivens* remedy has never been recognized.

The crux of this lawsuit is the government's decision to carry out a death sentence imposed upon a criminal defendant by a federal jury. Plaintiff Wesley Purkey, who was sentenced to death in 2004, does not challenge the lawfulness of that sentence. Rather, Purkey challenges the process associated with the scheduling of his execution date. Specifically, Purkey alleges that his execution date was arbitrarily scheduled ahead of other federal prisoners eligible for execution. Purkey claims this violates his rights under the First and Fifth Amendments,[1] and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, and 42 U.S.C. § 1981. Purkey's suit seeks compensatory damages, as well as equitable relief in the form of a declaratory judgment and an injunction requiring the production of information relied on in selecting him for execution. Purkey has sued two federal officials in their individual capacities: United States Attorney General William Barr and former Acting Director of the Federal Bureau of Prisons ("BOP") Hugh Hurwitz.[2]

As will be shown below, Purkey's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the Complaint fails to state a claim against Defendant Barr or Defendant Hurwitz.

---

[1] While the opening paragraph of the Complaint includes general statements in which Purkey alleges violations of his First Amendment rights, no First Amendment claims are specifically included in the Counts asserted against Defendants Barr and Hurwitz. However, in its November 12, 2019, Screening Order, the Court directed that this action proceed with claims against Defendants Barr and Hurwitz based upon the First and Fifth Amendments. *See* Dkt. No. 6 at 3.

[2] Defendants Barr and Hurwitz have also been sued in their official capacities. The official capacity claims are addressed in a separate motion. Purkey's Complaint also includes claims against two other Federal Bureau of Prisons officials, Warden J.T. Watson and Captain Taylor. The Court has severed the claims against Watson and Taylor and directed that they proceed in a separate action. *See* Dkt. No. 6.

Purkey's constitutional claims fail because in the more than forty years since deciding *Bivens*, the Supreme Court has recognized a new *Bivens* remedy against federal officials only twice, and it has never done so in the contexts pled in Purkey's Complaint. In the alternative, even if the Court recognizes a *Bivens* remedy where none has ever been permitted before, Defendants Barr and Hurwitz are entitled to qualified immunity because the Complaint does not state a violation of a clearly established constitutional right.

Purkey has no claim under Title VII because it applies only to discrimination in federal employment. And Purkey has no claim for equitable relief against Defendants Barr and Hurwitz because such relief is unavailable against a federal official in his or her individual capacity.

Purkey's Complaint should also be dismissed under Rule 12(b)(2) because he has not pled facts sufficient to establish personal jurisdiction over Defendant Barr or Defendant Hurwitz.

## FACTUAL BACKGROUND

Wesley Purkey was convicted in Missouri of kidnapping, raping, and murdering a sixteen-year-old girl. *United States v. Purkey*, 428 F.3d 738, 744-45 (8th Cir. 2005). A jury unanimously concluded that the aggravating factors associated with Purkey's crimes outweighed the mitigating factors, and determined that Purkey should be sentenced to death. *Purkey v. United States*, No. 01-00308-01-CR-W-FJG, 2009 WL 3160774, at *1 (W.D. Mo. Sept. 29, 2009), *aff'd*, 729 F.3d 860 (8th Cir. 2013). On January 23, 2004, a federal district court issued a judgment imposing the death penalty on Purkey. *Id.*

Purkey's conviction has been upheld on direct appeal and in post-conviction proceedings. The Eighth Circuit affirmed Purkey's conviction and death sentence, *see Purkey*, 428 F.3d 738; and rehearing as well as rehearing *en banc* were denied, *id.* The United States Supreme Court subsequently denied Purkey's petition for *certiorari*. *See Purkey v. United States*, 549 U.S. 975 (2006). Purkey then sought and was denied both post-conviction and habeas relief. *See Purkey*, 2009 WL 3160774, at *6

2

(rejecting petition for relief under 28 U.S.C. § 2255); *Purkey v. United States*, No. 06-8001-CV-W-FJG, 2009 WL 5176598, at *1 (W.D. Mo. Dec. 22, 2009) (same), *aff'd*, 729 F.3d 860 (8th Cir. 2013), *cert. denied*, 574 U.S. 933 (2014); *see also Purkey v. United States*, No. 219CV00414JPHDLP, 2019 WL 6170069, at *12 (S.D. Ind. Nov. 20, 2019) (rejecting petition for relief under 28 U.S.C. § 2241), *appeal filed*, *Purkey v. United States*, No. 19-3318 (7th Cir.).

In July 2019, the government announced that it was resuming capital punishment after a nearly two-decade lapse. *See* Press Release 19-807, Office of the Attorney General, U.S. Department of Justice, Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse (July 25, 2019) ("OAG Press Release 19-807") (available at https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse).[3] Attorney General Barr directed the Federal Bureau of Prisons to adopt an addendum to the Federal Bureau of Prisons' Execution Protocol and to schedule the executions of five death-row inmates convicted of murdering children. *Id.* Purkey was one of the five inmates whose executions were to be scheduled. *Id.* Pursuant to the Attorney General's direction, Acting BOP Director Hurwitz adopted the addendum and scheduled the executions. *Id.* Purkey's execution was scheduled for December 13, 2019. *Id.*

On October 28, 2019, Purkey filed a Complaint challenging the manner in which his execution was scheduled. Specifically, Purkey alleges that his execution has been scheduled to occur before the executions of other death row inmates who became eligible for execution before he did. In Counts One and Two, Purkey alleges that his Fifth Amendment right to equal protection under the law has been violated because his execution date was set either for no legitimate reason, Compl. at 8-

---

[3] Matters of public record are subject to judicial notice in resolving a motion to dismiss. *Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003); *see also Norris v. Hearst Tr.*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

9, or because of his "jailhouse lawyering activities," *id.* at 9. In Count Three, Purkey alleges that the scheduling of his execution date violated Title VII. *Id.* at 9-10.

## ARGUMENT

**I.    THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS BARR AND HURWITZ**

As the plaintiff in this matter, Purkey bears the burden of establishing that the Court has personal jurisdiction over Defendants Barr and Hurwitz. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Complaint does not meet that burden.

Indiana's long-arm statute, Trial Rule 4.4(A), "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006). Thus, to determine whether the Court has personal jurisdiction over either Barr or Hurwitz, the Court must ask whether "the exercise of jurisdiction comports with the limits imposed by federal due process." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotation marks omitted)); *see also Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) ("[I]f [Indiana] constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so.") (citations omitted).

For personal jurisdiction to be consistent with federal due process, a defendant must have established "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984) (internal quotations and citation omitted). If a defendant has "continuous and systematic" contacts with a state, that defendant is subject to general jurisdiction regarding any action, even actions unrelated to those contacts. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (citing *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010)). The threshold for gen-

4

eral jurisdiction is quite high; "the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701 (citing *Purdue Research Found.*, 338 F.3d at 787 n.16).

Specific jurisdiction exists when "a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 (citation omitted). The mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient to establish jurisdiction. *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 801 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283-84 (quoting *Keeton*, 465 U.S. at 775) (internal quotation omitted). "[T]he relationship must arise out of contacts that the "defendant *himself*" creates with the forum State," and "the defendant's contacts with the forum State itself" *Id.* at 284-85 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original)). The defendant's relationship with the plaintiff is not sufficient to create the necessary "minimum contacts." *Id.* at 286.

Purkey does not allege any facts establishing that either Defendant Barr or Defendant Hurwitz have contacts with Indiana that are "sufficiently extensive and pervasive to approximate physical presence" in the state. *Tamburo*, 601 F.3d at 701 (citing *Purdue Research Found.*, 338 F.3d at 787 n.16.). Therefore, there is no basis for general jurisdiction over either Barr or Hurwitz.

Nor is there any basis for specific jurisdiction. Specific jurisdiction does not exist where "the plaintiff [is] the only link between the defendant and the forum." *Walden*, 571 U.S. at 285-86. Here, the only link between the state of Indiana and Defendants Barr and Hurwitz is Purkey's present incarceration at the United States Penitentiary at Terre Haute. There are no allegations that establish that either Barr or Hurwitz have a relationship with Indiana that arises out of contacts they *themselves* created with Indiana. *Id.* at 284-85. To the extent that Purkey's Complaint arises from contacts that

5

Barr or Hurwitz have had with Indiana, those contacts relate to Barr and Hurwitz's official government duties. It was through Barr's official duties as Attorney General and Hurwitz's official duties as Acting Director of the Federal Bureau of Prisons that the date for Purkey's execution was scheduled. *See* OAG Press Release 19-807. However, federal courts do not have jurisdiction over non-resident *Bivens* defendants "simply because they are federal employees." *Wilson v. Rackmill*, No. CIV. A. 87-0456, 1990 WL 87316, at *2 (E.D. Pa. June 18, 1990). Thus, their official capacity contacts with Indiana cannot serve as a basis for the Court to exercise personal jurisdiction over Barr or Hurwitz. *O'Vadka v. Blum*, No. 3:06CV698, 2007 WL 1550429, at *11 (N.D. Ind. May 24, 2007) ("[I]t is well-settled that this Court cannot assert jurisdiction over . . . individual defendant[s] based on . . . [their] actions taken pursuant to [their] employment.") (quoting *Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F.Supp.2d 34, 58 (D.D.C. 2005)); *Thornton v. Quinlan*, 864 F.Supp. 90 (S.D. Ill. 1994) (letters sent in federal official's "official capacity" did not constitute "minimum contacts" sufficient to exercise personal jurisdiction over *Bivens* defendant).[4]

## II. THE INDIVIDUAL CAPACITY CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW

Counts One and Two of Purkey's Complaint should be dismissed for two independent reasons. First, there are special factors counseling hesitation, which preclude the Court from creating the *Bivens* remedy Purkey seeks in this unprecedented context. Second, even if it were appropriate for the Court to create a nonstatutory damages remedy in this unique context, both of the defendants are entitled to qualified immunity.

### A. Special Factors Foreclose Creation Of The *Bivens* Remedy Sought.

---

[4] *See also Pollack v. Meese*, 737 F. Supp. 663, 666 (D.D.C. 1990) ("The law is clear that a persistent course of conduct may be deemed to constitute the transaction of business for the assertion of personal jurisdiction only if that persistent conduct is undertaken in that person's individual capacity rather than an official capacity conducting business for his employer.") (citing *Sec. Bank, N.A. v. Tauber*, 347 F.Supp. 511, 516 (D.D.C. 1972)).

In *Bivens*, the Supreme Court recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's Fourth Amendment rights. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). The Supreme Court allowed the victim of an alleged Fourth Amendment violation to bring suit to recover damages—even though Congress had not expressly provided for such a cause of action—where Congress had not explicitly foreclosed a damages remedy and there were no "special factors" counseling the Judiciary to hesitate in recognizing a remedy in the face of congressional silence. *Bivens*, 403 U.S. at 396-97. The Supreme Court subsequently recognized an implied damages remedy in *Davis v. Passman*, 442 U.S. 228 (1979), for an Equal Protection claim alleging discrimination in federal employment; and in *Carlson v. Green*, 446 U.S. 14 (1980), for an Eighth Amendment deliberate indifference claim against prison officials. In both cases, the Supreme Court specifically determined that there were no special factors. However, *Bivens*, *Davis*, and *Carlson* remain the only instances in which the Supreme Court has approved such a remedy. Since the last of these decisions, the Court has repeatedly made clear that expanding the *Bivens* remedy is a "disfavored" judicial activity. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Accordingly, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68. Indeed, the Court recently observed that the extension of *Bivens* is now so disfavored that *Bivens*, *Davis*, and *Carlson* might have different outcomes if they were decided today. *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1856 (2017).

In every *Bivens* action, a court must first determine whether the case presents a "new context"—*i.e.*, whether the case differs in a "meaningful way" from the only three cases in which the Court has allowed a damages remedy: a Fourth Amendment claim against federal agents for handcuffing a man in his own home without a warrant (*Bivens*); an equal protection claim against a Congressman for firing his female secretary (*Davis*); and an Eighth Amendment claim against prison officials for failure to treat an inmate's asthma (*Carlson*). *Abbasi,* 137 S. Ct. at 1859-60. If a context is

7

"new," lower courts must consider (1) whether "alternative, existing process[es]" to address allegedly unconstitutional conduct make a *Bivens* remedy inappropriate, and (2) whether any other "special factors counsel[] hesitation" in implying a damages remedy "in the absence of affirmative action by Congress." *Wilkie v. Robbins*, 551 U.S. 537, 550, 575 (2007) (citing and quoting *Bush v. Lucas*, 462 U.S 367, 378 (1983)). The availability of a *Bivens* remedy must be considered before any other questions presented. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017).

As shown below, when the requisite inquiry is performed, it is clear that the Court should not create a new individual-capacity damages remedy for Purkey.

### 1.    The Claims Arise In A New Context

A given case may present a new context, and therefore require a special factors analysis, if it "differ[s] in a meaningful way" from the Supreme Court's previous *Bivens* cases. *Abbasi*, 137 S. Ct. at 1859-60; *see id.* (providing non-exclusive list of "meaningful" differences warranting a special factors analysis). "[Purkey's] claims bear little resemblance to the three *Bivens* claims the [Supreme] Court has approved in the past." *Abbasi*, 137 S. Ct. at 1860 (citations omitted). A First Amendment claim, by definition, presents a new context because the Supreme Court has never recognized a *Bivens* remedy for the violation of any First Amendment right in any context, and has repeatedly declined invitations to do so. *See, e.g., Iqbal*, 556 U.S. at 675; *Reichle v. Howards*, 566 U.S. 658, 662 n.4 (2012).[5] While the Supreme Court recognized a Fifth Amendment equal protection *Bivens* claim in *Davis*, that claim has never been extended beyond the gender discrimination context of *Davis*, which is vastly different from the death penalty imposition context presented here.

---

[5] *See also Butts v. Martin*, 877 F.3d 571, 587-89 (5th Cir. 2017) (Supreme Court's failure to recognize a *Bivens* remedy in the First Amendment context required that case be remanded to district court for determination of whether special factors barred plaintiff's First Amendment *Bivens* claim).

Accordingly, since the context presented here is new, the Court must conduct a special factors analysis. As shown below, several special factors counsel strongly against a *Bivens* remedy for Purkey's claims.

### 2.   Special Factors Counsel Against A New *Bivens* remedy

#### a)   The Federal Criminal Justice System Is An Alternative Process Counseling Against Creating A New *Bivens* Remedy

When the Supreme Court has elected to recognize *Bivens* remedies, it has done so "chiefly because the plaintiff lacked any other remedy for the alleged constitutional deprivation." *Malesko*, 534 U.S. at 67 (citation omitted). Any sort of existing "alternative remedial structure . . . *alone* may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858 (emphasis added); *see also Wilkie*, 551 U.S. at 550. "Alternative remedial structures can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018) (internal quotation marks omitted). Alternative processes need not offer monetary relief in order to preclude a *Bivens* remedy. *See Abbasi*, 137 S. Ct. at 1860 (finding injunction, habeas petition, and other equitable relief were available alternative remedies); *De La Paz v. Coy*, 786 F.3d 367, 377 (5th Cir. 2015) ("The absence of monetary damages in the alternative remedial scheme is not ipso facto a basis for a *Bivens* claim."). "So long as the plaintiff had an avenue for some redress," this can be enough. *Malesko*, 534 U.S. at 69 (citation omitted).[6]

Purkey does not challenge the lawfulness of his conviction or the death sentence he received.[7] Rather, Purkey challenges the date on which that sentence will be implemented. A *Bivens*

---

[6] Moreover, a wide range of factors may make it inappropriate for federal courts to create a *Bivens* remedy in a particular context, even where the plaintiff has no alternative remedy available. *See Wilkie*, 551 U.S. at 550 ("even in the absence of an alternative [existing process for protecting a constitutionally recognized interest], a *Bivens* remedy is a subject of judgment.").

[7] After he was tried, convicted, and sentenced by a jury of his peers, *see United States v. Purkey*, 428 F.3d at 744-45, Purkey challenged that conviction through direct appeal, *see id.* at 738. Purkey then

remedy is inappropriate for such a claim because Purkey has already sought post-conviction relief under 28 U.S.C. § 2241, *see Purkey*, 2019 WL 6170069, at *12, which provides for a writ of habeas corpus addressing precisely the type of challenge Purkey asserts here—a challenge to the execution of a criminal sentence subsequent to a conviction that does not include the method of execution. *See Chavez v. Truesdale*, 36 F. App'x 859, 860 (7th Cir. 2002) (challenge to the execution of a sentence must be addressed as a habeas petition under § 2241); *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998) (motion seeking relief concerning the execution but not the validity of a conviction and sentence "falls into the domain of § 2241"). Habeas relief is generally conditioned on the exhaustion of a multi-step administrative remediation process. *See Chavez*, 36 F. App'x at 860; *see also* 28 C.F.R. §§ 542.10-542.19. Moreover, in addition to his pursuit of habeas relief, Purkey has asked a federal district court to declare him incompetent for execution and to enjoin his execution until his competency is restored. *See Purkey v. Barr, et al*, Case No. 1:19-cv-03570-TSC (D.D.C. filed Nov. 26, 2019). Purkey has also sought declaratory and injunctive relief staying his execution pending resolution of a challenge to the government's recent adoption of a new lethal injection protocol. *See In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, Case No. 1:19-mc-145-TSC (D.D.C. filed Aug. 20, 2019).[8] Thus, judicial remedies, as well as non-judicial, administrative remedies, were/are available for Purkey's challenge to the date of his execution. The existence of such "alternative, existing process[es]," whether judicial or non-judicial, to resolve Purkey's complaints, "constitutes a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Minneci v. Pollard*, 565 U.S. 118, 125-26 (2012) (internal quotation marks omitted).

---

sought and was denied habeas relief under 28 U.S.C. § 2255 for a challenge to the lawfulness of his sentence. *See Purkey*, 2009 WL 3160774, at *6.

[8] Purkey's execution is currently stayed pursuant to an Order in that case. *See* Case No. 1:19-mc-145-TSC (D.D.C.), Dkt. No. 51.

**b)**    **Separation Of Powers Principles Counsel Against Creating A New *Bivens* Remedy**

Even in the absence of an alternative, a *Bivens* remedy is a subject of judgment." *Wilkie*, 551 U.S. at 550. Purkey seeks a remedy that would impose personal liability on federal officials for carrying out a criminal penalty authorized by Congress and duly imposed by a federal court. Such a remedy would have a significant impact on the prosecution of federal crimes and the imposition of sentences for violations of federal criminal law. Traditional considerations concerning the separation of powers among the branches of government, along with the difficulty inherent in coming up with a workable cause of action to address claims such as Purkey's, counsel against the Court recognizing a *Bivens* remedy here.

Under any circumstances, it is a "significant step under separation-of-powers principles" for a court to do what Purkey asks: "determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Abbasi*, 137 S. Ct. at 1856. Thus, the special factors inquiry must "concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58. "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Id.* at 1858. "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* at 1857 (quoting *Bush*, 462 U.S. at 380). "The answer most often will be Congress." *Abbasi*, 137 S. Ct. at 1857.

Congress has legislated extensively on the imposition of the death penalty for federal crimes. The Crimes Act of 1790, passed by the First Congress, governed federal executions for almost 150

11

years.[9] In 1937, Congress amended the provision of the Crimes Act directing the manner in which the death penalty was to be implemented. *See* Act of June 19, 1937 (the "1937 Act"), ch. 367, 50 Stat. 304, 304. Following the Supreme Court's decisions in *Furman v. Georgia*, 408 U.S. 238 (1972), and *Gregg v. Georgia*, 428 U.S. 153 (1976), which placed procedural limits on the imposition of capital sentences, Congress repealed the 1937 Act and related provisions as part of broader sentencing reform. *See* Sentencing Reform Act of 1984, Pub. L. No. 98-473, tit. II, ch. II, 98 Stat. 1987. Congress reinstated the federal death penalty (along with new sentencing procedures) a few years later. *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7001, 102 Stat. 4181, 4387-95. Most recently, Congress enacted the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (codified at 18 U.S.C. §§ 3591-3598), which applied new procedures for imposing death sentences to a substantial number of additional federal offenses, *see* 18 U.S.C. §§ 3591-3594.

"If Congress has legislated pervasively on a particular topic but has not authorized the sort of suit that a plaintiff seeks to bring under *Bivens*, respect for the separation of powers demands that courts hesitate to imply a remedy." *Klay v. Panetta*, 758 F.3d 369, 376 (D.C. Cir. 2014) (citing *Chappell v. Wallace*, 462 U.S. 296, 302-04 (1983); *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). Purkey does not challenge the lawfulness of the death penalty itself; nor does he challenge the lawfulness of the criminal process through which he received the death penalty. Rather, Purkey challenges—via an individual capacity action for damages against government officials—the time at which Purkey will receive the death sentence lawfully imposed on him by a federal district court. In its extensive legislative efforts in the field of capital punishment for federal crimes, Congress has not chosen to provide a mechanism by which a federal prisoner sentenced to death can challenge the date on which the

---

[9] *See* Rev. Stat. § 5325 (1875) (codifying Section 33 of the Crimes Act of 1790); Act of Mar. 4, 1909, ch. 321, § 323, 35 Stat. 1088, 1151 (codifying the provision in the Federal Criminal Code); 18 U.S.C. § 542 (1925) (codifying the provision in the United States Code); United States Marshals Service, *History – Historical Federal Executions*, https://www.usmarshals.gov/history/executions.htm (last visited Feb. 20, 2020) (USMS History).

12

sentence will be carried out. Nor has the Executive chosen, in regulations promulgated for the implementation of death sentences in federal cases, to permit such challenges. *See generally* 28 C.F.R. Ch. 1, Part 26 – Death Sentences Procedures. Congress is in a far better position than the Judiciary to assess whether the deterrent value of a damages remedy related to the scheduling of federal executions outweighs the costs.

Purkey's claims illustrate the difficulties of administering such a remedy. *See Wilkie*, 551 U.S. at 554 (describing "the difficulty of defining limits to legitimate zeal on the public's behalf"). Purkey's Complaint asserts that his right to equal protection was violated when his execution was scheduled to occur before the executions of other federal death row inmates who had become eligible for their death sentences to be implemented before he did. *See* Compl. at 8-9. This is a class-of-one equal protection claim. *See Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) ("The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.' ") (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)). As the Supreme Court observed in a class-of-one equal protection claim in the context of federal employment,

> There are some forms of state action [ ] which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008).

In addition, it is very easy for a federal prisoner sentenced to death to claim, as Purkey does, that there was an unlawful motive behind the scheduling of his execution—notwithstanding that the scheduling comports with applicable federal law and regulations, *see* 28 C.F.R. § 26.3(a)(1) (setting sole limitation on execution dates as "no sooner than 60 days from the entry of the judgment of

13

death"). An official's state of mind is easy to "allege and hard to disprove;" therefore, "insubstantial claims that turn on improper intent may be less amenable to summary disposition than other types of claims against government officials." *Crawford-El v. Britton*, 523 U.S. 574, 584–85 (1998) (citation omitted). Developing "[a] judicial standard" that can be applied across the board to claims such as Purkey's would prove "endlessly knotty to work out" because of "the difficulty of devising a . . . standard that could guide" courts in determining the proper order in which federal inmates currently on death row can be executed. *Wilkie*, 551 U.S. at 561-62.

Moreover, Purkey's real complaint is against the United States for the recent policy decision to include him in the group of five death-eligible inmates to be executed as part of the resumption of capital punishment for federal crimes. As the Supreme Court recognized in *Abbasi*, a "*Bivens* action is not "a proper vehicle for altering an entity's policy." *Abbasi*, 137 S. Ct. at 1860 (quoting *Malesko*, 534 U.S. at 74). Claims "call[ing] into question the formulation and implementation of a general policy" can "require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies." *Id.* Such inquiry and discovery in the context of an individual-capacity damages action would accrue "substantial social costs" above and beyond those imposed by a traditional *Bivens* case. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Thus, a *Bivens* claim here would constitute far more than the sort of "modest extension" of *Bivens* liability that *Abbasi* cautioned against undertaking lightly. *Abbasi*, 137 S. Ct. at 1864.

"[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Malesko*, 534 U.S. at 74 (emphasis added). While injunctive or other equitable relief is not available against Defendants Barr and Hurwitz in their individual capacities, *see infra* at IV, the Court should not recognize a *Bivens* action that amounts to an end run around the sovereignty of the United States when there is the potential for injunctive relief in Purkey's official capac-

14

ity action. Nor should Purkey, by pleading artifice, be able to evade the Supreme Court's clear holding that special factors preclude suits against agencies in order to challenge agency policies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."); *see also Abbasi*, 137 S. Ct. at 1860. This is yet another reason for the Court to decline Purkey's request to extend *Bivens* to this new context, and instead to "stay its *Bivens* hand." *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009) (quoting *Wilkie*, 551 U.S. at 550).

### c)    The Sum Of The Applicable Special Factors

Special factors which counsel against the creation of a *Bivens* remedy may be considered individually or collectively. *Cf. Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 280 (1997) (Kennedy, J.) (concurring) ("The range of concerns to be considered in answering th[e] [special factors] inquiry is broad."). There is no basis for recognizing the *Bivens* remedy Purkey seeks when he has sought (or can still potentially seek) appropriate relief through an "alternative, existing process." *Minneci*, 565 U.S. at 125-26. Moreover, the remedy sought here implicates significant separation of powers concerns and presents significant difficulties in coming up with a workable cause of action. A *Bivens* action allowed here "would assume dimensions far greater than those present in *Bivens* itself, or in either of its two follow-on cases, or indeed in any putative *Bivens* case yet to come before the [Supreme] Court." *Abbasi*, 137 S. Ct. at 1861. Congress is the appropriate body to weigh the costs and benefits of allowing for, and setting the limits of such a remedy.

### B.    Defendants Barr And Hurwitz Are Entitled To Qualified Immunity

Even if the Court does not find that special factors preclude creation of a *Bivens* remedy in this new context, Defendants Barr and Hurwitz are entitled to qualified immunity.

Qualified immunity protects government officials from personal liability for civil damages in

15

the absence of facts pled by a plaintiff showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). This protection "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Id.* at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Clearly established rights are not defined as a "broad general proposition," *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam), but in a "particularized" sense so that the "contours" of the right are clear to a reasonable official," *Anderson*, 483 U.S. at 640. The appropriate question is "whether every reasonable officer would have understood that what he was doing violates that right." *Thayer v. Chiczewski*, 705 F.3d 237, 255 (7th Cir. 2012) (citing *Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011)). The plaintiff bears the burden of proving that the constitutional right was clearly established. *Hernandez*, 657 F.3d at 473 (citation omitted). Although it is not necessary for the plaintiff to identify a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

### 1. The Defendants Are Entitled to Qualified Immunity For Purkey's Equal Protection Claims.

In a case brought under 42 U.S.C. § 1983 by a homeowner challenging a village's demand for an easement, the Supreme Court recognized "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "The rational-basis requirement sets the legal bar low and simply requires 'a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (quoting *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 946 (7th Cir. 2009) (internal quotation marks omitted)). The outer bounds of

16

class-of-one equal protection claims have been the subject of much debate within the Seventh Circuit. *Frederickson v. Landeros*, 943 F.3d 1054, 1062 (7th Cir. 2019) (citing *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012)). However, the Seventh Circuit has recognized that "the only form of class-of-one equal protection right that is *clearly* established within [the] circuit involves government actors who single out a citizen for differential treatment with no objective rational basis for that difference *and* because of 'a vindictive or harassing purpose.'" *Id.* (emphasis in original) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 748 n.2 (7th Cir. 2012)); *Hanes v. Zurick*, 578 F.3d 491, 496 (7th Cir. 2009)).

As shown below, Purkey's Complaint does not allege a class-of-one equal protection claim that is cognizable under Seventh Circuit law.

### a)  No constitutional violation has been alleged.

"[T]o get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, 'a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.'" *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)). Whether or not an allegation of bad motive is required to state such a claim, "it is clear that an allegation of improper motive does not necessarily overcome the presumption of rationality and permit the case to move forward." *D.B. ex rel. Kurtis B.,* 725 F.3d at 686. To the contrary, "a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity." *Flying J Inc.*, 549 F.3d at 547.

Accordingly, "even at the pleadings stage, '[a]ll it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment.'" *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (quoting *D.B. ex rel. Kurtis B.*, 725 F.3d at 686 (emphasis added)). In this case, there were at least conceivably rational bases for scheduling Purkey to be executed ahead of other similarly

17

situated death row inmates.

The Executive Branch, pursuant to power possessed by virtue of congressional authoriza-tion,[10] has promulgated regulations for the implementation of death sentences in federal cases. *See generally* 28 C.F.R. Ch. 1, Part 26 – Death Sentences Procedures. These regulations, issued by the De-partment of Justice, "apply whenever a sentencing hearing conducted in a United States District Court has resulted in a recommendation or determination that a criminal defendant be sentenced to death for commission of an offense described in any federal statute." *Id.* § 26.1. While there are spe-cific regulations governing the "Date, time, place, and method of execution," *id.* § 26.3, the regula-tions do not specify or offer any guidance related to the order in which inmates eligible for execu-tion are to be executed, *see generally* 28 C.F.R. Part 26, Subpart A. The regulations provide for federal death sentences to be executed "[o]n a date and at a time designated by the Director of the Federal Bureau of Prisons," with the only limitation being that the "date shall be no sooner than 60 days from the entry of the judgment of death." *Id.* § 26.3(a)(1). Thus, the order in which death sentences are implemented, which follows from the date set for each inmate's execution, is inherently an exer-cise of discretion by the Executive.

The date of Purkey's execution was announced in a Department of Justice press release which stated that Attorney General Barr had directed (then) Acting Federal Bureau of Prisons Di-rector Hurwitz "to schedule the executions of five death-row inmates convicted of murdering, and in some cases torturing and raping, the most vulnerable in our society—children and the elderly." OAG Press Release 19-807. With respect to Purkey specifically, the release stated that he had "vio-lently raped and murdered a 16-year-old girl, and then dismembered, burned, and dumped the young girl's body in a septic pond. [Purkey] also was convicted in state court for using a claw hammer to

---

[10] *See* 5 U.S.C. § 301 Departmental Regulations; 28 U.S.C. § 509 Functions of the Attorney General; 28 U.S.C. § 4001(b)(1) Limitation on detention; control of prisons.

bludgeon to death an 80-year-old woman who suffered from polio and walked with a cane." *Id.*

It is at least conceivably rational that the discretionary determination of the order in which inmates eligible for execution are to have their sentences carried out would include some consideration of the circumstances associated with the particular crime(s) for which each inmate received the death penalty. To that end, it was conceivably rational to prioritize the execution of a death-row inmate like Purkey, who had been "convicted of murdering . . . and raping, the most vulnerable in our society—children and the elderly." OAG Press Release 19-807.

Moreover, as noted in the Press Release, "[u]nder Administrations of both parties, the Department of Justice has sought the death penalty against the worst criminals." *Id.* Purkey, like the other four death row inmates whose execution dates were announced, "was convicted by a jury of his peers after a full and fair proceeding." *Id.* At the time their execution dates were announced, each of those inmates had exhausted their appellate and post-conviction remedies, and there were no legal impediments preventing their executions. *Id.* Therefore, it was at least conceivably rational to schedule a date for Purkey's execution in order to, as the Press Release states, "uphold[] the rule of law" in accordance with a duty "owe[d] [] to the victims and their families to carry forward the sentence imposed by [the] justice system" *Id.* These are legitimate and rational purposes for the Government to carry out the sentence already imposed and upheld by the judicial branch. *See United States v. Turkette*, 452 U.S. 576, 586 n.9 (1981) (recognizing states' sovereign power to punish criminal offenders).

### b) No violation of clearly established law has been alleged.

Even if Purkey has stated class-of-one equal protection claims, the claims are not supported by clearly established law because they arise in two contexts—prison and prosecutorial discretion—in which the Seventh Circuit has either never recognized or flatly rejected class-of-one equal protection claims.

19

The Seventh Circuit has never recognized a class-of-one equal protection claim in the prison context. *See Key v. Shannon*, No. 17-CV-521-JDP, 2019 WL 3238638, at *7 (W.D. Wis. July 18, 2019). Thus, it is not clearly established that a federal prisoner like Purkey can bring such claims. *Northern v. Dobbert*, No. 16-CV-277-JDP, 2019 WL 4758206, at *8 (W.D. Wis. Sept. 30, 2019) ("[A] class-of-one claim in the prison context is not clearly established."); *Turner v. Brown*, No. 17-CV-764-JDP, 2019 WL 3431158, at *8 (W.D. Wis. July 30, 2019) (prison officials entitled to qualified immunity on class-of-one claim due to absence of controlling legal authority stating that class-of-one equal protection claims can be raised in the prison context); *Johnson v. Robinson*, No. 15-CV-298-JPG-RJD, 2017 WL 5288190, at *4 (S.D. Ill. Nov. 13, 2017) (prisoner failed to carry burden of providing caselaw clearly establishing class-of-one claim).

Moreover, the Seventh Circuit has rejected class-of-one equal protection claims that challenge exercises of prosecutorial discretion, at least where the challenge is premised solely on arbitrariness/irrationality. *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008). Purkey does not allege that the selection of his execution date violated any applicable law or regulation; rather, he challenges an aspect of the selection of his execution date that is wholly within the discretion of the Executive. Because the order in which death row inmates are scheduled for execution is committed to Executive or prosecutorial discretion, a class-of-one challenge to Purkey's place in that order is not permitted under clearly established Seventh Circuit law. *Moore*, 543 F.3d at 901; *see Bub v. Swiekatowski*, No. 15-CV-195-JDP, 2019 WL 1434579, at *9 (W.D. Wis. Mar. 29, 2019) (prison officials entitled to qualified immunity on class-of-one claims brought by prisoner challenging discretionary decision).

**2.    The Defendants Are Entitled To Qualified Immunity For Purkey's First Amendment Claims.**

Any First Amendment retaliation claim, to the extent pled, is also barred by qualified immunity because the Complaint does not "contain sufficient factual matter, accepted as true, to 'state a [retaliation] claim [ ] that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In a pending lawsuit noted above, in which Purkey seeks a judgment declaring him incompetent to be executed, Purkey admits that the specific allegations of retaliation made in *this* lawsuit are the product of a "delusional understanding of his execution"—an understanding that Purkey has "consistently maintained . . . since he was provided with an execution warrant on July 25, 2019." *See Purkey v. Barr, et al.*, No. 1:19-cv-03570-TSC (D.D.C.), Dkt. No. 1 at ¶ 34. The "delusional understanding" is specifically identified as being Purkey's "honest and deeply entrenched belief" that "Attorney General Barr and the BOP [ ] developed a plot to kill him both as retaliation against him for his previous litigation and to prevent him from future filings." *Id.* ¶ 33. *See also id.* (stating Purkey's belief that the federal government plans to execute him not as punishment for a capital crime, but because of his "protracted jailhouse lawyering"); *id.* ¶ 20 ("[Purkey's] damaged and diseased brain has created a delusional and paranoid world where prison staff poison him, prosecutors and courts respond in retaliation to his complaints, and the very attorneys charged with saving his life are part of the conspiracies against him."). Purkey specifically cites the Complaint filed in *this* matter and the factual assertions made therein as proof of the delusional nature of his belief that he is being executed for retaliatory reasons. *See id.* ¶ 34; *id.*, Exh. 15 at 993-1006. The only allegations offered to support Purkey's retaliation claim in this lawsuit are conversations Purkey had with prison staff in which they supposedly confirmed the retaliatory basis for his execution. *See* Compl. ¶¶ 11-17. However, in the suit in which he seeks to be declared incompetent for execution, Purkey characterizes

21

those same conversations as "visual and auditory hallucinations involving several Terre Haute Special Confinement Unit (SCU) staff members explicitly confirming that his execution 'is based on [his] zealous filings of administrative remedies and filing so much different litigation in the courts.'" *Id.* ¶ 34 (citing Complaint ¶¶ 11, 13, 14, 17).

While Purkey's statements in this other action are not a judicial admission—*i.e.*, do not conclusively establish—that his allegations of retaliation in this lawsuit have no merit, the Court can consider the statements as evidence of the allegations' lack of merit. *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) (citation omitted). Accordingly, the allegations of retaliation contained in his *pro se* Complaint, which Purkey himself has characterized as the product of his "delusional understanding of his execution," should not be "accepted as true." *Iqbal*, 556 U.S. at 678.

In any event, even if the allegations of retaliation are accepted as true, Purkey's retaliation claim has no merit. A First Amendment retaliation claim requires a showing of "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Illinois,* 424 F.3d 659, 669 (7th Cir. 2005)). The only allegations that purport to tie the scheduling of Purkey's execution date to his filing of grievances in prison are Purkey's claims that members of the prison staff offered Purkey their wholly subjective and otherwise unsupported opinions that he was selected for execution because of his history of filing grievances. *See* Compl. ¶¶ 11-17. These allegations, which Purkey elsewhere characterizes as the product of his "delusional understanding of his execution," *see* D.D.C. Action, Dkt. No. 1 at ¶ 34, do not identify any conduct by Defendant Barr or Defendant Hurwitz, and do not establish a plausible causal link between Purkey's use of the prison grievance process and any actions taken by Barr or Hurwitz with respect to Purkey's execution date. "[S]weeping allegations of unconstitutional conspiracies hatched among a broad swath of [] officials are too vague to state a claim." *Pinkston-El-Bey v. Illinois*, 358 F. App'x 713, 714 (7th Cir. 2009). Because the well-pleaded facts do not

22

permit the Court to infer more than the mere possibility of misconduct, Purkey's Complaint has alleged—but it has not "show[n]"—"that [Purkey] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

## III.    NO TITLE VII CLAIM IS AVAILABLE

Count III of Purkey's Complaint asserts a "reverse discrimination" claim under Title VII of the Civil Rights Act of 1964. Compl. at 9. Title VII prohibits discrimination in federal employment. Purkey is not a federal employee, nor does he assert an employment discrimination claim. Therefore, Title VII has no application to or remedy for his claims. *See Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (inmate was not "employee" under Title VII because his relationship with defendants arose from his status as inmate, not as employee); *Iheme v. Smith*, 529 F. App'x 808, 809 (8th Cir. 2013) (inmate should not be treated as an "employee" for purposes of Title VII); Pope v. United States, No. 16-1059-SLD, 2017 WL 6523141, at *2 (C.D. Ill. Aug. 28, 2017) (noting that the majority of federal courts that have considered the issue have held that Title VII does not apply to inmates who are assigned to prison jobs) (quotations and citation omitted).

## IV.    NO INDIVIDUAL CAPACITY EQUITABLE RELIEF IS AVAILABLE

Purkey requests various forms of declaratory and injunctive relief. *See* Compl. at VII; Prayer for Relief at ¶¶ A, D, and F. It is well established that equitable relief is not available against a federal officer or employee in his or her individual capacity. *See Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) ("[A] declaration that the policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future . . . can be obtained only from the defendants in their official capacities, not as private individuals."). Thus, any request for equitable relief against either Defendant Barr or Defendant Hurwitz in an individual capacity must be denied.

### CONCLUSION

For the reasons stated above, Purkey's Complaint fails to state any claims against either Defendant Barr or Defendant Hurwitz and should be dismissed as against them.

Dated: February 24, 2020


Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
Civil Division

ANDREA W. MCCARTHY
Senior Trial Counsel

/s/ *Glenn S. Greene*
GLENN S. GREENE
(New York State Bar No. 2674448)
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Fax: (202) 616-4314
Email: Glenn.Greene@usdoj.gov

Attorneys for Defendants William Barr and
Hugh Hurwitz in their individual capacities

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2020, the foregoing was filed electronically through ECF/CM. On this same date, a copy of the foregoing was served upon the following by first class mail, prepaid, and properly addressed to:

Wesley I. Purkey
Inmate #14679-045
Terre Haute – USP
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, Indiana 47808

*/s/ Glenn S. Greene*
Glenn S. Greene
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Fax: (202) 616-4314
Email: Glenn.Greene@usdoj.gov