UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WESLEY I. PURKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-00517-JMS-DLP |
| | ) | |
| WILLIAM BARR, *et al.* | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**BRIEF IN SUPPORT OF OFFICIAL CAPACITY DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

The Plaintiff, Wesley Purkey, was sentenced to death by the United States District Court

for the Western District of Missouri.  Purkey was scheduled for execution in late 2019, and now

claims that the decision to schedule his execution violated the Fifth Amendment and Title VII of

the Civil Rights Act of 1964 because the decision was "arbitrary."  Purkey has sued the United

States Attorney General William Barr and the Director of the Federal Bureau of Prisons ("BOP")

Kathleen Sawyer in their official capacities.[1]  Purkey's official capacity suit seeks equitable

relief in the form of a declaratory judgment that the decision to schedule his execution violated

the Constitution.  He also seeks an injunction "ordering that the defendants provide 'all []records,

documents, policies and/or other materials that they utilized in selecting Purkey for Execution . .

. .'" (Dkt. 1 at 12.)

Purkey cannot challenge the decision to schedule his execution through this civil lawsuit.

---

[1] Defendant Barr and former BOP Director Hugh Hurwitz have also been sued in their individual
capacities under a *Bivens* theory. The individual capacity claims are addressed in a separate
motion.  Purkey's Complaint also includes claims against two other Federal Bureau of Prisons
officials, Warden J.T. Watson and Captain Taylor. The Court has severed the claims against
Watson and Taylor and directed that they proceed in a separate action. *See* Dkt. No. 6.

Moreover, Purkey has not alleged a viable claim under either the Fifth Amendment or Title VII of the Civil Rights Act. Based on the foregoing, the Court must dismiss Purkey's official capacity claims for failure to state a claim upon which relief may be granted.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Wesley Purkey was convicted in Missouri of kidnapping, raping, and murdering a sixteen-year-old girl. *United States v. Purkey*, 428 F.3d 738, 744-45 (8th Cir. 2005). A jury unanimously concluded that the aggravating factors associated with Purkey's crimes outweighed the mitigating factors, and determined that Purkey should be sentenced to death. *Purkey v. United States*, No. 01-00308-01-CR-W-FJG, 2009 WL 3160774, at *1 (W.D. Mo. Sept. 29, 2009). On January 23, 2004, a federal district court issued a judgment imposing the death penalty on Purkey. *Id.*

Purkey's conviction has been upheld on direct appeal and in post-conviction proceedings. The Eighth Circuit affirmed Purkey's conviction and death sentence, *see United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005); and rehearing as well as rehearing *en banc* were denied, *id.* The United States Supreme Court subsequently denied Purkey's petition for *certiorari*. *See Purkey v. United States*, 549 U.S. 975 (2006). Purkey was further denied post-conviction and habeas relief. *See Purkey v. United States*, 2009 WL 3160774, at *6 (rejecting petition for relief under 28 U.S.C. § 2255); *Purkey v. United States*, No. 06-8001-CV-W-FJG, 2009 WL 5176598, at *1 (W.D. Mo. Dec. 22, 2009) (same), *aff'd*, 729 F.3d 860 (8th Cir. 2013), *cert. denied*, 574 U.S. 933 (2014); *see also Purkey v. United States*, No. 2:19-cv-00414-JPH-DLP, 2019 WL 6170069, at *12 (S.D. Ind. Nov. 20, 2019) (rejecting petition for relief under 28 U.S.C. § 2241), *appeal filed*, *Purkey v. United States*, No. 19-3318 (7th Cir.) (argument scheduled for April 21, 2020).

---

[2] For purposes of this motion, the allegations of the Civil Rights Complaint are presumed true.

In July 2019, the Department of Justice announced that it was resuming capital punishment after a nearly two-decade lapse.  *See* Press Release 19-807, Office of the Attorney General, U.S. Department of Justice, Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse (July 25, 2019) ("OAG Press Release 19-807") (available at https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse).[3]  Attorney General Barr directed the Federal Bureau of Prisons to adopt an addendum to the Federal Bureau of Prisons' Execution Protocol and to schedule the executions of five death-row inmates convicted of murdering children.  *Id.*  Purkey, who murdered a child and an 80-year old woman, was one of the five inmates whose executions were to be scheduled.  *Id.*  Pursuant to the Attorney General's direction, Acting BOP Director Hurwitz adopted the addendum and scheduled the executions.  *Id.*  Purkey's execution was scheduled for December 13, 2019.  *Id*.

Purkey is a plaintiff in the lawsuit *In re Fed. Bureau of Prisons' Execution Protocol Cases*, Case No. 19-mc-145 (TSC) (D.D.C. Nov. 20, 2019), in which the plaintiffs have sued the Attorney General challenging the legality of the death penalty protocol.  Purkey's execution is currently stayed pursuant to an Order in that case.  *See also In re Fed. Bureau of Prisons' Execution Protocol Cases*, Case No. 19-5322, Order (D.C. Cir. Dec. 2, 2019) (argument held on January 15, 2020).

On October 28, 2019, Purkey filed a Complaint in this case challenging the manner in which his execution was scheduled.  Specifically, Purkey alleges that he has been wrongly scheduled for execution earlier than other inmates on death row who exhausted their appeals

---

[3] The Court may take judicial notice of relevant publicly-available documents.  *See, e.g., Olson v. Champaign Cty.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

before he did.  In Counts One and Two, Purkey alleges that his Fifth Amendment right to equal protection under the law has been violated because his execution date was set either for no legitimate reason, Compl. at 8-9, or because of his "jailhouse lawyering activities," *id.* at 9.[4]  In Count Three, Purkey alleges that the scheduling of his execution date violated Title VII. *Id.* at 9-10.[5]

Purkey's official capacity suit seeks equitable relief in the form of a declaratory judgment that the decision to schedule his execution violates the Constitution, and an injunction "ordering that the defendants provide 'all []records, documents, policies and/or other materials that they utilized in selecting Purkey for Execution . . . .'" (Dkt. 1 at 12.)

On November 26, 2019, Mr. Purkey, by counsel, filed a Complaint against Attorney General Barr and BOP Director Sawyer in the District Court for the District of Columbia. *Purkey v. Barr, et al.,* Case 1:19-cv-03570-TSC (Dkt. 1).  In this lawsuit, Purkey seeks a stay of his execution under the Fifth, Sixth and Eighth Amendments, and the Administrative Procedure Act, on the basis that he is mentally incompetent.  (*Id.*)  His attorneys allege in that lawsuit that Purkey does not understand the basis for scheduling his execution because he suffers from "paranoia and delusions" regarding the scheduling of his execution.  (Dkt. 1 ¶ 74.)  Specifically, his attorneys claim that Purkey has "deep and sustained delusions" around what he believes to be a "campaign of retaliation towards him" by employees at the United States Penitentiary – Terre Haute.  (Dkt. 1 ¶ 84; *see also* ¶ 107 ("Mr. Purkey's ability to work with his present counsel has also been severely encumbered by his delusion-based belief that they are conspiring with prison

---

[4] The opening paragraph of the Complaint includes general statements in which Purkey alleges violations of his First and Eighth Amendment rights. However, no First or Eighth Amendment claims are included in the Counts asserted against Defendants Barr and Sawyer.

[5] Count Four is the Eighth Amendment claim asserted against Warden Watson and Captain Taylor, which has been severed.

officials to have him executed in retaliation for filing grievances and lawsuits challenging the conditions of death row.").)

**ARGUMENT**

**I.    PURKEY CANNOT CHALLENGE HIS EXECUTION IN THIS LAWSUIT**

The Court must dismiss Mr. Purkey's official capacity claims against Barr and Sawyer because Purkey cannot challenge his sentence, or the manner of carrying out his sentence, through this lawsuit.

In this case, although Purkey purports not to be challenging his death sentence, he is asking the Court to declare that the decision to actually carry out the sentence is unconstitutional. In other words, he appears to be seeking to prevent the BOP from carrying out his sentence, or the "fact of" his execution. The Court cannot enter such an order because this relief could only be obtained – and has been previously denied – through Purkey's prior 2241 petitions. *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005).

As discussed above, Purkey has challenged his death sentence through direct appeals and post-conviction filings. He already sought habeas relief under 28 U.S.C. § 2241, *see Purkey v. United States*, 2019 WL 6170069, at *12, which provides for a writ of habeas corpus addressing precisely the type of challenge Purkey asserts here—a challenge to the execution of a criminal sentence subsequent to a conviction that does not include the method of execution. *See Chavez v. Truesdale*, 36 F. App'x 859, 860 (7th Cir. 2002) (challenge to the execution of a sentence must be addressed as a habeas petition under § 2241); *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998) (motion seeking relief concerning the execution but not the validity of a conviction and sentence "falls into the domain of § 2241"). Purkey cannot now bring another challenge to carrying out his sentence in a civil lawsuit. Accordingly, the Court must dismiss his official capacity claims.

5

One possible avenue of relief for challenging a final agency decision as arbitrary is the Administrative Procedure Act, 5 U.S.C. § 706, or "APA."  But the APA is of no assistance to Purkey here because setting execution dates for death row inmates who have exhausted their appellate and post-conviction process is committed to the Attorney General's discretion by law. *See* 28 C.F.R. § 26.3 (DOJ regulation authorizing BOP Director to set the date, time, place for execution); 18 U.S.C. § 3625 (specifying that the judicial review provisions of the APA, 5 U.S.C. §§ 701–706, do not apply to "any determination, decision, or order" made pursuant to 18 U.S.C. §§ 3621–3624).

Specifically, the Executive Branch, pursuant to power possessed by virtue of congressional authorization, has promulgated regulations for the implementation of death sentences in federal cases.  *See generally* 28 C.F.R. Ch. 1, Part 26 – Death Sentences Procedures. These regulations, issued by the Department of Justice, "apply whenever a sentencing hearing conducted in a United States District Court has resulted in a recommendation or determination that a criminal defendant be sentenced to death for commission of an offense described in any federal statute."  *Id*. § 26.1.  While there are specific regulations governing the "Date, time, place, and method of execution," *id*. § 26.3, the regulations do not specify or offer any guidance related to the order in which inmates eligible for execution are to be executed, *see generally* 28 C.F.R. Part 26, Subpart A.  The regulations provide for federal death sentences to be executed "[o]n a date and time designated by the Director of the Federal Bureau of Prisons," with the only limitation being that the "date shall be no sooner than 60 days from the entry of the judgment of death."  *Id.* § 26.3(a)(1).  Thus, the order in which death sentences are implemented, which follows from the date set for each inmate's execution, is inherently an exercise of discretion by the Executive.

Accordingly, this Court has no jurisdiction to review the Attorney General's decision to schedule Purkey's execution under the APA.

Based on the foregoing, the Court cannot order the relief Purkey requests and must dismiss Purkey's official capacity claims seeking declaratory and injunctive relief.

## II.   PURKEY FAILS TO STATE A FIFTH AMENDMENT CLAIM

In the alternative, the Court must dismiss Purkey's Complaint for failure to state a claim under the Fifth Amendment.

The Fifth Amendment subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment. *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws.") (citations omitted).

Section 1 of the Fourteenth Amendment provides that the State shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  In other words, persons who are similarly situated must be treated alike.  *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  The Fourteenth Amendment does not require, however, that individuals who are differently situated be treated equally under the law. *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 469 (1981) (citations omitted); *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994) ("Dissimilar treatment of dissimilarly situated persons does not violate equal protection.") (citation omitted), *cert. denied*, 513 U.S. 1185 (1995).  Accordingly, absent a threshold showing that a plaintiff was similarly situated to others who allegedly received more favorable treatment, a complaint cannot state a viable equal protection claim.  *See Klinger*, 31 F.3d at 731 (citation omitted).  "(I)n the absence

of fundamental rights or a suspect classification, equal protection requires only that a classification which results in unequal treatment bear some rational relationship to a legitimate state purpose." *French v. Heyne*, 547 F.2d 994, 997 (7th Cir. 1976).

### A.       Purkey Has Not Alleged the Burden of a Fundamental Right

The Supreme Court has recognized that the Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 632 (1996) (citing *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 271–272 (1979). And although prison inmates are protected by the Equal Protection Clause, *Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir. 1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979), treatment of prisoners is not subject to strict or heightened judicial scrutiny. Therefore, if Government action neither burdens a fundamental right nor targets a suspect or quasi-suspect class, it should be upheld so long as it bears a rational relation to some legitimate end. *See, e.g., Heller v. Doe*, 509 U.S. 312, 319–320 (1993).

In this case, Purkey says that he is not challenging his death sentence or the right of the federal Government to execute him. If that is truly the case, then he has not alleged that the decision to schedule his execution burdens a fundamental right. He seems to be asserting that other death row inmates should be executed before him or that he was unfairly selected for execution before other death row inmates. But Purkey has no fundamental right to be executed after specific other inmates who have also received a death sentence. *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 33-34 (1973) (holding "[i]t is not the province of this Court to create substantive constitutional rights in the name of guaranteeing equal protection of

the laws" and fundamental rights are those that "explicitly or implicitly [are] guaranteed by the Constitution."). On the contrary, he was notified of his judgment and conviction and has received (and continues to receive) due process in his criminal proceedings, which are the appropriate safeguards to ensure that his sentence is not carried out without due process of law. And to the extent Purkey claims a right to know why he is being selected for execution, the answer can be found in the sentencing court's judgment and in the applicable statute and regulations.

Because Purkey has not sufficiently pled the deprivation of a fundamental right, he cannot state a plausible Equal Protection claim and his Fifth Amendment claim must be dismissed.

**B.      Purkey Has Not Alleged He Is a Member of a Suspect or Quasi-Suspect Class**

Purkey's Equal Protection claim also fails because he does not plausibly allege that he is a member of a suspect or quasi-suspect class. Purkey's purported "class" appears to be a group of individuals who have received federal death sentences. This group has never been recognized by the Courts as one which is "discrete and insular" nor has it been "'subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976). Indeed, the Seventh Circuit has recognized that "[p]risoners are not a suspect class; conviction of crime justifies the imposition of many burdens." *Johnson v. Daley*, 339 F.3d 582, 585-86 (7th Cir. 2003). Moreover, the regulations setting forth the process for federal executions do not target a suspect class nor draw distinctions based on race, religion, alienage, or any other protected class.

In his Complaint, Purkey suggests that he may have been selected for execution because

he is "white" so that the Attorney General can avoid the appearance of racism by only executing "blacks." (Dkt. 1 at 10, 11.)  This conclusory assertion is not accompanied by any evidence or plausible allegation that Purkey was scheduled for execution based on his race (Caucasian). Indeed, his allegation is belied by the fact that one of the other five inmates scheduled for execution is African-American (Alfred Bourgeois), https://www.bop.gov/inmateloc/ (visited Feb. 24, 2020) (describing Bourgeois as a black male), while another is Native American (Lezmond Mitchell), *Mitchell v. United States*, Case No. 18-17031 (9th Cir. 2019), Dkt. 26 at 3 (order staying execution issued Oct. 4, 2019) (describing Mitchell as a member of the Navajo Nation).

And discussed further below, all five of the inmates selected to be executed in late 2019 and early 2020 were convicted of murdering, and in some cases brutally torturing and raping, children and the elderly.  OAG Press Release 19-807.  With respect to Purkey specifically, the release stated that he had "violently raped and murdered a 16-year-old girl, and then dismembered, burned, and dumped the young girl's body in a septic pond. [Purkey] also was convicted in state court for using a claw hammer to bludgeon to death an 80-year-old woman who suffered from polio and walked with a cane."  *Id.*  Lezmond Mitchell slit the throat of a nine-year old girl after killing her grandmother (*id.*) and Alfred Bourgeois tortured, molested and beat to death his own two-year-old daughter (*id.*).  Purkey does not allege sufficient facts that he or the other five inmates were selected by race.  Rather, they were selected because they had exhausted all of their criminal appeals and post-conviction remedies, and had engaged in particularly heinous crimes.

Purkey also suggests that he was selected for execution based on retaliation, because he is a "jailhouse lawyer." Again, this conclusory allegation is insufficient to support an equal protection claim, or even First Amendment retaliation claim if one were made.  His own

10

attorneys acknowledge in their pleadings that Purkey's belief in this regard is "delusional" and "paranoid." *Purkey v. Barr, et al.,* Case 1:19-cv-03570-TSC (Complaint, Dkt. 1 ¶¶ 84, 107.)

Moreover, a retaliation claim requires a showing of "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Illinois*, 424 F.3d 659, 669 (7th Cir. 2005)). Here, Purkey does not allege any facts that would show Attorney General Barr knew or believed Purkey to be a "jailhouse lawyer," or that he selected Purkey for execution for this reason rather than for his stated reasons. The only allegations offered to support Purkey's retaliation claim in this lawsuit are conversations Purkey had with prison staff in which they supposedly confirmed the retaliatory basis for his execution. (Dkt. 1. ¶¶ 11-17.) *See e.g., Ashcroft v. Iqbal,* 556 U.S. 662, 683 (2009) (pre-trial detainees failed to allege facts plausibly showing invidious discrimination on the basis of race, religious or national origin; the complaint did not "contain any factual allegation sufficient to plausibly suggest [government officials'] discriminatory state of mind"); *Pinkston-El-Bey v. Illinois*, 358 Fed. Appx. 713, 714 (S.D. Ill. Dec. 23, 2009) ("sweeping allegations of unconstitutional conspiracies hatched among a broad swath of Illinois officials are too vague to state a claim."). And in the suit in which he seeks to be declared incompetent for execution, Purkey characterizes those same conversations as "visual and auditory hallucinations involving several Terre Haute Special Confinement Unit (SCU) staff members explicitly confirming that his execution 'is based on [his] zealous filings of administrative remedies and filing so much different litigation in the courts.'" *Purkey v. Barr, et al.,* Case 1:19-cv-03570-TSC (Complaint, Dkt. 1 ¶ 34 (citing ¶¶ 11, 13, 14, 17)).

Based on the foregoing, Purkey has not plausibly alleged that he has been discriminated against as a member of a suspect or quasi-suspect class.

11

### C.     Purkey Has Not Stated a "Class of One" Claim

To the extent Purkey is attempting to bring a "class of one" theory, this claim also fails. To state a class of one equal protection claim, the plaintiff must allege that he, as an individual, have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) ("The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'") (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)).

The Seventh Circuit has never recognized a class-of-one equal protection claim in the prison context. *See Key v. Shannon*, No. 17-CV-521-JDP, 2019 WL 3238638, at *7 (W.D. Wis. July 18, 2019); *Northern v. Dobbert*, No. 16-CV-277-JDP, 2019 WL 4758206, at *8 (W.D. Wis. Sept. 30, 2019) ("[A] class-of-one claim in the prison context is not clearly established."); *Turner v. Brown*, No. 17-CV-764-JDP, 2019 WL 3431158, at *8 (W.D. Wis. July 30, 2019) (prison officials entitled to qualified immunity on class-of-one claim due to absence of controlling legal authority stating that class-of-one equal protection claims can be raised in the prison context).

Moreover, the Seventh Circuit has rejected class-of-one equal protection claims that challenge exercises of prosecutorial discretion, at least where the challenge is premised solely on arbitrariness/irrationality. *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008). "[T]o get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, 'a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.' " *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008) (quoting

12

*Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)). Whether or not an allegation of bad motive is required to state such a claim, "it is clear that an allegation of improper motive does not necessarily overcome the presumption of rationality and permit the case to move forward." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013). To the contrary, "a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity." *Flying J Inc.*, 549 F.3d at 547.

Purkey does not allege that the selection of his execution date violated any applicable law or regulation; in fact the selection of his execution date is wholly within the discretion of the Executive. Because the order in which death row inmates are scheduled for execution is committed to Executive or prosecutorial discretion, Purkey cannot state a class-of-one challenge to his place in that order. *Cf. Moore*, 543 F.3d at 901; *see Bub v. Swiekatowski*, No. 15-CV-195-JDP, 2019 WL 1434579, at *9 (W.D. Wis. Mar. 29, 2019) (prison officials entitled to qualified immunity on class-of-one claims brought by prisoner challenging discretionary decision). Based on the foregoing, Purkey cannot pursue a class of one challenge.

### D.  Purkey's Selection for Execution Has a Rational Basis

Even if the Court were to recognize Purkey's "class of one" claim, he still has not alleged, and cannot establish, that the decision to schedule his execution had no rational basis. Under rational basis review, the defendant has no obligation to produce evidence to sustain the rationality of its actions; it "may be based on rational speculation unsupported by evidence or empirical data." *Fed. Comm. Comm'n v. Beach Comm., Inc*., 508 U.S. 307, 315 (1993)). As the party attacking the rationality of the decision, Purkey "ha[s] the burden to negative every conceivable basis which might support it." *Id.* Purkey cannot do so here. *See May v. Shehan*,

226 F.3d 876, 882 (7th Cir. 2000) (the equal protection clause "requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest."); *Frederickson v. Landeros*, 943 F.3d 1054, 1062 (7th Cir. 2019) (holding "the only form of class-of-one equal protection right that is *clearly* established within [the] circuit involves government actors who single out a citizen for differential treatment with no objective rational basis for that difference *and* because of 'a vindictive or harassing purpose.'") (emphasis in original) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 748 n.2 (7th Cir. 2012)). Accordingly, "even at the pleadings stage, '[a]ll it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment.' " *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (quoting *D.B. ex rel. Kurtis B.*, 725 F.3d at 686 (emphasis added)). In this case, there were conceivable rational bases for scheduling Purkey to be executed and, accordingly, his claim must be dismissed on this basis.

The date of Purkey's execution was announced in a Department of Justice press release which stated that Attorney General Barr had directed (then) Acting Federal Bureau of Prisons Director Hurwitz "to schedule the executions of five death row inmates convicted of murdering, and in some cases torturing and raping, the most vulnerable in our society—children and the elderly." OAG Press Release 19-807. With respect to Purkey specifically, the release stated that he had "violently raped and murdered a 16-year-old girl, and then dismembered, burned, and dumped the young girl's body in a septic pond. [Purkey] also was convicted in state court for using a claw hammer to bludgeon to death an 80-year-old woman who suffered from polio and walked with a cane." *Id.*

It is at least conceivably rational that the discretionary determination of the order in which inmates eligible for execution are to have their sentences carried out would include some

14

consideration of the circumstances associated with the particular crime(s) for which each inmate received the death penalty.  To that end, it was conceivably rational to prioritize the execution of a death row inmate like Purkey, who had been "convicted of murdering . . . and raping, the most vulnerable in our society—children and the elderly."  OAG Press Release 19-807.

Moreover, as noted in the Press Release, "[u]nder Administrations of both parties, the Department of Justice has sought the death penalty against the worst criminals."  *Id.*  Purkey, like the other four death row inmates whose execution dates were announced, "was convicted by a jury of his peers after a full and fair proceeding."  *Id.*  Each of those inmates had exhausted their appellate and post-conviction remedies, and there were no legal impediments preventing their executions.  *Id.*  Therefore, it was at least conceivably rational to schedule a date for Purkey's execution in order to, as the Press Release states, "[u]phold the rule of law" in accordance with a duty "owe[d] [ ] to the victims and their families to carry forward the sentence imposed by [the] justice system" *Id.*  These are legitimate and rational purposes for the Government to carry out the sentence already imposed and upheld by the judicial branch.  *See United States v. Turkette,* 452 U.S. 576, 586 n. 9 (1981) (recognizing states' sovereign power to punish criminal offenders); *Turner v. Glickman*, 207 F.3d 419, 425-26 (7th Cir. 2000) (finding statute rationally based where intention was to deter drug use and welfare fraud); *accord Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366-67 (2001) ("Under rational-basis review, where a group possesses 'distinguishing characteristics relevant to interests the State has the authority to implement,' a State's decision to act on the basis of those differences does not give rise to a constitutional violation."); *United States v. Angelos*, 433 F.3d 738, 754 (10th Cir. 2006) (statute passed rational basis test where basic purpose was to combat "drugs and guns" and deter criminals from engaging in dangerous conduct).

15

Based on the foregoing, the Court must dismiss Purkey's official capacity claims brought under the Fifth Amendment.

### III.   PURKEY FAILS TO STATE A CLAIM UNDER TITLE VII.

Purkey, who describes his race as "white" (Dkt. 1 at 10),  also alleges a "reverse discrimination" claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, and 42 U.S.C. § 1981.  (Dkt. 1 at 9.)  Title VII prohibits discrimination only in the context of federal employment.  Purkey is not a federal employee, nor does he assert an employment discrimination claim.  Therefore, Title VII does not apply to his claims, and Count III of the Complaint should be dismissed.  *See* 42 U.S.C. § 2000e-3 (prohibiting "an employer" from discriminating "against any of his employees" for participating in "enforcement proceedings" under Subchapter VI); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (inmate was not "employee" under Title VII because his relationship with defendants arose from his status as inmate, not as employee); *Wilkerson v. Samuels*, 524 F.App'x 776, 779 (3d Cir. 2013) (protections afforded under Title VII did not apply to prisoner's job in prison factory); *Iheme v. Smith*, 529 F. App'x 808, 809 (8th Cir. 2013) (inmate should not be treated as an "employee" for purposes of Title VII); *Stile v. Fed. Bureau of Prisons*, No. CV 16-3832, 2016 WL 8710396, at *6 (D. N.J. Aug. 26, 2016) (same); *McCaslin v. Cornhusker State Indu*s., 952 F.Supp. 652, 657 (D. Neb. 1995) (concluding that Title VII does not apply to prisoners); *Smith v. Sumner*, No. 11CV39MLM (E.D. Mo. 2011), 2011 WL 4342617 at *6 ("Title VII does not apply to the prisoner working in the state prison, for the state prison industry as part of his or her sentence"); *see also Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992) (holding prisoner is not employee under Fair Labor Standards Act).

16

## CONCLUSION

Based on the foregoing, the Court must dismiss all of Plaintiff's claims against the

Defendants William Barr and Kathleen Sawyer in their official capacities.

Respectfully submitted,

By:    *s/ Shelese Woods*
Shelese Woods
Assistant United States Attorney

17

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2020, the foregoing was filed electronically through

ECF/CM. On this same date, a copy of the foregoing was served upon the following by first class

mail, prepaid, and properly addressed to:

Wesley I. Purkey
Inmate #14679-045
Terre Haute – USP
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, Indiana 47808

*s/ Shelese Woods*
Shelese Woods
Assistant United States Attorney

Office of the United States Attorney
10 West Market Street
Suite 2100
Indianapolis, Indiana 46204