UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WESLEY I. PURKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:19-cv-00517-JMS-DLP |
| | ) | |
| WILLIAM BARR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff, Wesley Purkey, submits the following brief in Opposition to William Barr and Hugh Hurwitz's Individual-Capacity and Official-Capacity Motions to Dismiss. For the reasons set forth below, Purkey requests that this Court deny their Motions to Dismiss.

**INTRODUCTION**

This case centers on a collaborative effort to prevent an inmate from filing grievances and lawsuits on behalf of fellow inmates—a role commonly known as the "jailhouse lawyer." Wesley Purkey embraces this role, though he continually receives backlash from prison officials. According to Mr. Purkey's *pro se* Complaint [ECF1].

Nonetheless, the defendants chose Purkey for execution, claiming to use his underlying conviction as the basis. But, as Mr. Purkey pleaded, this went against the historical practice. And while it may appear that the defendants selected Purkey's execution date because of his underlying conviction, this Court should not dismiss Mr. Purkey's claims—at least at this 12(b)(6) stage in litigation. As set forth in the Complaint: (1) inmates were historically selected for execution based upon when they exhausted their appellate remedies; (2) Barr and Hurwitz revitalized capital

punishment after a two-decade lapse; (3) prison officials targeted and harassed Purkey for filing grievances and lawsuits; and (4) Barr and Hurwitz were aware of these issues when choosing Purkey to be one of the five executed. Mr. Purkey's claims should proceed for additional discovery.

In response, the defendants divert attention from the merits of Mr. Purkey's pleaded claims; they assert procedural hurdles and qualified immunity as a shield from exploring how Mr. Purkey was selected for execution. Nevertheless, Mr. Purkey—as a *pro se* litigant—has satisfied the notice-pleading standard, and – with the exception of Count III alleging Title VII and Section 1981 claims – the other claims should not be dismissed at this stage.

## FACTUAL BACKGROUND

In July of 2019, the Department of Justice announced that it would resume capital punishment after nearly a two-decade lapse. Attorney General Barr instructed the Federal Bureau of Prisons ("BOP") to schedule the executions of five death-row inmates. BOP Director Hurwitz complied and immediately scheduled their executions for December 13, 2019. Wesley Purkey was one of those inmates.

Shortly thereafter, Mr. Purkey sought the criteria used to select inmates for execution. Historically, the well-known practice was executing inmates in the order that their appeals were exhausted, but the new criteria created confusion among prison officials, as set forth in Mr. Purkey's Complaint:

- "I have absolutely no idea what policy or regulation was utilized by the Director of the Central Office in selecting you for execution or the policy or regulation utilized by the Attorney General in approving the date of your execution." – Warden Watson;

- "This is a little odd isn't it? Especially seeing that there are at least a dozen or more death-row inmates who have completely exhausted their appellate remedies that I know of, and you would think the selection process would take such death row inmates in some semblance of individuals who had fully exhausted their appeals." – An unidentified escorting officer;

2

- "When McVeigh, Garaz, and Jones were executed, they were executed in the order of their appeals being exhausted. The last five inmates who were given execution dates were selected in the order of their appeals being exhausted." – A second escorting officer;

- "I don't blame you for being pissed. I'd definitely be pissed as well at the glaring arbitrary selection that is taking place now." – A third escorting officer;

- "Your selection for an execution date to be set by Barr is based on your zealous filings of administrative remedies and filing so much different litigation in the courts against these people." – A staff member.

[ECF1]

These statements from prison officials continued, while staff targeted and ridiculed Mr. Purkey. In their mind, the justification was simple: "All [Purkey] does is cause problems. File on this and file on that." Moreover, according to various officials, Barr and Hurwitz based their selection—in part—on Purkey's role as the jailhouse lawyer. [ECF1, ¶¶ 11, 13, 15]

On October 28, 2019, Mr. Purkey filed a *pro se* complaint challenging how the defendants scheduled his execution. Namely, Mr. Purkey alleges that the defendants selected his execution arbitrarily and as an act of retaliation for filing grievances and lawsuits in prison. Following the 28 U.S.C. § 1915 screening, the Court held that Mr. Purkey's "action shall proceed against Defendants Barr and Hurwitz based on the First and Fifth Amendments, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the theory recognized in *Bivens* . . . ." The defendants, in turn, filed motions to dismiss both the individual-capacity and official-capacity claims.

## LEGAL STANDARD

To satisfy the notice-pleading standard—and overcome a motion to dismiss—a complaint needs to provide a "short and plain statement of the claim showing that the pleader is entitled to relief," providing the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007)); Fed.R.Civ.P. 8(a)(2). "All that need be specified is the bare minimum facts necessary to

3

put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Further, *pro se* complaints must be liberally construed and held to a less-stringent standard than formal pleadings drafted by lawyers. *Erickson*, 551 U.S. at 94 (applied in the prisoner context).

## ARGUMENT

**I.     This Court has personal jurisdiction over Barr and Hurwitz in their individual capacities.**

Defendants assert that this Court lacks personal jurisdiction over Barr and Hurwitz. This argument, however, ignores the Defendants' roles in selecting Purkey's execution date. Indiana's long-arm statute—Trial Rule 4.4(A)—authorizes the Court to exercise jurisdiction on any basis not inconsistent with the Indiana or Federal Constitution. Namely, "the long-arm statute extends personal jurisdiction to the limit of the due process clause, and thus, the only consideration is whether an exercise of jurisdiction complies with due process." *Intermatic, Inc. v. Taymac Corp.*, 815 F. Supp. 290, 292 (S.D. Ind. 1993); *see also Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) ("[I]f [Indiana] constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so.") (citations omitted).

Due process requires that a defendant have minimum contacts with the forum so that maintaining the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The minimum contacts must be established by the purposeful acts of the defendant. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

There are two types of personal jurisdiction that can be established by the defendants' minimum contacts: general and specific. General jurisdiction, which allows a court to hear all claims against a party, is present if the defendant has "continuous and systematic" contact with the

forum state as to render them "at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction "is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself." *1st Source Bank v. Vill. of Stevensville*, 905 F. Supp. 2d 898, 905 (N.D. Ind. 2012). The Seventh Circuit declares that specific jurisdiction is appropriate if all of the following are met:

(1)    the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state;
(2)    the alleged injury arises out of the defendant's forum-related activities; and
(3)    the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice.

*Felland v. Clifton,* 682 F.3d 665, 673 (7th Cir. 2012). In sum, this Court has specific jurisdiction over Barr and Hurwitz, as the defendants confuse mere supervisory roles with Barr and Hurwitz's directed actions at Indiana.

The Supreme Court's decision in *Calder* provides useful contours for the "purposefully availed" element, giving significant weight to the "effects" of a defendant's conduct in the forum. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). In *Calder*, the California plaintiff alleged that a Florida magazine company circulated a libelous article. *Calder v. Jones*, 465 U.S. 783, 783 (1984). Although the Florida company sought dismissal for lack of personal jurisdiction, the Court held that California had personal jurisdiction over the Florida company because California was the focal point both of the story and harm suffered. *Id.* Thus, a forum state has personal jurisdiction if the defendant targets the forum and causes effects there. *Id.* at 789. *But see Walden v. Fiore*, 571 U.S. 277, 289 (2014) (holding that Nevada did not have personal jurisdiction because the defendant did not expressly target Nevada, and the alleged injury occurred in Georgia).

Courts have integrated the *Calder* analysis in *Bivens* actions. Generally, federal courts do not have jurisdiction over nonresident defendants "simply because they are federal employees." *Wilson v. Rackmill*, No. CIV. A. 87-0456, 1990 WL 87316, at *2 (E.D. Pa. June 18, 1990). But a

5

forum state had personal jurisdiction over the BOP Director when he explicitly refused to approve medicine for a specific prisoner. *Arocho v. Nafziger*, 367 Fed. App'x 942, 948 (10th Cir. 2010). Namely, in *Arocho*, the court held that the BOP Director did not issue a generalized prohibition; he denied a specific request from an inmate. *Id.* at 949–50. This intentional act—aimed at the forum state—"[was] more than sufficient to support a finding of purposeful direction under *Calder*." *Id.* at 950.

Even more, the Seventh Circuit has acknowledged that Indiana's long-arm statute may reach the BOP Director and the Assistant Surgeon General. *See Green v. Carlson*, 581 F.2d 669, 676 (7th Cir. 1978); *see also Winters-El v. Hawk*, 85 F.3d 632 (7th Cir. 1996) (noting that because the plaintiff-prisoner suffered the injury in Indiana, the BOP Director should have been subject to personal jurisdiction in Indiana).

Indeed, Barr and Hurwitz purposefully availed themselves of Indiana law by intentionally choosing Mr. Purkey. Like the defendant targeting the forum in *Calder*, Barr and Hurwitz specifically targeted Indiana by selecting Mr. Purkey's execution date. And the harm occurred in Indiana. Further, Barr and Hurwitz selection has an individualized component: Mr. Purkey was one of only five inmates picked, much like the BOP Director's intentional act in *Arocho*. The Defendants' actions were more than that of a general supervisor; both Barr and Hurwitz were personally responsible for the scheduling decision.

The defendants' reliance on *O'Vadka v. Blum*, 2007 WL 1550429 (N.D. Ind. May 24, 2007), and *Thornton v. Quinlan*, 864 F. Supp. 90, 92 (S.D. Ill. 1994), is misplaced. These cases— along with cases across the country dismissing claims for lack of personal jurisdiction—generally rely on the same principle: "When federal agency heads are not alleged to have been directly and actively involved in activities in the forum state, many courts have refused to exercise personal

6

jurisdiction over them." *Wag-Aero, Inc. v. U.S.*, 837 F. Supp. 1479, 1485 (E.D. Wis. 1993) (stating that "if a federal agency head could be sued personally in any district . . . for merely [performing official duties] . . . the minimum contacts requirement would be rendered meaningless").

But these cases have another thing in common: the federal agency heads were not directly involved with the plaintiff's individual claim. Instead, the official simply enforced the federal policies in a supervisory role. *Hill v. Pugh*, 75 Fed. App'x 715, 719 (10th Cir. 2003) (dismissing claim for lack of personal jurisdiction because BOP Director did not purposefully avail himself only by overseeing prisons). Therefore, because they specifically directed Mr. Purkey's execution, Indiana has personal jurisdiction over both Barr and Hurwitz.

## II.    The Seventh Circuit is unwilling to dismiss claims prematurely; at this stage in litigation, Purkey has pleaded sufficient facts to demonstrate Barr and Hurwitz's constitutional violations.

Mr. Purkey's individual-capacity claims against the Defendants must proceed at this early stage of litigation. *Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers." *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005). And while Congress has not created an analogous federal statute, the Supreme Court has recognized this implied cause of action in three circumstances:

    (1)    against a federal officer for violations of the Fourth Amendment, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971);

    (2)    against a public employee for gender discrimination in violation of the Fifth Amendment's Equal Protection component, *Davis v. Passman*, 442 U.S. 228 (1979); and

    (3)    against a federal official for inadequate prisoner medical care in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980).

The *Bivens* remedy, however, has never been limited exclusively to this list. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (noting that expanding *Bivens* is a "disfavored" juridical activity). *But see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 392

7

(1971) (stating that where federally protected rights have been invaded, courts will "adjust their remedies so as to grant the necessary relief").

To determine whether a *Bivens* remedy is available, courts must engage in a two-part inquiry. *Ziglar*, 137 S. Ct. at 1849. First, courts must ask whether the case meaningfully differs from *Bivens*, *Davis*, or *Carlson*. *Id.* Meaningful differences may include the rank of the officers involved; the constitutional right at issue; the extent of judicial guidance for the official conduct; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors not considered in previous *Bivens* cases. *Id.*

The second part of the inquiry applies only if the case differs meaningfully. This requires the court to determine whether "special factors" counsel hesitation against judicial intrusion. *Ziglar*, 137 S. Ct. at 1857–58. The Supreme Court has not defined the phrase "special factors counselling hesitation." *Id.* But the inquiry must concentrate on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.*

**A.    Purkey's First Amendment retaliation claim should proceed, as determining whether *Bivens* applies is not proper in a 12(b)(6) motion.**

The defendants argue that because the Supreme Court has "never have never held that *Bivens* extends to First Amendment claims," *Reichle v. Howards*, 566 U.S. 658, 662 n.4 (2012), MR. Purkey's claim should be dismissed. But adjudicating the First Amendment claim at this stage of litigation is premature.

Specifically, the question of whether *Bivens* provides a vehicle to litigate First Amendment claims is unsettled in the Seventh Circuit. *See Haas v. Noordeloos*, 792 Fed. App'x 405, 406 (7th Cir. 2020); *Piggee v. Bell*, No. 2:19-CV-00601-JPH-DLP, 2020 WL 3078070, at *2 (S.D. Ind. June 10, 2020); *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 637 (7th Cir. 2005). Regardless, a

8

motion to dismiss is not the proper stage to determine whether a *Bivens* remedy is available. *See Haas*, 792 Fed. App'x at 406; *Piggee*, 2020 WL 3078070 at \*2 (allowing First Amendment *Bivens* claims to proceed at the pleadings stage). Even post-*Abbasi*, courts of appeals foreclose a *Bivens*-style damages remedy only after "receiving counseled briefing on the matter." *Smadi v. True*, 783 Fed. App'x 633, 634 (7th Cir. 2019)

Accordingly, to proceed with his *Bivens* claim of First Amendment retaliation, Mr. Purkey must allege that (1) "he engaged in activity protected by the First Amendment"; (2) "he suffered a deprivation that would likely deter First Amendment activity in the future"; and (3) "the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Put succinctly, although being selected for execution may not be actionable in and of itself, if the selection was taken in retaliation of Purkey exercising his First Amendment rights, then it becomes actionable. *See Bridges*, 557 F.3d at 552.

### 1.     Mr. Purkey engaged in activity protected by the First Amendment.

The First Amendment protects inmates when filing lawsuits and grievances; thus, Purkey—as the jailhouse lawyer—engaged in activity protected by the First Amendment. A prisoner's right to file a grievance has been recognized as a constitutionally protected activity. *See Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Namely, "[p]risoners are entitled to utilize available grievance procedures without threat of recrimination[.]" *Id.* And, "[t]o succeed on his retaliation claim, [Purkey] need not establish an independent constitutional interest . . . because the crux of his claim is that [federal] officials violated his *First Amendment* rights by retaliating against him for his protected speech activities." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (quoting *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)). Ultimately, whether a prisoner

9

engaged in activity protected by the First Amendment is a question that should be explored in discovery and, if necessary, trial. *See Bridges*, 557 F.3d at 551-52.

Here, Mr. Purkey was the jailhouse lawyer who often engaged in filing lawsuits and grievances. Even Barr recognized Mr. Purkey as such. And a complaint is sufficient to overcome a motion to dismiss by identifying the lawsuit or act claimed to have constituted retaliation. *See Higgs*, 286 F.3d at 439. On numerous occasions, Mr. Purkey alleges that the sheer volume of grievances and lawsuits filed played a role in his execution date. *See* Compl. ¶¶ 11, 13, 15. Thus, Purkey engaged in activity protected by the First Amendment, thereby allowing his claim to proceed.

### 2. Purkey suffered a deprivation that would deter First Amendment activity in the future.

Barr and Hurwitz selecting Mr. Purkey's execution date fulfills the adverse-action element. To overcome a motion to dismiss, a prisoner must allege that the retaliatory action would "deter a person of ordinary firmness" from exercising First Amendment activity in the future. *Bridges*, 557 F.3d at 552 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Put differently, Mr. Purkey must allege that being selected first for execution is sufficiently adverse to deter a person of "ordinary firmness" from filing grievances in the future. "This is an objective standard; it does not hinge on the personal experience of the plaintiff." *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020).

Prisoners have satisfied this second requirement by alleging unjust disciplinary charges for exercising their First Amendment right. In *Bridges*, the prisoner successfully claimed adverse action through delays in his incoming mail; harassment by a guard kicking his cell door, turning his cell light off and on, and opening his cell and slamming it to startle him when he was sleeping; and improper dismissal of his grievances. *Bridges*, 557 F.3d at 552. In *Babcock*, the prisoner

10

satisfied the adverse-action element by alleging that his transfer to a segregation unit resulted from using the inmate grievance system. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Similarly, in *Jackson*, the prisoner's forty-five days in disciplinary segregation was sufficient to deter a person of ordinary firmness from exercising their First Amendment rights. *Jackson v. Thurmer*, 748 F. Supp. 2d 990, 1003 (W.D. Wis. 2010).

Being selected first for execution constitutes an adverse action that would deter other inmates of ordinary firmness from filing grievances and lawsuits. If a prisoner's transfer to a segregation unit in *Babcock* and *Jackson* constituted an adverse action, Mr. Purkey being designated first for execution would deter other death-row inmates from exercising their First Amendment rights—fearing a similar outcome. Notably, the merits of the claim need not be addressed at the pleadings stage. *See Keller v. Walton*, 2016 WL 4720459, at *7 (S.D. Ill. Sept. 9, 2016).

### 3. A causal connection exists between the protected activity and the deprivation.

Mr. Purkey has articulated a causal connection between his jailhouse-lawyer role and how he was selected for execution. Specifically, Purkey does not need to show that his role as jailhouse lawyer was the only factor motivating the defendants' decision; rather, he needs to show that filing grievances and lawsuits were "motivating factors." *Woodruff*, 542 F.3d at 551.

Importantly, there is a difference between an official's act "motivated by the *fact* that the inmate sued" and one motivated by "the *nature* of the dispute underlying the lawsuit." *Holleman v. Zatecky*, 951 F.3d 873, 878–79 (7th Cir. 2020) (quoting *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996)). To illustrate, in *Holleman*, the prisoner complained of prison conditions, and the defendants responded by transferring him to another facility. *Holleman*, 951 F.3d at 879. The prisoner alleged that his complaints were a motivating factor in the transfer, giving rise to a First

11

Amendment retaliation claim. *Id.* The court held that although the defendants admitted the complaints were a motivating factor, the transfer remedied the prisoner's complaint, instead of punishing the prisoner for engaging in protected activity. *Id.* Accordingly, the prisoner did not state a viable claim. *Id.*

As pleaded, Mr. Purkey's numerous lawsuits and grievances were at least a motivating factor in Barr and Hurwitz's decision. And unlike in *Holleman*, where the transfer resulted from the substance of the prisoner's complaint, Mr. Purkey was selected for execution because of the *fact* that he previously sued.

Defendants also argue that Barr and Hurwitz were not personally involved in any First Amendment retaliation. "[A] defendant cannot be liable under *Bivens* on the basis of *respondeat superior* or supervisory liability, rather, there must be individual participation and involvement by the defendant." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011). But dismissing Mr. Purkey's claim on this basis, without additional discovery, is premature. *See Piggee v. Bell*, 2020 WL 3078070, at *2 (S.D. Ind. June 10, 2020) (noting that dismissing claims against named defendants would be premature at the pleadings stage); *see also Clark v. Lodge*, 2020 WL 1856448, at *2 (C.D. Ill. Apr. 13, 2020). Mr. Purkey's complaint, taken as true, sufficiently demonstrates Barr and Hurwitz's personal involvement: they selected Mr. Purkey for execution based upon his "zealous filings of administrative remedies and filing so much different litigation." *See* Compl. ¶¶ 11, 13, 15.

**B.      Barr and Hurwitz are not entitled to qualified immunity because reporting grievances and filing lawsuits are well-established rights for prisoners.**

Defendants next assert that because Barr and Hurwitz were exercising discretion, they are entitled to qualified immunity. But the argument misses the point. Under *Harlow v. Fitzgerald*, "governmental officials performing discretionary functions are entitled to qualified immunity from

liability arising out of conduct that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Also, discovery should not proceed until the threshold immunity issue is resolved. *Id.*

*Babcock*, however, stands for the proposition that while retaliation claims may be resolved at summary judgment, qualified immunity should not bar all First Amendment claims at the pleadings state. *See Babcock*, 102 F.3d at 276. Rather, prisoners have a recognized right to be free from retaliation for seeking judicial remedies. *Id.* And "because the jurisprudence prohibiting retaliatory acts against prisoners for reporting grievances is well-established," *Penrod v. Zavaras*, 94 F.3d 1399, 1404–05 (10th Cir. 1996), Barr and Hurwitz are not entitled to qualified immunity. Therefore, discovery should proceed to evaluate the merits of Purkey's claim.

### III.   Mr. Purkey may seek review under the Administrative Procedure Act and proceed with constitutional claims.

Defendants further argue that this Court cannot prevent the BOP from carrying out the execution because that relief could only be obtained with prior § 2241 petitions. *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005). But the defendants' argument is misplaced. The Seventh Circuit has designated the Administrative Procedure Act ("APA") as the proper vehicle for challenging BOP policy and discretion. *See Richmond v. Scibana*, 387 F.3d 602, 605–06 (7th Cir. 2004) (holding that a prisoner's challenge to a DOJ opinion on the BOP's discretion should be brought under the APA, not in habeas corpus); *see also Wyre v. Cross*, 2014 WL 231922, at *2 (S.D. Ill. Jan. 21, 2014) (noting that § 2241 was not the proper avenue for relief when a prisoner challenged how the BOP denied his transfer request).

Parole litigation supplies a helpful analogy in distinguishing between habeas corpus and civil actions: "[A] prisoner claiming a right to *release* on parole must use § 2241 . . . ; but a prisoner

13

claiming that parole officials are apt to use incorrect rules when resolving a future application must use the APA." *Scibana*, 387 F.3d at 605–06. *Compare Preiser v. Rodriguez,* 411 U.S. 475 (1973) (holding that a challenge to the fact or duration of custody must proceed in habeas corpus), *with Wolff v. McDonnell,* 418 U.S. 539 (1974) (holding that a challenge to rules affecting conditions of custody, and potentially affecting the duration of a particular kind of custody, proceeds as ordinary civil suit unless conditions of custody change so substantially that challenge really is to the "fact" of custody).

Mr. Purkey challenges the Defendnats' rules and basis determining the execution date. Consequently, these claims should proceed as a civil action, with this Court reviewing (A) the agency's decision under the APA; and, (B) Purkey's constitutional claims.

**A.** **Congress did not intend to eliminate all judicial review concerning Barr and Hurwitz's discretion. Thus, Mr. Purkey can seek judicial review of the agency's decision as arbitrary.**

Next, Defendants argue that even if Mr. Purkey's claim can proceed in a civil action, Congress eliminated all judicial review of Barr and Hurwitz's "determination, decision, or order." Indeed, 28 C.F.R. § 26.3 authorizes the BOP Director to select the date, time, and place of execution. And—as the defendants correctly point out—18 U.S.C. § 3625 specifies that the judicial review provisions of the APA do not apply to "any determination, decision, or order" made pursuant to 18 U.S.C. §§ 3621-3624.

But the defendants failed to establish that 18 U.S.C. § 3625 encompasses the death-penalty statute. Specifically, 18 U.S.C. § 3625 (precluding judicial review of agency decisions) applies only to 18 U.S.C. §§ 3621-3624. Sections 3621-3624 address the condition of prisons, place of imprisonment, and release of prisoners—not death penalties or execution dates. Instead, 18 U.S.C. § 3596 handles death penalties.

14

The Defendants, therefore, correctly state that Mr. Purkey can challenge the agency's decision as arbitrary under the APA. Specifically, the "the reviewing court shall . . . set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. In short, because the statute precluding judicial review neither mentions nor incorporates the death-penalty statute, Mr. Purkey's claim should proceed under the APA, thereby permitting this Court to review the agency's decision.

**B.      Regardless, this Court has jurisdiction to review Purkey's constitutional claims against the defendants in their official capacities.**

Even if judicial review under the APA is not available, "[f]ederal courts may review the merits of claims alleging that an agency has violated the constitution." *Davis v. Beeler*, 966 F. Supp. 483, 489 (E.D. Ky. 1997) (citing *Webster v. Doe*, 486 U.S. 592, 592 (1988)).  In *Webster*, the Supreme Court established that "where Congress intends to preclude constitutional claims its intent must be clear." *Webster*, 486 U.S. at 603. The Seventh Circuit applied this principle in *Marozsan*, holding that while a statute precluded judicial review of the Veterans' Administration's substantive decision, the plaintiff was nevertheless entitled to raise constitutional challenges. *Marozsan v. United States*, 852 F.2d 1469, 1471–72 (7th Cir. 1988).

Because Congress did not explicitly preclude constitutional review in 18 U.S.C. § 3625, this Court has jurisdiction to review Mr. Purkey's constitutional claims. Like the statutes in *Webster* and *Marozsan*, 18 U.S.C. § 3625 does not mention "constitutional claims." And those cases established that Congress's intent must be conspicuous to preclude judicial review of constitutional violations. Therefore, because § 3625 does not conspicuously exclude reviewing constitutional claims, this Court has proper jurisdiction to evaluate Mr. Purkey's constitutional claims.

15

## IV. Purkey's official-capacity claims should proceed.

Mr. Purkey asserts two constitutional claims against the defendants in their official capacities: (A) a class-of-one claim; and (B) a Fifth Amendment equal-protection claim. Although Defendants did not burden a fundamental right or target a suspect class, governmental action still requires a rational basis. This Court should allow these claims to proceed for additional discovery.

### A. Mr. Purkey's class-of-one claim should proceed at this stage of litigation.

To assert an equal protection claim under the class-of-one theory, Mr. Purkey must allege that he "'has been irrationally singled out,' without regard for any group affiliation, for discriminatory treatment." *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)). "A class-of-one equal protection claim is cognizable where an individual alleges that he has been 'intentionally treated differently from others similarly situated and that there is not rational basis for the difference in treatment.'" *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Prison classifications "will be upheld if any justification for them can be conceived." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016).

Recently, in *Troya v. Revell*, this Court reiterated that prisoners only need to state a plausible claim to overcome a motion to dismiss. 2019 WL 5551956, at *4 (S.D. Ind. Oct. 25, 2019). There, the plaintiff challenged the BOP regulation providing a visiting privilege to inmates. *Id.* In his complaint, the plaintiff alleged a class-of-one violation when other similarly situated inmates were granted exceptions to this privilege. *Id.* The court denied the government's motion for judgment on the pleadings because the plaintiff's "allegations [were] sufficient to state a plausible equal protection claim." *Id.* Importantly, this Court emphasized that the plaintiff only needed to state a plausible claim to overcome the 12(c) motion—which is same standard for a 12(b)(6). *Id.*

16

In his Complaint, Mr. Purkey presents a plausible claim. Namely, Barr and Hurwitz chose Mr. Purkey's execution date to retaliate against him for being the jailhouse lawyer. The defendants' rationale—to consider the underlying crime associated with each death-row inmate—is insufficient to dismiss Mr. Purkey's claim. Much like the deference given in *Troya*, this Court should defer, at this point in litigation, to Purkey's contentions. In sum, Purkey alleged a plausible claim that he was intentionally treated differently—for filing grievances and lawsuits—from other inmates on death row.

> **B.**      **Barr and Hurwitz did not state a legitimate purpose when selecting inmates for execution.**

To establish a *prima facie* case of discrimination under equal protection, Mr. Purkey "must show that he is [intentionally] treated differently than similarly situated inmates based upon either a suspect classification or a fundamental right." *Drew v. Vanord*, 2019 WL 2422248, at *3 (S.D. Ill. June 10, 2019) (citing *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 503 (7th Cir. 1993)). Equal-protection claims generally involve discrimination on account of race, national origin, or gender. *Iglesias v. True*, 403 F. Supp. 3d 680, 688 (S.D. Ill. 2019).

Without asserting a fundamental right or suspect classification, equal protection requires "that a classification which results in unequal treatment bear some rational relationship to a *legitimate* state purpose." *French v. Heyne*, 547 F.2d 994, 997 (7th Cir. 1976) (emphasis added). Similarly, in the prison context, equal protection "requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest." *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000).

Defendants' brief focuses on the fact that Mr. Purkey has not alleged a fundamental right or suspect classification. But the defendants neglect that rational basis still requires a legitimate government interest. Selecting the jailhouse lawyer to prevent future lawsuits and grievances, as

17

Mr. Purkey alleges, cannot serve a legitimate government interest. As such, Mr. Purkey's Fifth

Amendment claim should proceed for further discovery.

## CONCLUSION

Plaintiff respectfully requests that, except for Count III asserting claims under Title VII

and 42 U.S.C. § 1981, this Court deny Defendants' Motions to Dismiss.

Respectfully submitted,

*/s/ John R. Maley*
John R. Maley
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:     (317) 236-1313
Email:             jmaley@btlaw.com

*Court-Appointed Counsel for Plaintiff*

18