# Exhibit E

Plaintiff's Reply in Support of Plaintiff's Renewed Motion for a Preliminary Injunction, Purkey DC Ford Matter (D.D.C. July 2, 2020), ECF No.29

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WESLEY IRA PURKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03570-TSC |
| | ) | |
| WILLIAM P. BARR, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION

For the past seven months, the pleadings before the Court have followed a predictable pattern—Mr. Purkey has provided ample evidence of his incompetency and Defendants have responded by continually obstructing his ability to fully and fairly litigate his claim at every stage, depriving him of due process.

On the merits, Mr. Purkey's submissions have included a detailed, unrefuted expert opinion that he is not competent to be executed, as well as a host of other evidence including additional expert opinions describing his progressive dementia, schizophrenia, complex-Post Traumatic Stress Disorder (PTSD), traumatic brain injury, and severe mental illness. Mr. Purkey also has extensively documented the repeated and unwarranted steps that Defendants have taken to prevent his litigation of this claim, which continue to this very day.

In the face of these showings, Defendants' response has been consistent: they have ignored the merits of Mr. Purkey's claims and continued to obstruct their factual development, while repeatedly seeking dismissal on technical, procedural grounds so they can speed ahead to

the execution. According to Defendants, Mr. Purkey brought the wrong type of claim in the wrong court and so this Court should ignore his meritorious constitutional claims and, indeed, dismiss them outright. This same reasoning, in Defendants' erroneous view, also suffices to have this Court condone the way the United States government has stonewalled many months of discovery requests from Mr. Purkey's legal team for items exclusively in the government's possession that are indisputably relevant to Mr. Purkey's claims. As Mr. Purkey has demonstrated in pleading after pleading, Defendants' arguments lack merit because his case was properly filed as a civil rights action, which does not seek to challenge his conviction or reduce or invalidate his sentence and does not necessarily bar his execution permanently. Moreover, he is entitled to this discovery because it is necessary to the full and fair litigation of his Eighth Amendment claim, and he has vastly exceeded any required threshold showing applicable to that claim.

The pattern continues in the most recent motions filed with the Court. Once again, Mr. Purkey demonstrated in support of his renewed request for a preliminary injunction that all of the pertinent factors weigh heavily in his favor, including, most importantly, a likelihood of success on the merits. Nevertheless, Defendants seek to derail meaningful consideration of these claims on technical grounds so that Mr. Purkey can be rushed to execution during a pandemic and in time for the upcoming presidential election. Defendants' current arguments suffer from the same flaws as the old ones. At the end of the day, Mr. Purkey's claims are properly brought as a civil rights action and granting the requested relief here is entirely consistent with the other types of Eighth Amendment cases the Supreme Court has allowed condemned prisoners to bring outside of habeas—granting relief in this case will not result in the reduction or invalidation of Mr.

2

Purkey's death sentence, or "necessarily bar his execution," but instead will ensure that such a sentence cannot be unconstitutionally carried out at the current time.

Furthermore, there is absolutely no merit to Defendants' related "slippery slope" argument, which presumes falsely that the "floodgates" might open if Mr. Purkey's claim is heard by this Court in this venue. The concern is misplaced not only because there are relatively few *Ford* cases to begin with but also because federal courts are already unquestionably empowered to hear federal *Ford* claims in some form. Allowing Mr. Purkey's claim to be heard as a civil rights claim will not open the federal courthouse doors any more broadly than they already are. And while permitting consideration in Washington, D.C. might permit the litigation of some federal claims in this venue that might otherwise be heard in Indiana, any opening will be far narrower than the government suggests. The only competency-to-be-executed cases that could be heard in this Court stem from those prisoners scheduled-to-be executed by the Defendants, any challenges by state prisoners in federal court would necessarily take place in the federal district courts in the relevant State. The record indisputably shows that Mr. Purkey's execution timing, process, and discovery production is being personally orchestrated out of Washington, D.C. by the Defendants, including the United States Attorney General himself, for reasons known only to them. Moreover, Defendants (not government officials in Indiana) are also responsible for the complete lack of *any* federal *Ford* procedures whatsoever. As a result, this Court is the one best situated to address and remedy the constitutional injuries presented here with respect to the relevant parties, the relevant witnesses, and consistent with judicial economy, since a related matter involving Mr. Purkey is already pending with this Court. And at this late stage, with Mr. Purkey having initiated this case more than seven months ago, and diligently pursuing his claims ever since, the injustice would be extreme if the Attorney General, sitting in

3

Washington, D.C., were allowed to force Mr. Purkey to return to Indiana to litigate these claims before a Court that has only a few days to consider them before the arbitrarily chosen execution date on July 15, 2020. Given that venue determinations often turn on convenience and equitable grounds, it is hard to think of a more inequitable or inconvenient result than sending this case to Indiana now.

Mr. Purkey has brought this case using the right procedural vehicle in the right court. He has pursued his claims diligently, his claims have merit, and he will be irreparably injured if this Court does not consider them. The Court should grant the preliminary injunction in order to allow full and fair litigation of Mr. Purkey's claims.

**I.      Mr. Purkey has demonstrated a likelihood of success on the merits and this Court should enjoin the Defendants from executing Mr. Purkey pending a hearing on his *Ford* claim**

Mr. Purkey has demonstrated a likelihood of success of his constitutional claims, as he has sufficiently shown that this Court has jurisdiction to hear his claims and far exceeded the "substantial threshold" proof of incompetency requirement to litigate his *Ford* competency and due process claims.

**a.   This Court has jurisdiction over Mr. Purkey's federal *Ford* claims because the claims are not "core habeas" and habeas is therefore not the exclusive remedy**

     i.   <u>Jurisdiction is only relevant to Mr. Purkey's burden to show a likelihood of success on the merits if this Court finds it lacks jurisdiction</u>

The question of jurisdiction has been briefed thoroughly by both parties. Nonetheless, Defendants spend most of their opposition briefing these same principles again. This round of objections is no more persuasive than the last, as this Court has jurisdiction to hear this civil rights case. It is of course axiomatic that, as with every case before it, the Court must ensure that it has jurisdiction before it decides the substantive merit of a claim or a motion. *See Delta Air Lines, Inc. v. Export-Import Bank*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015) (citing *Dominguez v.*

*UAL Corp.*, 666 F.3d 1359, 1362 (D.C. Cir. 2012) ("[E]very federal court has a 'special obligation to satisfy itself' of its own jurisdiction before addressing the merits of any dispute." (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986))). At the preliminary injunction stage, a plaintiff must demonstrate "a substantial likelihood of success on the merits" which "encompass[es] not only substantive theories but also establishment of jurisdiction." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95, 104 (D.C. Cir. 2019) (citations and quotations omitted). Jurisdiction has been established in this case through the extensive jurisdictional briefing. Pl. Br. Filed Pursuant to this Court's Order of Dec. 31, 2019, ECF No. 14 (hereinafter "Pl.'s Dec. 31, 2019 Br."); Pl. Reply to Defs.' Resp. to Br. Filed Pursuant to this Court's Order of Dec. 31, 2019, ECF No. 17 (hereinafter "Pl.'s Reply to Resp."); Mem. in Supp. of Pl. Opp'n to Defs.' Mot. to Dismiss, ECF No. 20 (hereinafter "Pl.'s MTD Opp'n").

Despite prior briefing showing there is jurisdiction in this Court, Defendants now seem to argue that the mere presence of a colorable jurisdictional issue somehow creates a heightened standard for the substantial likelihood of success prong, asserting that difficult jurisdictional issues make it "'more *unlikely*' that the plaintiff can establish a 'likelihood of success on the merits.'" Defs.' Opp'n to Pl.'s Renewed Mot. for a Prelim. Inj. 7, ECF No. 26 (hereinafter "Defs.' PI Opp'n") (citing *Munaf v. Geren*, 553 U.S. 674, 690 (2008)). But, there is no heightened burden beyond the general mandate that a Court must have jurisdiction to rule in a matter. Instead, *Munaf* stands simply for the proposition that a court cannot issue a preliminary injunction based solely on its need to resolve difficult jurisdictional questions without even considering the "likelihood of success" on the substantive merits. *Munaf*, 553 U.S. at 690 (reversing the lower court's preliminary injunction where the lower court's decision was based *only* on the fact that there was a difficult question of jurisdiction without any consideration of the

5

likelihood of success on the "substantive merits"). *Munaf* in fact held that a difficult jurisdictional question "*says nothing* about the 'likelihood of success on the merits,' other than making such success more unlikely due to potential impediments to even reaching the merits." *Id.* (emphasis added). Although the Court certainly must determine whether it has jurisdiction to hear Mr. Purkey's claims, once it does so, it must move on to assessing the likelihood of success on the substantive merits of the claim. The difficulty of the jurisdictional analysis, once made, is inapposite to the likelihood of substantive success on the merits analysis required to decide a motion for preliminary injunction.

      ii.   <u>Mr. Purkey's requested relief would not "necessarily bar" his execution under</u> <u>*Nelson* and *Hill*</u>

This Court unquestionably has jurisdiction because enjoining Mr. Purkey's execution until he is restored to competency does not "necessarily bar" his execution. Defendants' latest opposition does not raise *any* new jurisdictional arguments but rather rehashes its already stated position that Mr. Purkey's civil rights claims must be brought through habeas and thus the Court does not have jurisdiction over these claims outside of habeas. Yet, Defendants acknowledge and accept that civil rights actions outside of habeas *are* allowable where the injunctive relief sought does not challenge the fact of a conviction, the duration of a sentence, or, in the death penalty context, does not "necessarily bar" the execution itself. Defs.' PI Opp'n 9, ECF No. 26. Mr. Purkey's *Ford* claim falls squarely within this framework where he does not challenge his conviction or sentence and the relief sought does not "necessarily bar" his execution permanently.

Under *Nelson v. Campbell* and *Hill v. McDonough*, a challenge to an execution is not "core habeas" and may be brought as a standalone, civil rights claim where the relief sought will

6

not necessarily bar the plaintiff's execution.[1] *Hill v. McDonough*, 547 U.S. 573, 579 (2006); *Nelson v. Campbell*, 541 U.S. 637, 644 (2004).

The *Nelson* and *Hill* courts distinguish between a temporary bar in which the court enjoins a resolvable constitutional concern and a *de facto* permanent bar which would effectively be a thinly veiled challenge to the sentence itself by foreclosing the government's ability to implement the sentence. *See Hill*, 547 U.S. at 580 (concluding that enjoining a single protocol method does not "necessarily" permanently leave the "State without any other practicable, legal method of executing Hill by lethal injection" because other lethal injection protocols were possible, and the law did not prohibit other protocols); *Nelson*, 541 U.S. at 645 (concluding that enjoining a particular surgical procedure during an execution did not permanently limit the State's ability to implement the death sentence where the surgical procedure was not mandated by law and the petitioner was willing to concede that an acceptable alternative existed). This exact same rationale applies here. Mr. Purkey seeks an injunction that would bar his execution only *during his period of incompetency*. As Defendants well know, competency is fluid and may be restored. *See* Pl.'s Dec. 31, 2019 Br. 9, ECF No. 14; Pl.'s MTD Opp'n 22–23, ECF No. 20; Pl.'s Reply to Resp. 3, ECF No. 17. The process of restoring competency is not prohibited by law, the government certainly does not disavow the possibility that it could restore Mr. Purkey to

---

[1]     Defendants again argue that Mr. Purkey has applied the wrong standard to determine whether this federal *Ford* complaint is core habeas. Defs.' PI Opp'n 10, ECF No. 26. The argument is a weak attempt to deflect the Court's attention. Mr. Purkey's prior briefings explicitly addressed *Nelson* and *Hill*, the cases Defendants are so flummoxed to not see in Mr. Purkey's current motion. Pl.'s Dec. 31, 2019 Br. 8, ECF No. 14; Pl.'s MTD Opp'n 22–24, ECF No. 20. More importantly, this emphasis on "the right test" inaccurately implies that the tests are fundamentally different. They are not. In the core habeas tests originally cited by Mr. Purkey, the courts held that "[c]laims that 'will not *necessarily* imply the invalidity of confinement or shorten its duration' are not at the 'core' of habeas . . . ." *See* Pl. Dec. 31, 2019 Br. 7, ECF No13 (citations omitted). Similarly, the core habeas test in *Nelson* and *Hill* asks whether the challenged execution will necessarily be barred by the relief sought which would be, in the court's eyes, a *de facto* challenge to the underlying sentence. These tests are nothing more than slightly different articulations of the same concept.

competency here (demonstrating the intent to attempt to restore Mr. Purkey to competency if his *Ford* claim is successful), and Mr. Purkey has never contested the possibility that restoration could occur here. Mr. Purkey's requested relief, therefore, does not seek to permanently bar Defendants from implementing his sentence but, rather, only during his period of incompetency.

Defendants argue that Mr. Purkey's own expert opinions demonstrate that a favorable finding here would "necessarily bar" Mr. Purkey's execution because they have opined that Mr. Purkey's condition is irreversible and progressive. Defs.' PI Opp'n 13, ECF No. 26. But this misconstrues the concept of competency and Mr. Purkey's current arguments. Competency to be executed under *Ford* and progressive dementia are not mutually exclusive. Mr. Purkey's dementia can be on an irreversible downward trajectory, but that does not mean that his competency to understand why Defendants' seek to execute him is irreversible. *See, e.g.*, T. Hyde Decl. ¶ 14, ECF No. 23-4 (concluding that Mr. Purkey has "demonstrated a progressive decline in his cognitive abilities," but he needs to evaluate Mr. Purkey and conduct tests in order to "ascertain his current cognitive status and diagnosis").

Defendants also claim that Mr. Purkey applies the wrong "temporal framework" to the core habeas test. Defendants urge that a challenge related to an execution is "core habeas" if relief would necessarily bar the execution *today* (even if it might still be allowed at some point in the future). Defs.' PI Opp'n 11–14, ECF No. 26. To support this argument, Defendants rely heavily on the *Hill* Court's statement that the execution challenge in that case could proceed outside of habeas because, "*at this stage of the litigation*, the injunction Hill seeks would not necessarily foreclose the State from implementing the lethal injection sentence *under present law*." *Id.* at 11 (citing *Hill*, 547 U.S. at 583).

8

The Court's analysis, however, does not refute but, rather, supports the conclusion that Mr. Purkey's requested relief does not "necessarily bar" his execution. As argued previously, Mr. Purkey's competency may be restorable, and restoration procedures are in fact commonplace. *At this stage in the litigation* there is nothing—law, policy, or otherwise— prohibiting Defendants from attempting to restore Mr. Purkey's competency which is a common practice. *See* Pl.'s Reply to Resp. 3 n.1, ECF No. 17.

Defendants argue that Mr. Purkey's future competency is too speculative, rendering any bar permanent. But, the possibility of Mr. Purkey's future restored competency is no more speculative than the possibility that the government would identify a constitutional injection protocol in *Hill* or a constitutional surgical procedure in *Nelson*. It certainly is not analogous to the situation described by the Supreme Court in *Hill* that might be a "necessary bar" in which a challenged execution procedure is the *only legally mandated* execution procedure available to the government. If Defendants' claim were true, that a claim is core habeas "where a successful claim would bar the execution until the occurrence of a future condition that might never occur at all," Defs.' PI Opp'n 11–12, ECF No. 26, then both *Nelson* and *Hill* would have been exclusively habeas claims and in fact nearly any execution challenges would be core habeas. In both *Nelson* and *Hill*, the petitioners' relief barred the plaintiffs' executions on the day the decision was rendered until the government was able to identify a constitutionally viable means of implementing the execution—i.e. "until the occurrence of a future condition that might never occur at all." Here, Mr. Purkey's requested relief would bar his execution only at the time the decision is rendered, not necessarily in perpetuity, and there is no prohibition on competency restoration procedures. Mr. Purkey's *Ford* claims are not "core habeas" because a judgment in his favor would not necessarily bar his execution.

    iii.  <u>Mr. Purkey's *Ford* claims, if successful, will not increase federal and state prisoners' access to federal courts outside of habeas and there are no floodgates waiting to open</u>

Finally, Defendants argue that if successful "not only would every federal prisoner facing execution have the opportunity to bring his *Ford* claim in this Court without complying with [habeas] but every state prisoner facing execution would have the option to file his or her *Ford* claim in the first instance in federal court [notwithstanding habeas]." *Id.* at 15, ECF No. 26. This argument is a red herring meant only to engender unfounded fear and confusion.

First, every federal prisoner facing execution already may pursue civil rights actions outside of habeas that are not "core habeas" and Mr. Purkey's case posture merely follows the already established law. *See* Pl.'s Dec. 31, 2019 Br. 7, ECF No. 14; Pl.'s Reply to Resp. 4, ECF No. 17; Pl.'s MTD Opp'n 26, ECF No. 20. This is not new. Moreover, to the extent Defendants' implication is that a holding in Mr. Purkey's favor will inundate federal courts with standalone *Ford* claims outside of habeas, there is no reason to believe anything of the sort. As an initial matter, federal *Ford* claims are not commonplace and there is not an avalanche of claims waiting to overwhelm the federal courts. In fact, Mr. Purkey's federal *Ford* claim is the <u>first ever</u> *Ford* claim brought in a federal death penalty case. Moreover, Mr. Purkey is the *only* federal prisoner to bring a *Ford* claim of the four prisoners that were recently issued execution warrants.

The further implication that this Court's finding of jurisdiction in this case somehow will open the door to a flood of state prisoner *Ford* claims outside of habeas is disingenuous. While there are more state-based *Ford* competency claims historically than there are federal (because there are more state prisoners and state executions), they are still few and far between. Of the 28 states that recognize the death penalty, only 11 have executed people in the last 5 years (for approximately 125 executions). *Executions by State and Region Since 1976*, Death Penalty Info.

Ctr., https://deathpenaltyinfo.org/executions/executions-overview/number-of-executions-by-state-and-region-since-1976 (last visited July 2, 2020). Only a small minority of those prisoners brought *Ford* claims. John Blume et al., *Killing the Oblivious: An Empirical Study of Competency to Be Executed*, 82 UMKC L. Rev. 335 (of the 1,307 "Ford-eligible" defendants, eighty-six (6.6%) argued they were not competent to be executed). Further, this Court's ruling will not expand federal court jurisdiction. Federal courts already unquestionably have jurisdiction to hear civil rights claims that do not sound in core habeas subject to other civil procedural burdens, of course. As discussed in Section II, the minority of States that actively execute prisoners have implemented processes for litigating *Ford* and *Panetti.* This Court's ruling—pertaining to a federal prisoner on federal death row—would in no way alter state laws and jurisprudence governing state prisoners housed on state death row. Defendants' suggestion that this Court's ruling would somehow override 28 U.S.C. § 2254(A)(1) is similarly unfounded. That statute governs federal remedies for state prisoners, requiring that they exhaust remedies in state court before seeking habeas corpus relief in federal courts. This Court's ruling (applying to a federal prisoner) has absolutely no bearing on § 2254(A)(1). In fact, § 2254(A)(1) would continue to act as a safeguard to ensure that state prisoners do not inappropriately avail themselves of federal courts in actual core habeas cases—i.e., those cases in which granting relief would invalidate the conviction or alter the sentence. In short, there is no slippery slope in which federal district courts will somehow become inundated with standalone federal or state *Ford* claims and the relief Mr. Purkey seeks does not expand the jurisdiction federal courts already have to review civil rights actions that do not sound in core habeas.

In this case, this Court unquestionably has jurisdiction over Mr. Purkey's federal *Ford* claims and the novelty of the claim should be seen for what it is—reflective only of the federal government's hiatus from implementing death sentences, and not at all relevant to this Court's underlying jurisdiction.

**b. Mr. Purkey has demonstrated a likelihood of success on his substantive *Ford* claim**

Defendants argue that Mr. Purkey "has failed to plausibly allege that he is incompetent," even accepting his allegations as true. Defs.' PI Opp'n 18, ECF No. 26. As a threshold issue, Mr. Purkey is not required to prove that he is incompetent (even though he has done just that). Rather, as Defendants themselves acknowledge, at this stage, Mr. Purkey must only meet the "substantial threshold showing" of incompetency. *See Panetti v. Quarterman*, 551 U.S. 930, 950 (2007) (quoting *Ford*, 447 U.S. at 426 (Powell, J., concurring)); *see also* Defs.' PI Opp'n 22–27, ECF No. 26. More precisely, in the context of the procedural posture of a motion for a preliminary injunction, Mr. Purkey must make a "substantial threshold showing" that he will demonstrate a likelihood of success on his substantive *Ford* claim. And, as with their motion to dismiss briefing, Defendants attempt to litigate Mr. Purkey's competency to be executed at this preliminary stage *on the papers*—without affording Mr. Purkey the benefit of materials he is entitled to or the ability to prove his competency at a live hearing—both of which are guaranteed under the Constitution. The very fact that Defendants engage in a factual debate itself emphasizes that Mr. Purkey has demonstrated a likelihood of success.

In any event, Mr. Purkey has certainly demonstrated a likelihood of success of meeting this "substantial threshold showing" of incompetency. Mr. Purkey's Complaint and Motion for a Renewed Preliminary Injunction set forth declarations, expert reports, and medical records that clearly demonstrate that Mr. Purkey is suffering from severe mental illness, at least one form of

progressive dementia, complex-PTSD, and traumatic brain injuries rendering Mr. Purkey incapable of rationally understanding why Defendants are executing him. This is more than sufficient for a preliminary injunction pending discovery and a *Ford* hearing.

In opposing Mr. Purkey's renewed preliminary injunction, Defendants rehash old arguments. First, they argue that, at most, Mr. Purkey will be able to show that he does not understand the reason for scheduling his execution date, citing his selective-execution *pro se* case, and taking quotations out of context from Dr. Bhushan Agharkar's expert report. *See* Defs.' PI Opp'n 18–21, ECF No. 26; *see also* Defs.' Mot. To Dismiss 22–23, 29, ECF No. 18. Dr. Agharkar very clearly opines that at the time of his examination, Mr. Purkey "lacked a rational understanding of the basis for his execution." Compl. Ex. 1 at 12, ECF No. 1-1. Dr. Agharkar explains, "While Mr. Purkey can recite the fact that his execution is for the murder of Jennifer Long, *he lacks rational understanding of that fact. This is an example of parroting, rather than having a rational understanding." Id.* (emphasis added).

Defendants also take issue with the credibility of Mr. Purkey's expert witnesses, but these arguments are properly left to the *Ford* hearing itself. *See* Defs.' PI Opp'n 18–21, ECF No. 26. Defendants also again take issue with the fact that only one expert, Dr. Agharkar, has opined as to Mr. Purkey's *Ford* incompetency and takes issue with individual reports and declarations. *Id.* at 21–22, ECF No. 26. For example, Defendants ask why Mr. Purkey's expert, neurologist Dr. Thomas Hyde, has only opined that Mr. Purkey needs further testing rather than on Mr. Purkey's incompetency to be executed. *See id.* But, it is the Bureau of Prison's (BOP) delay and denial of expert visits both independent of and because of the COVID-19 pandemic that has prevented experts like Dr. Hyde from evaluating Mr. Purkey's competency *today*. Moreover, Mr. Purkey's evidence far exceeds what was sufficient to enable a *Ford* hearing and other due process in

13

*Panetti. See Panetti,* 551 U.S. at 938, 950 ("substantial threshold showing" met by filing motion for declaration of incompetency along with declaration from law professor and one mental health expert). And, while these arguments may be relevant to the merits of a *Ford* hearing, Defendants distort Mr. Purkey's burden at this stage, which is to meet a substantial threshold requirement based on the *cumulation* of his pleadings and exhibits in support, not based on each expert report in isolation.

Throughout the pendency of this case, Defendants have been so eager to execute Mr. Purkey that they have continued to ignore the importance of understanding Mr. Purkey's *current* competency to be executed (once Mr. Purkey has made his "substantial threshold" showing opening the doors to *Ford,* which he has) while also continuing to withhold the very records and access to testing bearing on this question. For example, Defendants point to writings from Mr. Purkey in isolation, including filings that are four or five years old, as dispositive of his competency. *See* Defs.' PI Opp'n 22–23, ECF No. 26. Not only is it inappropriate to refer to older filings as a stand-in for current evidence of Mr. Purkey's competency (that has been stonewalled by the government), but it is also erroneous to review these in isolation. Mr. Purkey's voluminous writings, pattern of filing *pro se* lawsuits and administrative grievances, and inability to work effectively with his defense team are all indicative of Mr. Purkey's progressive mental deterioration. *See* E. Vartkessian Suppl. Decl. ¶¶ 14–15; Compl. Ex. 1 at 3, 9–10, ECF No. 1-1; Compl. Ex. 5, ECF No. 1-1; Pl.'s MTD Opp'n 30–32, ECF No. 20. Defendants also argue that these writings indicate that Mr. Purkey rationally understands that he was "sentenced to death for his crime," at the time of the writings, Defs.' PI Opp'n 23, but ignore that the correct inquiry is whether Mr. Purkey understands *now* why he is being executed by the Defendants. In sum, Defendants use their opposition (and previous pleadings) as a stand-in for

14

the due process that Mr. Purkey is owed in an attempt to dispose of Mr. Purkey's claims hastily and rush to execution.

    **c.   Defendants dismiss or ignore the remaining prongs of the preliminary injunction analysis**

Defendants submit that the Court need not consider the remaining preliminary injunction factors and only cursorily address them. Defs.' PI Opp'n at 28, ECF No. 26. Courts, however, must consider all four factors, including balancing the equities of an injunction and assessing the public's interest in such an injunction especially where, as here, these two factors weigh strongly in favor of an injunction. *See Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009) ("A district court must balance the strength of a plaintiff's arguments in each of the four elements when deciding whether to grant a preliminary injunction."). . Defendants' limited discussion of these factors is wholly inadequate and seems to consider the factors meaningless when in fact they are critical and compelling in this instance. Defendants argue that the government and the victims of crimes have an interest in enforcing criminal judgments. Defs.' PI Opp'n at 28, ECF No. 26. The theory is of course true but is entirely disingenuous given Defendants' 17-year delay in even attempting to enforce the judgment. Critically, any alleged concern about the victims rings hollow given Defendants' choice to recklessly execute Mr. Purkey during a global pandemic with minimal safety procedures in place, with only 30-days' notice, putting the victim's family in a difficult position if they choose to attend the execution (as is their right) and thus risk their health and safety (and quite possibly their life). Defendants also simply do not address the extreme inequities and public interest related to Defendants' proposed execution of Mr. Purkey during a global pandemic where the mere act of planning for and implementing the execution unnecessarily puts *many* people at grave health risk, including Mr. Purkey's expert witnesses and counsel, if they make the difficult choice of risking their safety

and well-being to spare their client's *life*—including the victim's family who allegedly will benefit from this execution. *See id.* at. 27–29, ECF No. 26.

**II.  Mr. Purkey is entitled to a federal *Ford* procedure[2]**

Defendants argue that no federal *Ford* process is required because habeas provides process; Mr. Purkey just chose not to avail himself of that process. That argument misses the mark. Mr. Purkey did not avail himself of the habeas process because his federal *Ford* claim necessarily implicates the acts of federal officials in Washington, D.C., a fact which Defendants acknowledge readily and consistently. *See* Pl.'s Memo in Supp. of Renewed Mot. for a Prelim. Inj. 7 n.2, ECF No. 23-1; Defs.' PI Opp'n 6, ECF No 26 ("On June 15, 2020, the Director of the Federal Bureau of Prisons, at the Attorney General's direction, scheduled Purkey's execution for July 15, 2020.").

Defendants continue to ignore that "habeas" is not a substitute for *Ford* processes and procedures. In comparison, State legislatures and courts have crafted processes and procedures to implement the Supreme Court's procedural mandate in *Ford* and *Panetti. See* Ark. Code Ann. § 16-90-506 (West); Ariz. Rev. Stat. Ann. § 13-4022 (2015); Cal. Penal Code § 3704 (West); Colo. Rev. Stat. Ann. § 18-1.3-1404 (West); Conn. Gen. Stat. Ann. § 54-101 (West); Fla. Stat. § 922.07 (West); Fla. R. Crim. P. 3.811 *et seq.*; Ga. Code Ann. § 17-10-60 *et seq.* (West); Kan. Stat. Ann. § 22-4006 (2010); Ky. Rev. Stat. Ann. § 431.240 (West); La. Stat. Ann. § 15:567.1 (2004); Miss. Code. Ann. § 99-19-57 (West); Mo. Ann. Stat. § 552.060 (West); Neb. Rev. Stat. Ann. § 29-2537 (West); Nev. Rev. Stat. Ann. § 176.425 (West); Ohio Rev. Code Ann. § 2949.28 *et seq.* (West 1988); Okla. Stat. Ann. tit. 22, § 1005 (West 2014); Or. Rev. Stat. Ann. § 137.463

---

[2]  Mr. Purkey continues to believe he is entitled to discovery but does not address it in this motion given the extensive separate briefing on this subject. *See* Pl.'s Mot. for Exp. Disc., ECF No. 24; Reply in Supp. of Pl .'s Mot. for Exp. Disc.

*et seq.* (West 2011); S.D. Codified Laws § 23A-27A-22 *et seq.*; Utah Code Ann. § 77-19-201 *et seq.* (West); Wyo. Stat. Ann. § 7-13-903 (West).

By contrast, the federal government has *nothing—no* promulgated processes or procedures whatsoever to ensure incompetent death row prisoners receive due process and a right to be heard on their claims of incompetency before the government unconstitutionally executes them. And now, the federal government seeks to execute an incompetent prisoner without any procedures in place and instead of addressing that fact, they point to some other procedure Mr. Purkey could have accessed, namely, habeas corpus procedure. But this claim is not a core habeas claim and Mr. Purkey filed his federal *Ford* claim in this Court and in this jurisdiction because the Defendants, those directly responsible for the absence of *Ford* procedures and directly and singularly responsible for deciding when and how Mr. Purkey will be executed, are here in Washington, D.C., not Indiana. Even if Mr. Purkey had instead chosen to file this suit in Indiana, habeas does not provide a federal *Ford* process—only Defendants can do that.

If this Court agrees that it has jurisdiction and Washington, D.C. is a proper venue, whether or what process Mr. Purkey theoretically could have received in another court on another claim is inapposite.

### III.   The Court should not dismiss Mr. Purkey's complaint if it finds that the complaint is "core habeas"

Defendants argue that "[t]his Court cannot construe Purkey's complaint as a habeas petition, because this Court lacks jurisdiction over an absent and necessary party: Purkey's custodian, the warden of the prison where he is confined." Defs.' PI Opp'n 16, ECF No. 26. This is wrong and is another attempt to mislead the Court. Although Mr. Purkey brings a federal *Ford* claim and not a habeas petition, if this Court finds that Mr. Purkey's claim is core habeas, this

Court can and should (1) construe the complaint as a habeas petition, (2) amend the complaint *sua sponte* to add the warden, and (3) transfer the complaint promptly to the Southern District of Indiana.

First, if this Court disagrees with Mr. Purkey and finds that Mr. Purkey's *Ford* claims are core habeas, this Court should construe Mr. Purkey's *Ford* claim as a habeas petition. *Bailey v. Fulwood*, 780 F. Supp. 2d 20, 25 (D.D.C. 2011) (because plaintiff challenged the duration of his present confinement, "[t]he Court therefore construes Plaintiff's ex post facto claims as a petition for a writ of habeas corpus"). If, like in *Bailey*, this Court finds that Mr. Purkey is challenging the sentence itself, this Court should likewise construe Mr. Purkey's claim as a petition for the writ of habeas corpus.

Second, if this Court construes Mr. Purkey's *Ford* claim as a habeas petition, this Court should amend Mr. Purkey's complaint to add the warden of the prison. Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party."); *see Bailey*, 780 F. Supp. 2d at 25. In *Bailey*, the plaintiff did not name his warden in his original complaint, "[b]ut as to the proper respondent, the Court may, 'on its own' and 'on just terms, add . . . a party.'" *Id.* (citing Fed. R. Civ. P. 21). The court added the plaintiff's warden and transferred the case, construed as a habeas petition, to the appropriate court. *See id.* at 26.

Finally, if this Court construes Mr. Purkey's claim as a habeas petition and amends the complaint to add the warden, this Court should transfer this case to the Southern District of Indiana, and should not dismiss it. *See Marcano v. Mosley*, No. 8:17-cv-02069-HMH-JDA, 2018 WL 1179550 (D.S.C. Feb. 14, 2018) (allowing the transfer of a habeas corpus case from the District of South Carolina to the Middle District of Pennsylvania because the relocated petitioner

18

sought the transfer). A court without jurisdiction can transfer a case, pursuant to 28 U.S.C.

§ 1406, to a court with jurisdiction, instead of dismissing the action, when: (1) "[t]he filing itself

shows the proper diligence on the part of the plaintiff," (2) "by reason of the uncertainties of

proper venue a mistake is made," and (3) 'the interest of justice' may require that the complaint

not be dismissed but rather that it be transferred . . . [and] not be penalized by . . . 'time-

consuming and justice-defeated technicalities.'" *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467

(1962); *but see Fogarty v. USA. Truck, Inc.*, 242 Fed. App'x. 152, 154 (5th Cir. 2007) (holding

that *Goldlawr* permits, but does not require, courts to transfer a case if it lacks personal

jurisdiction over the defendants). In *Goldlawr*, the Supreme Court held that "[t]he language of

§ 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff

may have been in filing his case as to venue, whether the court in which it was filed had personal

jurisdiction over the defendants or not." *Goldlawr, Inc.*, 369 U.S. at 466. The purpose of 28

U.S.C. § 1406 is to "remov[e] whatever obstacles may impede an expeditious and orderly

adjudication of cases and controversies on their merits." *Id.* at 466–67.

This case easily satisfies the requirements of *Goldlawr*. First, Mr. Purkey was properly

diligent in choosing a venue in which to bring his claim, and second, if venue is determined

improper it would be due to obvious uncertainties since Defendants and the relevant policies or

procedures (or lack thereof) are in D.C. yet Mr. Purkey is being held in Indiana. *See* Defs.' Mot.

to Dismiss, ECF No. 18; Pl.'s Dec. 31, 2019 Br., ECF No. 14; Defs.' Resp. to Pl.'s Dec. 31, 2019

Br., ECF No. 16. Finally, the interests of justice weigh heavily in favor of a transfer over a

dismissal. Mr. Purkey's execution date is scheduled to occur in less than two weeks, he has been

pursuing these claims diligently even in the face of Defendants' refusal to do so, and Mr. Purkey

19

should have the opportunity to be heard as soon as possible by the proper court. Dismissing and refiling would cause unnecessary delay and inefficiency when Mr. Purkey has no time for either.

Defendants argue, in contrast, that this Court should dismiss Mr. Purkey's claim for lack of jurisdiction, citing *Electronic Privacy Information Center v. U.S. Department of Commerce*, 928 F.3d 95 (D.C. Cir. 2019). Defs.' PI Opp'n 7, ECF No. 26. This case stands only for the proposition that if a plaintiff cannot establish standing, an incurable jurisdictional defect, *as a matter of law*, then the court must dismiss. *See Elec. Privacy Info. Ctr.*, 928 F.3d at 104 ("if, in reviewing the denial of a preliminary injunction, we determine that a litigant cannot establish standing *as a matter of law*, the proper course is to remand the case for dismissal") (emphasis added). Unlike *Electronic Privacy Information Center*, even if the Court finds that jurisdiction does not lie in Washington, D.C., it most certainly lies in Indiana and thus the Court could not and should not conclude that Mr. Purkey cannot establish jurisdiction "as a matter of law."

***

Mr. Purkey has provided more than enough evidence and allegations to meet the substantial threshold showing required to be entitled to a *Ford* hearing under the Eighth Amendment and likewise demonstrated a likelihood of success on the merits to meet the preliminary injunction standard. This Court also clearly has jurisdiction where the responsible decision makers for scheduling and mandating Mr. Purkey's execution, and also those responsible for providing federal *Ford* procedures, sit here in Washington, D.C. To dismiss this case at this late juncture, or even to transfer—less than two weeks from the arbitrarily chosen execution date of July 15, 2020—would result in a fundamental unfairness to Mr. Purkey after seven months of diligently pursuing his claim and being constantly stonewalled by the Defendants. If the Court disagrees and concludes that jurisdiction is lacking it should transfer

20

this case to the Southern District of Indiana promptly. In all events, dismissal is unwarranted here, as it is neither required by the law nor is it a just outcome in light of the equities.

DATED: July 2, 2020

Respectfully Submitted,

*/s/Charles F.B. McAleer, Jr.*
Charles F.B. McAleer, Jr. (DC Bar #388681)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5963
Email: CMcAleer@milchev.com

*/s/Brian Fleming*
Brian Fleming (DC Bar #974889)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5871
Email: bfleming@milchev.com

*/s/Rebecca E. Woodman*
Rebecca E. Woodman (*pro hac vice*)
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
Telephone: (785) 979-3672
Email: rewlaw@outlook.com

Michelle M. Law, MO Bar No. 45487
(appointment motion to be filed)
Assistant Federal Public Defender
Western District of Missouri
901 Saint Louis Street, Suite 801
Springfield, Missouri 65806
Telephone: (417) 873-9022
Facsimile: (417) 873-9038
Email: michelle_law@fd.org

**Counsel for Plaintiff**

21

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 2nd day of July, 2020, I caused Plaintiff's Reply in Support of Plaintiff's Renewed Motion for a Preliminary Injunction to be filed electronically with the Clerk of the Court via CM/ECF, with all authorized parties being served electronically via CM/ECF.

> */s/Charles F.B. McAleer, Jr.*
> Charles F.B. McAleer, Jr. (DC Bar #388681)
> Miller & Chevalier Chartered
> 900 16th Street NW
> Washington, D.C. 20006
> Telephone: (202) 626-5963
> Email: CMcAleer@milchev.com