UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WESLEY I. PURKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00517-JMS-DLP |
| | ) | |
| WILLIAM BARR, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS
AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

This matter is before the Court for resolution of the defendants' motions to dismiss, dkts. 37 and 39. Preliminarily, counsel representing Plaintiff Wesley Purkey in a separate matter proceeding in a different court have asked this Court to stay any rulings on the motions to dismiss or Mr. Purkey's motion for preliminary injunction until that matter is resolved. *See* dkt. 76 (discussing *Purkey v. Barr*, no. 1:19-cv-03570 (TSC) (D.D.C.)).

Mr. Purkey has now been granted relief in that case, and a stay has been issued, though his execution remains scheduled for this evening.  Given the need to expediently resolve Mr. Purkey's pending motion for preliminary injunction in this action and the preliminary resolution of Mr. Purkey's other claim, the motion to stay, dkt. [76], is **denied**. Additionally, the Court's order staying proceedings on Mr. Purkey's motion for preliminary injunction, *see* dkt. [71], is **lifted.**

For the reasons discussed below, the motions to dismiss are **granted in part** and **denied in part**, and the motion for preliminary injunction is denied.

## I.      Background

Before July 14, 2020, the United States had last carried out a federal death sentence in

2003. In July 2019, the United States set execution dates for five inmates, including Mr. Purkey.

On October 28, 2019, when Mr. Purkey was scheduled to be executed in December 2019,

he filed this lawsuit. Mr. Purkey alleges that, before 2003, federal death row inmates' execution

dates were set in the order in which they exhausted their appeals and other avenues for relief from

their sentences. This lawsuit is based on Mr. Purkey's allegation that the defendants abandoned

that procedure and scheduled him for execution ahead of other inmates for reasons the law does

not permit.

The Court screened Mr. Purkey's complaint pursuant to 28 U.S.C. § 1915A on November

12, 2019. *See* dkt. 6. There, the Court summarized the complaint as follows:

> Mr. Purkey is an inmate in the special confinement unit (SCU). He has been
> sentenced to death, and his execution has been scheduled for December 13, 2019.
> Mr. Purkey's complaint concerns two issues: the basis upon which he has been
> selected for execution, and the conditions of his confinement in the SCU.
>
> The defendants are U.S. Attorney General William Barr, Bureau of Prisons Director
> Hugh Hurwitz, Warden J.T. Watson, and Captain Taylor. Mr. Purkey seeks
> damages and injunctive and declaratory relief.
>
> Mr. Purkey alleges that, among the pool of inmates with death sentences, only a
> very small number have been scheduled for execution. He alleges that he has been
> selected for execution either arbitrarily or because of his race or his history of filing
> grievances and lawsuits in prison.
>
> Mr. Purkey also alleges that, since his execution date was set, an officer has come
> to his cell to check on him every fifteen minutes. This includes shining a flashlight
> on him while he is sleeping. As a result, he has not been able to sleep more than
> fifteen minutes at a time, and he is experiencing anxiety, fatigue, chest pains, severe
> headaches, disorientation, and an elevated heart rate.

Dkt. 6 at 2–3.

Based on these allegations, the Court identified plausible claims for relief "against

Defendants Barr and Hurwitz based on the First and Fifth Amendments, Title VII of the Civil

2

rights Act of 1964, 42 U.S.C. § 1981, and the theory recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)." *Id.* at 3. These claims were to proceed against the defendants in their official and individual capacities. *Id.* The Court severed Mr. Purkey's sleep-deprivation claims, and they are proceeding in a separate action. *Id.* at 3–4.

Since screening, Mr. Purkey's execution has been rescheduled for July 15, 2020. *See* Press Release, Dep't of Justice, "Executions Scheduled for Four Federal Inmates Convicted of Murdering Children" (June 15, 2020), https://www.justice.gov/opa/pr/executions-scheduled-four-federal-inmates-convicted-murdering-children.

Additionally, Kathleen Sawyer, then Michael Carvajal, succeeded Mr. Hurwitz as Director of the Bureau of Prisons (BOP). Accordingly, official capacity claims are proceeding against Mr. Barr and Mr. Carvajal, and individual capacity claims are proceeding against Mr. Barr and Mr. Hurwitz.

The defendants have filed motions to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  Dkts. 37, 39. Mr. Purkey, through appointed counsel, has responded. Dkt. 56. The matter is now fully briefed following the defendants' replies. Dkts. 69, 72.

## II.    Motions to Dismiss

### A.    Standard of Review

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all

permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). But the complaint "need not identify legal theories, and specifying an incorrect legal theory is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011).

The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chi.*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B.  Discussion

Mr. Purkey concedes that claims asserted under Title VII and 42 U.S.C. § 1981 should be dismissed. Accordingly, the defendants' motions are **granted** with respect to those claims. The Court addresses Mr. Purkey's remaining claims, and the defendants' remaining bases for dismissal, below.[1]

### 1.  Availability of Relief Outside 28 U.S.C. § 2241

As an initial matter, the defendants argue that Mr. Purkey may not pursue his official-capacity claims in this civil rights lawsuit. They assert that Mr. Purkey seeks "to prevent the BOP

---

[1] The Court has already denied the individual-capacity defendants' motion to the extent it asserts the Court lacks personal jurisdiction over them. *See* dkt. 74. Accordingly, the Court affords no additional attention to that argument in this Order.

from carrying out his sentence, or the 'fact' of his execution," and may do so only through a petition for writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 40 at 5.

This argument disregards the essence of Mr. Purkey's claims and the relief he seeks. Mr. Purkey alleges that he is one of numerous death row inmates who have exhausted their appeals; that the defendants set execution dates for only some of those inmates; and that they selected Mr. Purkey before others for reasons that violate the law.

If a litigant seeks injunctive relief that would necessarily prevent the government from implementing his sentence, he challenges the fact of the sentence itself and must proceed under § 2241. *Hill v. McDonough*, 547 U.S. 573 (2006). A grant of injunctive relief in this case would not necessarily bar the defendants from carrying out Mr. Purkey's death sentence. Rather, such relief might require the defendants to respect certain procedures and constitutional rights in carrying out that sentence. Further, Mr. Purkey also seeks compensatory and punitive damages, dkt. 1 at 12, and that relief is unavailable in a habeas action. Thus, such challenges may proceed in this action.

### 2.	First Amendment Retaliation

At screening, the Court identified a First Amendment claim based on the theory that the defendants selected him for execution because he had a history of filing grievances and lawsuits in prison. Dkt. 6 at 2–3. This claim is supported by, at minimum, the following allegations in the complaint.

- "[O]ne particular SCU Staff Members told me that your selection for an execution date to be set by Barr is based on your zealous filings of administrative remedies and filing so much different litigation in the courts against these people." Dkt. 1 at ¶ 11.

- "SCU staff members escorting Purkey began to ridicule him telling him amongst other things that, 'you cause your own problems on this unit with all of the b.s. filings [that] you do, causing everyone problems, and then you cry

like a baby about the repercussions you suffer because of such.'" . . . One of the other escorting staff members laughed sarcastically saying that, 'we won't have to worry about that much longer—thanks to our buddy Barr. And I can't wait for that to happen.'" *Id.* at ¶ 12.

- "Purkey could easily hear the disparaging comments that Slather and Raymond were making about him saying that, 'that guy is one of the biggest pieces of crap on this Unit, and that is why Barr selected him as one of the first three to take that needle.'" *Id.* at ¶ 15.

- One staff member stated, "[H]e'll file on you nelson wait and see." *Id.* at ¶ 17. Another responded, "That is why our fine Attorney General give him one of the first three slots to be executed, isn't it." *Id.*

In order to establish a prima facie First Amendment retaliation claim, Mr. Purkey must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). At the pleading stage, the allegations cited above satisfy this standard.

The defendants do not dispute that grievances and litigation are protected by the First Amendment or that setting an execution date would likely deter such activity in the future. Rather, they argue that Mr. Purkey has failed to satisfy the third element—that he has not shown "'a causal link between the protected act and the alleged retaliation." Dkt. 40 at 11. But the statements Mr. Purkey attributes to SCU staff members, if true, raise a reasonable inference that his First Amendment activities were at least a motivating factor in the defendants' decision to make Mr. Purkey among the first inmates whose execution dates were set.

### a.    Significance of Competence Litigation

Before addressing specific arguments asserted by the individual-capacity defendants, the Court reiterates the standard of review that governs these motions and clarifies the extent of the

6

Court's ruling. The defendants make much of Mr. Purkey's claim, pending in another district, that he lacks mental competence to be executed lawfully. *Purkey v. Barr, et al.*, No. 1:19-cv-03570-TSC (D.D.C.). The defendants state that, in the competence case, Mr. Purkey cites the allegations of retaliation from this complaint as delusions demonstrating that he is incompetent. *See* dkt. 38 at 28–29; dkt. 40 at 11.

For purposes of this motion, whether Mr. Purkey's allegations are delusions or stone-cold facts is of no concern to the Court—or to the defendants, for that matter. The defendants have not moved for summary judgment. They assert that Mr. Purkey has failed to state a claim, and so the Court must honor the well-known standard of review and accept all well-pled facts as true and draw all permissible inferences in Mr. Purkey's favor. *See Active Disposal*, 635 F.3d at 886. In ruling on this motion, the Court does not find that Mr. Purkey's allegations of retaliation are true. The Court does not find that Mr. Purkey is or is not competent to be executed. The Court finds only that Mr. Purkey's allegations, if true, support a plausible retaliation claim.

### b. Availability of *Bivens* Remedy

The defendants, relying on *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), argue that Mr. Purkey's First Amendment claims must fail as to the individual-capacity defendants because the *Bivens* remedy is not available for First Amendment retaliation claims.

In *Abbasi,* the Supreme Court recognized a *Bivens* remedy in only three cases: (1) a Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); (2) a Fifth Amendment gender discrimination claim against a congressman for firing his female administrative assistant, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim brought by an

inmate's estate against prison officials for failure to provide adequate medical care for his asthma, *Carlson v. Green*, 446 U.S. 14 (1980). To determine whether a *Bivens* remedy is available for a claim outside of these three circumstances, this Court must ask whether there are any other "special factors counseling hesitation before authorizing a new kind of federal litigation," including whether there is "'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Abbasi*, 137 S. Ct. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

The Seventh Circuit has not settled the question of whether *Bivens* may extend to First Amendment retaliation. *See Haas v. Noordeloos*, 792 F. App'x 405, 406 (7th Cir. 2020) (reversing dismissal of *Bivens* retaliation claim because, in the Seventh Circuit, "the question is still unsettled," and directing district court to appoint counsel and develop the issue).

This Court previously held that the availability of alternative remedies counseled against the extension of *Bivens* to a different plaintiff's First Amendment retaliation claims:

> Turning first to whether Mr. Badley has alternative remedies he may use to address his retaliation claims, he has, of course, the Bureau of Prisons' administrative remedy process. He may bring retaliation conduct to the attention of administrators and seek non-monetary remedies. For any injuries he might have sustained, he is able to bring a claim under the Federal Torts Claim Act. Any retaliation that extends his confinement might be actionable in habeas corpus. And any retaliation that results in a violation of a previously recognized *Bivens* claim is another alternate remedy Mr. Badley may pursue. As defendants point out, Mr. Badley is simultaneously litigating an Eighth Amendment claim under *Bivens* in this case involving many of the same injuries he complains about with regard to his First Amendment claim. He has also filed many grievances concerning some of the allegations in this action. Thus, Mr. Badley is not without a remedy to address the core concerns of his problems. Thus, this Court concludes that Mr. Badley has alternative remedies he may use to address the retaliation issues.

*Badley v. Granger*, No. 2:17-cv-00041-JMS-DLP, 2018 WL 3022653, at \*3 (S.D. Ind. June 18, 2018).

Mr. Purkey does not argue that a different "special factors" analysis should apply in this case. But given the specific facts of this action, there would potentially be an alternative remedy for Mr. Purkey's retaliation claim. He seeks injunctive relief to reschedule his execution date in compliance with what he claims to be legal requirements.[2] The Court finds that this potential remedy counsels against extending a *Bivens* remedy for this unique retaliation claim. Mr. Purkey's retaliation claim may proceed as to the official-capacity defendants only.

### 3.    Equal Protection

Mr. Purkey asserts that his premature selection has violated the Fifth Amendment's equal protection guarantee in two ways. First, Mr. Purkey alleges that he has been singled out from among the other eligible death row inmates because of his First Amendment activities discussed in Part III(B) above. Second, Mr. Purkey alleges that the defendants selected him because of his race. For the reasons discussed below, neither claim is plausible.

#### a.    Class of One Claim

Mr. Purkey first asserts that his selection denied him equal protection under the "class of one" theory.

"[A] class-of-one equal protection challenge asserts that an individual has been 'irrationally singled out,' without regard for any group affiliation, for discriminatory treatment." *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (quoting *Engquist v. Or. Dep't Agric.*, 553 U.S. 591, 601 (2008)). Such a claim "is cognizable where an individual alleges that he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Vill. of Oak Park v. Olech*, 528 U.S. 562, 564 (2000)).

---

[2] The Court reiterates that these observations are made only in the context of determining whether Mr. Purkey has pled a plausible claim for relief—not as any determination of that claim's merits.

Mr. Purkey describes the basis for his class-of-one claim in a single sentence: "Barr and Hurwitz chose Mr. Purkey's execution date to retaliate against him for being the jailhouse lawyer." Dkt. 56 at 17. This justification falls short of satisfying the second component of the class-of-one standard, even at the pleading stage.

A class-of-one plaintiff must negate "any reasonably conceivable state of facts that could provide a rational basis for" the defendants' actions. *See Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (internal quotation and citation omitted). "It is not enough for a complaint to suggest an improper motive." *Id.* "[E]ven at the pleadings stage, '[a]ll it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment.'" *Id.* (quoting *D.B. ex rel. Kurtis B. v. Kapp*, 725 F.3d 681, 686 (7th Cir. 2013)).

The defendants have offered a rational basis for Mr. Purkey's selection: like the other three inmates whose execution dates are set, Mr. Purkey murdered a child.  *See* Press Release, Dep't of Justice, "Executions Scheduled for Four Federal Inmates Convicted of Murdering Children" (June 15, 2020), https://www.justice.gov/opa/pr/executions-scheduled-four-federal-inmates-convicted-murdering-children. In other words, among eligible death row inmates, the defendants deemed Mr. Purkey's crime most heinous and deserving of immediate action. Unlike Mr. Purkey's other claims, his class-of-one claim holds no concern for the true reason for his selection. Whether true or not, the defendants have offered a rational reason, and that requires dismissal of the class-of-one claim at this time.

### b.    Racial Discrimination

Mr. Purkey, who is white, alleges that the defendants selected him for execution to avoid allegations and challenges that might arise if they instead selected a person of a different race. Dkt. 1 at 10–11. In responding to the motion to dismiss, recruited counsel concedes that these

allegations do not state a plausible claim for relief under Title VII, and he does not argue that they entitle him to relief through the Fifth Amendment. However, Mr. Purkey has filed a pro se motion for preliminary injunction in which he continues to assert an Equal Protection claim based on racial discrimination. Accordingly, the Court addresses that claim here.

To plead an equal protection claim, Mr. Purkey must allege facts supporting a reasonable inference that his selection had a discriminatory effect and that it was motivated by a discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). To prove discriminatory effect, [Mr. Purkey] must show that he was a member of a protected class and that he was treated differently from a similarly situated member of an unprotected class." *Id.* To determine whether people are similarly situated, the Court must "'look at all relevant factors, the number of which depends on the context of the case.'" *Chavez v. Ill. St. Police*, 251 F.3d 612, 636 (7th Cir. 2001).

Mr. Purkey's equal protection claim falls short of this standard. He does not allege that he is a member of a protected class. Regardless, he has not alleged facts supporting an inference that he was treated different from a similarly situated person of a different race.

Mr. Purkey alleges that "there are a dozen or more blacks who had fully and completely exhausted their appellate[] remedies six or seven years prior to Purkey doing so and not so much as one of them were tentatively selected for execution and designated execution dates by the defendants." Dkt. 1 at 11. But he has not identified such inmates. Meanwhile the defendants have identified at least two inmates who are not white and whose execution dates were set at the same time as Mr. Purkey's. *See* dkt. 40 at 9–10. These inmates were, like Mr. Purkey, convicted of murdering minors. Meanwhile, he has not provided any information about the offenses committed by non-white inmates whose execution dates have not been set.

11

The pleadings do not raise a plausible inference that Mr. Purkey has been treated differently from similarly situated death row inmates of other races. Accordingly, his racial discrimination claim may not advance.

### 4.        Administrative Procedure Act

Finally, the Court considers whether Mr. Purkey has stated a plausible claim for relief under the Administrative Procedure Act. The Court did not explicitly identify an APA claim at screening. However, Mr. Purkey repeatedly asserts in his complaint that the setting of his execution date was "arbitrary." Dkt. 1 at 1, 8—9; 5 U.S.C. § 706(2)(A). The Court acknowledged these allegations at screening. Dkt. 6 at 2–3. Additionally, the parties have identified the APA as a potential vehicle for the relief Mr. Purkey seeks. Dkt. 40 at 4, 6–7; dkt. 56 at 13–15.

"The APA 'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)). "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, the APA does not permit judicial review where the action "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In an unrelated case challenging the selection of an execution date, the Seventh Circuit held that the choice of an execution date is an unreviewable agency action so long as the BOP observes the minimal requirements in the relevant regulations, as it did here. *Peterson v. Barr*, no. 20-2252, at *4 (7th Cir. July 12, 2020), *application for stay denied*, *Peterson v. Barr*, No. 20A6, -- S. Ct. --, 2020 WL 3964236 (July 14, 2020). Mr. Purkey's APA claims fail as a matter of law and are therefore dismissed.

12

### III.    Motion for Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The plaintiff must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.*

### A.    Success on the Merits

The defendants argue that Mr. Purkey is unlikely to succeed on the merits because any challenge to the execution of a criminal sentence subsequent to a conviction—besides a challenge to the method of execution—should be brought via a habeas petition under 28 U.S.C. § 2241 rather than as a *Bivens* claim or a challenge under the Administrative Procedure Act.

### 1.    Proper Vehicle

A prisoner's claim that falls within the "core of habeas corpus" must be brought as a habeas corpus petition. *See Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005); *Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973)). A challenge to the fact of an inmate's confinement that would result in immediate release from prison or the "shortening" of his term of confinement is properly brought in a habeas action. *Wilkinson*, 544 U.S. at 79. However, an action that attacks the "wrong procedures" rather than the "wrong result" can be maintained in a civil rights suit. *Id.* at 80. The Supreme Court has twice held that challenges to the method, but not the fact, of execution need not be brought under habeas because successful resolution of the claims would not necessarily have barred the executions. *See Hill v. McDonough*, 547 U.S. 573, 583 (2006) (resolution of challenge to execution procedure did not implicate core of habeas because it would not call into question the death sentence itself); *Nelson v. Campbell*, 541 U.S. 637, 64347 (2004) (same).

13

Mr. Purkey is not challenging the government's ability to execute him ever; rather, he challenges the government's decision to select him ahead of other federal inmates who he claims have completed direct and post-conviction review of their convictions and sentences. In other words, Mr. Purkey does not challenge the "fact" of his execution, but the timing of it in relation to other federal death row inmates. *See Hill*, 547 U.S. at 582 ("If the relief sought would foreclose execution, recharacterizing a complaint as an action for habeas corpus might be proper."). Thus, the Court is unpersuaded that Mr. Purkey's claims are improperly brought in a civil rights suit rather than a habeas petition.

### 2. Retaliation

In order to establish a prima facie First Amendment retaliation claim, Mr. Purkey must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Mr. Purkey has stated a claim for retaliation, but that does not mean he is likely to succeed on it. His only evidence of retaliatory motive are statements purportedly made to him by BOP staff. This evidence is not compelling. First, the alleged statements read more like scripted dialogue than ordinary conversation. Second, even if BOP staff made some version of these statements, it would prove only that the staff intended to harass Mr. Purkey—not that the front-line correctional officers had some insight into the Attorney General's basis for selecting particular inmates to be executed.

More important, the defendants have produced their own evidence, in the form of deposition testimony given in another matter. Dkt. 75-1 (Deposition of Brad Weinsheimer,

14

Jan. 29, 2020). While not conclusive, this testimony supports the defendants' assertion that Mr. Purkey and the other inmates selected for execution were chosen because they had murdered children or other "vulnerable" members of society. *Id.* at 3 ("[T]he five individuals had something in common, which obviously was a factor the Attorney General used in making that selection, and that is that they were death row inmates convicted of murdering, and in some cases torturing and raping the most vulnerable in our society, children and the elderly.").

Based on the record before the Court, Mr. Purkey has a very small likelihood of proving retaliatory motive. Moreover, Mr. Purkey's only available remedy is a delay of his execution and, given recent developments, *see*, *e.g.*, *Peterson v. Barr*, --- F.3d ----, ----, 2020 WL 3955951, at *2 (7th Cir. 2020) ("[I]f the BOP observes the minimal requirements in the regulation . . . then it has the unconstrained discretion to choose a date for the execution."); *Barr v. Lee*, 591 U.S. ---, ---, No. 20A8 (July 14, 2020) (per curiam), "the likelihood of success on this remedy seems vanishingly small." *Hartkemeyer v. Barr*, No. 2:20-cv-336 (S.D. Ind. July 14, 2020).

### B.    Irreparable Harm and Balance of Equities

Mr. Purkey will suffer serious and irreparable harm—he will be executed—absent a stay. The government has an interest in promptly executing persons who have been sentenced to death. *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (the government has "an important interest in the timely enforcement of a sentence" (internal quotation omitted)); *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (after years of litigation, the government "is entitled to the assurance of finality"). The public has the same interest. Despite these interests, the balance of harms weighs in Mr. Purkey's favor, such that a stay would be appropriate *if* he had a strong likelihood of success.

In this case, however, because Mr. Purkey does not have a strong likelihood of success, he is not entitled to a preliminary injunction staying his execution.

## IV.    Conclusion

The motion to stay proceedings, dkt. [76], is **denied as moot**. The Court's order staying proceedings on the motion for preliminary injunction, *see* dkt. [71], is **lifted**. The defendants' motions to dismiss, dkts. [37] and [39], are **granted in part** and **denied in part**. Mr. Purkey's Fifth Amendment Equal Protection, Title VII, § 1981, and APA claims, as well as his First Amendment retaliation claim against the individual-capacity defendants, are **dismissed** for **failure to state a claim** upon which relief may be granted. Finally, Mr. Purkey's motion for preliminary injunction, dkt. [52], is **denied**.

All claims against Defendant Hugh Hurwitz have been **dismissed**. The **clerk is directed** to **terminate** Mr. Hurwitz as a party and to **add** Michael Carvajal as a defendant.

**IT IS SO ORDERED.**

Date: 7/15/2020

Distribution:

Glenn Greene
U.S. DEPARTMENT OF JUSTICE - CIVIL (Wa
glenn.greene@usdoj.gov

Michelle M. Law
FEDERAL DEFENDER -- WESTERN DISTRICT OF MISSOURI
michelle_law@fd.org

John R. Maley
BARNES & THORNBURG, LLP (Indianapolis)
jmaley@btlaw.com

Rebecca Ellen Woodman
REBECCA E. WOODMAN, ATTORNEY AT LAW, L.C.
rewlaw@outlook.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

16